IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FOREST VIEW REHABILITATION AND NURSING CENTER, LLC, | CASE NO. 1:24-cv-01490 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| THE UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as United States Secretary of Treasury; and THE UNITED STATES OF AMERICA, | |
| Defendants. | |

Plaintiff Forest View Rehabilitation and Nursing Center, LLC ("Forest View"), by and through its counsel of record, and for its claims for relief against Defendants, the United States Small Business Administration ("SBA"), Isabella Casillas Guzman in her official capacity as Administrator of the SBA, Janet Yellen in her official capacity as United States Secretary of Treasury, and the United States of America, states and alleges as follows:

**NATURE OF THE ACTION**

1.     In order to mitigate the economic devastation caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). Congress's purpose in adopting the CARES Act was to ensure continued employment and income for the millions of Americans employed by small businesses.  To accomplish that critical goal, Congress created the Paycheck Protection Program ("PPP"), which authorizes the SBA to guarantee hundreds of billions of dollars in loans to small businesses.  PPP loans were to be made by private lenders, and Congress pledged to forgive these

loans (i.e., the federal government would reimburse the bank) provided that, *inter alia*, the borrowers used most of the proceeds to pay employees' wages. *See* 15 U.S.C. §§ 636(a)(36), 9005-06.

2. "The PPP is a *new* loan program to be administered by the SBA under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)). Its purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (emphasis added). Section 1106 of the CARES Act "provides that a borrower's indebtedness under a PPP loan will be forgiven to the extent that the borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent, and utilities during the eight-week period following the loan's origination." *Id.* (citing Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020)).

3. Historically, prior to the CARES Act's enactment, the SBA treated certain classes of businesses as ineligible for other SBA lending programs. *See* 13 C.F.R. § 120.110. Aware of this, Congress purposefully intended that the CARES Act would "[i]ncrease[] eligibility" for forgivable PPP loans, *id.* § 636(a)(36)(D), making them widely available to small businesses across the commercial spectrum. Congress did so by establishing specific, limited criteria for PPP loan guarantee eligibility and by providing unambiguously that "*any* business concern . . . *shall* be eligible" for a forgivable PPP loan if it met those criteria. *Id.* § 636(a)(36)(D) (emphasis added).

4. Relying on this expanded eligibility, Forest View, a skilled rehabilitation and nursing center, applied for a PPP loan on April 6, 2020. The SBA approved the loan under the PPP's expanded eligibility criteria on April 30, 2020, and the lender disbursed Forest View's PPP loan on or about May 18, 2020.

5.      "An eligible recipient **shall** be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds are used for certain payroll expenses.  CARES Act § 1106(b), (d) (emphasis added); Paycheck Protection Program Flexibility Act ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641, § 3(b) (2020).  The SBA is required to reimburse the private lender for any PPP loan determined eligible for forgiveness.  CARES Act § 1106(c)(3).  PPP loan recipients must submit forgiveness applications to be considered.  *Id.* § 1106(e).  But Section 1106(b) of the CARES Act provides for forgiveness of a PPP loan only if the borrower was an "eligible recipient" of the PPP loan at the time it applied for the PPP loan.

6.      Despite clear direction from the CARES Act, the SBA adopted its first Interim Final Rule, effective April 15, 2020, which imposed its pre-COVID-19, pre-CARES Act exclusions on PPP loan eligibility (the "First IFR").

7.      Although SBA published its intention to issue the First IFR on April 2, 2020, it expressly stated that the First IFR would not take effect until April 15, 2020.

8.      The SBA thereafter adopted six total Interim Final Rules.

9.      The Sixth Interim Final Rule, the rule at issue in this case, had a posted effective date of May 4, 2020 (the "Sixth IFR").  The Sixth IFR imposes restrictions on the amount of loans a single "corporate group" could receive in PPP loans, and it retroactively applied this requirement to all loans that had not been fully disbursed by April 30, 2020.

10.      The concept of this "corporate group" limitation was solely a formation of the SBA in the Sixth IFR.

11.      The Sixth IFR lacks any basis in and is directly contrary to the plain text, purpose, and context of the CARES Act.

12.     On March 11, 2021, after enactment of the Interim Final Rules, Congress enacted the American Rescue Plan Act, Pub. L. No. 117-2, 135 Stat. 4 (Mar. 11, 2021) (the "Rescue Plan"). The Rescue Plan "expanded the eligibility for PPP loans to certain non-profit entities, and in doing so it again expressly incorporated the limitations embodied in the SBA's regulations under 13 C.F.R. § 120.110," which is the pre-COVID-19, pre-CARES Act exclusions on eligibility.  *Nat'l Ass'n of Home Builders v. United States SBA*, No. 20-11780, 2021 U.S. Dist. LEXIS 186548, at *32 (E.D. Mich. Sep. 28, 2021).  "The disqualification enacted in the [Rescue Plan] was included in verbatim provisions of the PPP 'second-round' enabling statute.  The inclusion of additional explicit constraints in the later enactments reinforces rather than contradicts the conclusion that such limitations deliberately were omitted by Congress when it authorized the first round of PPP." *Id.*

13.     The only maximum borrowing limit that Congress placed on loan amounts under both the PPP and the Rescue Plan was to limit loans to no more than $10,000,000 per single eligible borrower.  CARES Act, § 1102(1)(E)(ii); 15 U.S.C. § 636(a)(36)(E)(ii).  Congress never adopted a limitation for a maximum cap on "corporate groups."  *See id.*

14.     The SBA is applying corporate group limitations in the Sixth IFR to refuse to forgive loans it granted to businesses—including Forest View—that applied for a PPP loan in reliance on Congress's promise of loan forgiveness *prior to the SBA's adoption of the Sixth IFR on May 4, 2020*.  Small businesses risked their financial security by keeping employees on payroll during the COVID-19 pandemic with the benefit of PPP loans they were eligible to receive at the time they applied for them, *and* at the time that the SBA approved them.  Now, having complied with what Congress required, the SBA is finding that businesses must repay their loans because of the SBA's unlawful application of the Sixth IFR.

15.     This action under the Administrative Procedure Act ("APA") challenges the SBA's adoption of the Sixth IFR, and its application to Forest View.  Specifically, Forest View seeks a declaration that the Sixth IFR is unenforceable with respect to its PPP loan forgiveness application.

16.     The Sixth IFR renders statutorily eligible business concerns ineligible for PPP loans or loan forgiveness in clear violation of the CARES Act.  This Court should "hold unlawful and set aside" the Sixth IFR.  5 U.S.C. § 706(2).

17.     Additionally, because the SBA applied retroactively the Sixth IFR, which was effective on May 4, 2020, to Forest View's loan, which it approved on April 30, 2020, the Court should "hold unlawful and set aside" the Sixth IFR as applied to Forest View as an impermissible retroactive application of the law.  *Id.*

18.     Notwithstanding, the decision of the SBA's Office of Hearings and Appeals ("OHA") should be reversed as arbitrary, capricious, an abuse of discretion, and not in accordance with the law because it wrongfully found Forest View as part of a corporate group.

19.     Further, the OHA decision should be reversed as arbitrary, capricious, an abuse of discretion, and not in accordance with the law because it failed to consider the SBA's blatant violation of 13 C.F.R. § 134.1202 and 15 U.S.C. § 363(a)(36)(M)(ii)(II) when the SBA began collecting on Forest View's PPP loan during the pendency of the appeal.

### PARTIES

20.     Forest View is a small business based out of Itasca, Illinois, that oeprates a skilled nursing and rehabilitation center.

21.     SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq*.  Under the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), the SBA administers the PPP.

22. Defendant Isabella Casillas Guzman is the Administrator of the SBA, and is sued only in her official capacity. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for causes of action brought under the APA.

23. Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is sued only in her official capacity.

24. Defendant United States of America is a proper defendant in APA cases. *See* 5 U.S.C. § 702.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

26. Forest View has standing to seek review of the Sixth IFR because the SBA has used the rule to deny Forest View's loan forgiveness application.

27. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e).

28. The SBA's Sixth IFR is a final agency action under 5 U.S.C. § 704.

29. Forest View is entitled to judicial review of the SBA's decision on Forest View's loan forgiveness application, and the OHA's Decision following appeal of the same. *See* 13 C.F.R. § 134.1211(g).

## FACTUAL BACKGROUND

30. Forest View is a Manager-Managed Limited Liability Company.

31. Forest View is a small skilled rehabilitation and nursing center located in Itasca, Illinois.

32. Forest View is not a holding or parent company, nor does it have a holding or parent company.

33.     At all times relevant, Forest View had the following ownership structure: Michael Blisko ("Blisko") individually owns 50%, and Gubin Enterprises Limited Partnership ("Gubin Enterprises") owns 50%.

34.     Gubin Enterprises is owned by several trusts, where the beneficial ownership rests with four individuals.  Blisko has no ownership interest in Gubin Enterprises.

35.     Forest View is managed by Blisko.

36.     Forest View suffered significant harm during the COVID-19 pandemic.  As a result, while Forest View was providing essential medical care to an extremely vulnerable population, it considered terminating employees and reducing the wages of other employees for its business to survive.

37.     Before promulgating any of the Interim Final Rules, the federal agencies responsible for implementing the PPP had touted the program as providing payroll assistance to any business with fewer than 500 employees.  *See*, *e.g.,* SBA, *Financial Assistance from the US SBA for Small Businesses and Non-Profits*, (Mar. 31, 2020) ("Businesses . . . with 500 or fewer employees may apply."); U.S. Dep't of Treas., *Small Business Paycheck Protection Program*, (Mar. 31, 2020) ("All Small Businesses Eligible"); *see also* 15 U.S.C. § 636(a)(36)(D).

38.     On or about April 6, 2020, in the face of financial hardship and challenging decisions, Forest View submitted a PPP Borrower Application to Fifth Third Bank (the "Lender") for a forgivable PPP loan in the amount of $1,069,800.00 to mitigate business losses and enable it to retain its employees through the economic downturn.

39.     Forest View was approved for its PPP loan by the Lender on April 30, 2020.  At the time of the approval, it operated under the provisions stated by Congress, which provided that loans were for all businesses that met the size requirements for small businesses.

40.     On or about May 1, 2020, the SBA issued a Note to Forest View in the full amount of its requested $1,069,800.00.

41.     The full amount of Forest View's PPP loan was distributed to Forest View on or about May 18, 2020.

42.     Forest View used its loan proceeds to meet payroll and other expenses permitted by the CARES Act.  Forest View used at least 60 percent of the loan proceeds for payroll.  While it experienced various operational challenges caused by the pandemic, Forest View was able to retain its working employees on the same payroll with the assistance of the PPP loan.  Forest View did not reduce any of its employees' wages or terminate any of its employees as a result of the PPP loan.  Because of this, Forest View was able to continue providing rehabilitative and skilled nursing care to its patients.

43.     On or about January 27, 2021, as it was permitted to do so under the CARES Act, Forest View submitted a PPP Loan Forgiveness Application (Form 3508) to the Lender, requesting forgiveness for its full PPP loan amount.

44.     The Lender determined Forest View should receive full loan forgiveness in the amount of $1,069,800.00 and submitted its decision to the SBA for final review.

45.     On or about November 29, 2021, the SBA notified Forest View that the SBA was forgiving $1,007,592.00 of Forest View's PPP loan (the "Forgiveness Letter").  The Forgiveness Letter explained that Forest View had miscalculated its maximum loan amount by including FICA and federal taxes, but that it was still receiving partial forgiveness in the amount of $1,007,592.00 (a $62,208.00 difference from its PPP loan).

46.     Forest View did not appeal the SBA's determination of partial forgiveness.  The SBA's decision became final 30 days later.  See 13 C.F.R. § 134.1201(b).

47.     On or about January 17, 2023, Forest View contacted Lender to confirm that the $63,208.00 balance on the PPP loan was debited out of Forest View's accounts.  In response, Lender stated it was "under the impression [Appellant's PPP] loan had been fully denied, so perhaps there was miscommunication from the SBA to our operations group.  I do not see any balance debited on this loan, but will determine best course of action in the interim stay tuned" and would not take the appropriate payment from Forest View's accounts.

48.     On or about January 23, 2023, Lender reached out to Forest View and stated, "[w]e followed-up with the SBA and they need to look into it further. The only determination we received was for partial forgiveness, though the SBA's system shows a Not Approved Decision – so it is unclear as to what the final decision was. I will let you know as soon as we hear anything in response."

49.     Lender continued to investigate why Forest View could not pay the unforgiven part of its PPP loan.

50.     On or about May 31, 2023, Forest View attempted to again confirm with Lender that the $62,208.00 was debited from its accounts.

51.     On or about June 3, 2023, over 18 months after Forest View's PPP loan was partially forgiven by the SBA in the amount of $1,007,592.00, the SBA issued another final PPP loan review decision finding Forest View ineligible for PPP loan (the "Decision"), stating that Forest View was "part of a corporate group" that "received more than $20,000,000.00 of PPP loans in the aggregate" based on the Sixth IFR.

52.     In its Decision, the SBA failed to identify alleged common parent of the "corporate group," and it failed to provide any basis for its "corporate group" or common parent determination.

53.     On or about July 3, 2023, Forest View timely submitted an appeal of the Decision to the OHA (the "Appeal"), articulating that (1) the SBA previously forgave Forest View's PPP loan 18 months prior, (2) the Sixth IFR cannot be retroactively applied to Forest View's loan, (3) the Sixth IFR exceeds the scope of the SBA's authority, and (4) even if the Sixth IFR is applicable, Forest View is not part of a corporate group and is fully eligible for its PPP loan.

54.     Forest View's Appeal extended the deferment period of the PPP loan until a final decision was issued.  *See* 13 C.F.R. § 134.1202; 15 U.S.C. § 636(a)(36)(M)(ii)(II).

55.     On or about July 10, 2023, the OHA issued a Notice and Order, directing Forest View to provide a copy of the Appeal to the Lender, and confirming that Forest View's PPP loan was deferred until the OHA's decision became final.

56.     Forest View timely provided a copy of the Appeal to the Lender.

57.     On or about August 31, 2023, while the Appeal was pending, Transworld Systems, Inc. ("TSI"), a third-party collection agency acting on behalf of the Department of Treasury, notified Forest View that its PPP loan was placed with TSI (the "Notice").

58.     The Notice stated that TSI was collecting specifically for SBA's account number 6431697306 (Forest View's PPP loan number) which had a total balance of $1,069,800.00 (Forest View's total PPP loan amount) as of March 28, 2023, more than two months before the SBA issued its Decision.

59.     The Notice stated that TSI had a balance of $285,735.55 remaining for collection from Forest View.

60.     TSI actively recouped payments from Forest View's Medicare Vouchers under the Federal Payment Levy Program, collecting a total of $892,429.46 between April 2023 and August 2023:

| Date Recouped | Amount |
|---|---|
| April 24, 2023 | $234,984.39 |
| April 25, 2023 | $913.51 |
| May 19, 2023 | $27,032.11 |
| May 24, 2023 | $198,516.11 |
| May 30, 2023 | $14,790.25 |
| June 20, 2023 | $7,609.09 |
| June 21, 2023 | $19,875.46 |
| June 23, 2023 | $167,900.15 |
| June 27, 2023 | $21,672.78 |
| July 31, 2023 | $1,447.68 |
| August 22, 2023 | $24,673.06 |
| August 24, 2023 | $171,964.17 |
| August 25, 2023 | $718.95 |
| August 29, 2023 | $331.75 |
| **TOTAL** | **$892,426.46** |

61.     The SBA recouped $476,236.37 from Forest View's total PPP loan amount before it issued its Decision, and recouped an additional $416,193.09 while Forest View's Appeal was pending.

62.     The SBA's recoupment of Forest View's PPP loan proceeds was in violation of 13 C.F.R. § 134.1202 and 15 U.S.C. § 636(a)(36)(M)(ii)(II).

63.     On or about August 21, 2023, when these payments were questioned by the Lender, the SBA falsely informed the Lender that the OHA had denied Forest View's Appeal.

64.     On or about September 7, 2023, Forest View filed a motion requesting that the OHA enter an Order compelling the SBA to reimburse Forest View for all amounts improperly recouped on the PPP loan, to reimburse Forest View for interest, and prohibit the SBA from further collecting on the PPP loan during the pendency of the Appeal (the "Motion").

65.     On or about October 16, 2023, the OHA issued an order denying Forest View's Appeal and denying its Motion.  The October 16, 2023 OHA decision is attached hereto as **Exhibit A**.

11

66.     In the decision, the OHA found that Blisko and Gubin Enterprises were, in effect, a partnership, and that the partnership was "part of a corporate group" that obtained loans exceeding $20,000,000.  *See* Ex. A., pp. 12-13.

67.     The OHA did not identify the common parent of the corporate group, and it failed to provide any basis for its common parent determination.

68.     The OHA did not cite to any existing statutes, regulations, or authority in support of its ability to designate a non-existent entity as a comment parent.

69.     The OHA further found that the Sixth IFR was not retroactively applied to Forest View because Forest View signed a promissory note for the PPP loan "14 days after the publication and immediate implementation of [the Sixth IFR] on May 4, 2020."  Ex. A, p. 13.

70.     Finally, the OHA also held that Forest View's Motion was moot given its denial of Forst View's Appeal.  Ex. A, p. 14.

71.     The retroactive application of the Sixth IFR has harmed and will continue to harm Forest View.  In the midst of fluctuating economic uncertainty driven by the pandemic, Forest View now has to worry that the loan forgiveness it reasonably relied upon will be withheld and it will not be reimbursed for the money that was wrongfully taken on the SBA's directive.

72.     Forest View reasonably relied on the SBA's approval of its PPP loan on April 30, 2020, as well as the SBA's prior representations, that the PPP loans would be forgiven so long as Forest View was eligible.

73.     Numerous other courts have held that the Interim Final Rules issued by the SBA, are contrary to law, exceed the SBA's statutory authority, and are arbitrary and capricious.  *See Nat'l Ass'n of Home Builders v. U.S. Small Business Administration*, No. 2011780, 2021 U.S. Dist. LEXIS 186548, at *35 (E.D. Mich. Sept. 28, 2021) (enjoining the SBA from denying PPP loans

to otherwise-qualified applicants on the basis of the First IFR, given the First IFR exceeded the SBA's statutory authority)[1]; *DV Diamond Club v. Small Business Administration,* 960 F.3d 743, 746-47 (6th Cir. 2020) (denying a motion for stay of injunction barring the IFR's application to business owners who were previously ineligible for SBA lending programs, finding that the business owners had a substantial likelihood of success on their claim that the rule conflicted with the CARES Act); *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (holding that the IFRs exceed statutory authority); *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, No. 20-1729 (7th Cir. May 20, 2020) (order) (denying the SBA's motion for a stay pending appeal); *In re Gateway Radiology Consultants*, P.A., No. 8:19-BK-04971-MGW, 2020 WL 3048197, at *19 (Bankr. M.D. Fla. June 8, 2020) (enjoining the SBA's attempt to "disqualify[] an entire class of troubled small businesses—perhaps those who need it the most— from obtaining grants to pay employees so their workers don't lose their jobs"); *In re Skefos*, No. 19-29718-L, 2020 WL 2893413, at *13 (Bankr. W.D. Tenn. June 2, 2020) ("SBA acted arbitrarily and capriciously in excluding applicants whose owners are debtors in bankruptcy from the PPP."); *In re Roman Catholic Church of Archdiocese of Santa Fe*, No. 18-13027 T11, 2020 WL 2096113, at *7 (Bankr. D.N.M. May 1, 2020) (holding that the IFR "constitutes a usurpation of Congressional authority to determine which businesses are eligible for PPP funds").

74.     Further, the OHA's decision applying a partnership theory to Blisko and Gubin Enterprises is contrary to law, exceeds the SBA's statutory authority, and is arbitrary and capricious.  As such, even if the Sixth IFR was proper under the law, which it is not, Forest View disagrees that it is part of a corporate group as the OHA sets forth in its Decision.  The OHA's

---

[1] This case was vacated by the Sixth Circuit Court of Appeals pursuant to settlement between the parties.  *See Nat'l Ass'n of Home Builders v. United States Small Bus. Admin.*, No. 21-1765, 2023 U.S. App. LEXIS 908 (6th Cir. Jan. 13, 2023).

Decision finding Forest View as part of a corporate group was arbitrary, capricious, an abuse of discretion, and not in accordance with the facts and the law.

75. Additionally, the OHA's decision is arbitrary, capricious, an abuse of discretion, and not in accordance with the law because it failed to issue a decision on SBA's blatant violation of 13 C.F.R. § 134.1202 and 15 U.S.C. § 363(a)(36)(M)(ii)(II) when the SBA began collecting on Forest View's PPP loan during the pendency of the appeal.

76. Finally, the OHA's decision, along with the SBA's Decision, deprived Forest View of procedural and substantive due process provided to borrowers under the PPP, because it fails to properly identify the alleged common parent used to substantiate its denial of Forest View's PPP loan based on the corporate group limitation.

**COUNT ONE**
**Agency Action Contrary to Law**
**Loan Application Submitted Before Sixth IFR**
**5 U.S.C. §706(2)(A), (C)**

77. Forest View incorporates the foregoing paragraphs as if fully set forth herein.

78. The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

79. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(A), (C).

80. The Sixth IFR, 85 Fed. Reg. 26324, states explicitly that "[t]his rule is effective May 4, 2020."

81. The Sixth IFR further provides that "SBA has drafted this rule, to the extent practicable, in accordance with the standards set forth in section 3(a) and 3(b)(2) of the Executive Order 12988, to minimize litigation, eliminate ambiguity, and reduce burden. *The rule has no preemptive or retroactive effect*." 85 Fed. Reg. 26324 (emphasis added).

82.     The Sixth IFR provides a limitation on the amount of PPP loans a single corporate group can receive, stating that "businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate." The Sixth IFR defines a corporate group as businesses that "are majority owned, directly or indirectly, by a common parent."

83.     The Sixth IFR inconsistently provides that the corporate group "limitation shall be immediately effective with respect to any loan that has not been fully disbursed as of April 30, 2020."

84.     On April 6, 2020, Forest View submitted its PPP loan application to the Lender.

85.     Forest View's eligibility was based solely on the laws, rules, and guidance in effect at the time of its PPP loan application. *See* Paycheck Protection Program Loans Frequently Asked Questions as of July 29, 2021, Question 17 ("Borrowers and lenders may rely on the laws, rules, and guidance available **at the time of the relevant application**.") (emphasis added); *see* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program – Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, p. 46 ("The Administrator has determined that to be an eligible recipient that is entitled to forgiveness under section 7A(b), the borrower must be an 'eligible recipient' under section 7(a)(36) and section 7(a)(37) of the Small Business Act and rules and guidance available **at the time of borrower's loan application**."); 13 C.F.R. § 121.302 ("The size of an applicant for SBA financial assistance is determined **as of the date the application** for financial assistance is accepted for processing by the SBA . . . . Changes in size after the applicable date when size is determined will not disqualify an applicant for assistance.") (emphasis added).

86.     On April 30, 2020, the SBA approved Forest View's loan application.

87.     On May 1, 2020, the SBA issued a Note in the full amount of Forest View's PPP loan, which Forest View signed on May 18, 2020, at which point funds were disbursed.

88.     At no point during this process was the Sixth IFR in effect and applicable to Forest View.  As such, notwithstanding the fact that Forest View was not part of a corporate group, and even if it was, Forest View was eligible for its PPP loan at the time it applied for the loan up through May 4, 2020, the time effective date of the Sixth IFR.

89.     Forest View used its PPP loan proceeds for payroll expenses and other eligible expenses under the CARES Act.

90.     The CARES Act, as amended, provides that all such "*eligible recipient[s] shall be eligible for forgiveness of indebtedness*" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

91.     Forest View used at least 60 percent of its PPP loan proceeds for payroll.

92.     Because it properly and lawfully utilized its loan proceeds, which it was eligible to receive at the time it applied for its PPP loan and at the time its loan application was approved, Forest View applied for loan forgiveness January 27, 2021.  Its loan forgiveness application was approved by the Lender.

93.     However, notwithstanding Forest View being eligible for a PPP loan at the time of its loan application and the time its loan application was approved, SBA first indicated its intent to retroactively apply the Sixth IFR on June 3, 2023, when it denied Forest View's loan forgiveness application after partially forgiving Forest View's PPP loan over 18 months prior.

94.     Defendants' actions to retroactively apply the Sixth IFR to determine that Forest View was ineligible for its PPP loan are not in accordance with law, including the CARES Act, the APA, and the Interim Final Rule itself.  Forest View is entitled to an order declaring the same.

95.     Forest View is entitled to a permanent injunction enjoining Defendants from retroactively applying the Sixth IFR.

**COUNT TWO**
**Agency Action Contrary to Law**
**Sixth IFR Contrary to CARES Act**
**5 U.S.C. §706(2)(A), (C)**

96.     Forest View incorporates the foregoing paragraphs as if fully set forth herein.

97.     The APA authorizes judicial review of federal agency actions.  5 U.S.C. §702.

98.     The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id*. § 706(2)(A), (C).

99.     The CARES Act provides that "in addition to small business concerns, *any* business concern . . . *shall* be eligible to receive a covered loan," CARES Act § 1102(a)(36)(D)(i) (emphasis added), subject only to the conditions that a business meet the CARES Act's size requirement, make the required good-faith borrower certification, and have been in operation as of February 15, 2020.

100.    The CARES Act, as amended, also provides that all such "eligible recipient[s] shall be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses.  CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

101.    Nothing in the CARES Act authorizes the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the Sixth IFR.

102. The Sixth IFR exceeds the Defendants' authority under the CARES Act because the IFR would limit PPP loans in a way that is contrary to the CARES Act, as Congress's only monetary limitation on PPP loan amounts was $10,000,000 per single eligible borrower. *See* CARES Act § 1102(1)(E)(ii); 15 U.S.C. § 636(a)(36)(E)(ii).

103. Congress never adopted a PPP loan limitation for "corporate groups."

104. The SBA's corporate group limitation in the Sixth IFR is not authorized by any statute, and is in excess of statutory jurisdiction and authority. 5 U.S.C. § 706(2)(C).

105. Defendants' actions to exclude businesses—such as Forest View—primarily engaged in the business of skilled nursing and rehabilitation, who are entitled to loan forgiveness, are not in accordance with law, including the CARES Act and the APA. Forest View is entitled to an order declaring the same.

106. Forest View is entitled to a permanent injunction enjoining Defendants from applying the Sixth IFR against it, and the Sixth IFR must be vacated, set aside, and not used as a basis to deny Forest View's request for forgiveness of its PPP loan.

## COUNT THREE
### Arbitrary & Capricious Agency Action
### 5 U.S.C. §706(2)(A)

107. Forest View incorporates the foregoing paragraphs as if fully set forth herein.

108. The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

109. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious," or "an abuse of discretion." *Id.* § 706(2)(A).

110. The CARES Act provides that "in addition to small business concerns, *any* business concern . . . *shall* be eligible to receive a covered loan," 15 U.S.C. § 636(a)(36)(D)(i) (emphasis

added), subject only to the conditions that a business meet the Act's size requirement, makes the required good-faith borrower certification, and have been in operation as of February 15, 2020.

111. The CARES Act, as amended, also provides that all such "eligible recipient[s] shall be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

112. The CARES Act does not authorize the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the Sixth IFR.

113. Defendants' exclusion of Forest View as an eligible business is an abuse of discretion.

114. Further, Defendants' reliance on a partnership theory between Forest View's owners after Forest View definitively showed it had no majority owners or a common parent is similarly an abuse of discretion.

115. Forest View is entitled to a permanent injunction enjoining Defendants from applying the Sixth IFR against it.

**COUNT FOUR**
**Agency Action Contrary to Law**
**Improper Collection of Payment Before Decision and During Pendency of Appeal**
**5 U.S.C. §706(2)(A), (C)**

116. Forest View incorporates the foregoing paragraphs as if fully set forth herein.

117. The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

118. The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id*. § 706(2)(A), (C).

119.     The CARES Act requires lenders to provide complete payment deferment relief for impacted borrowers with covered PPP loans until issuance of a decision on a borrower's loan forgiveness application.  15 U.S.C. §§ 636(a)(36)(M)(ii)(II) and 636m.

120.     13 C.F.R. § 134.1202 states, "[a] timely appeal by a PPP borrower of a final SBA loan review decision extends the deferment period of the PPP loan until a final decision is issued under § 134.1211."

121.     Forest View submitted its loan forgiveness application on or around January 27, 2021.

122.     The SBA granted partial forgiveness of Forest View's PPP loan on November 29, 2021.

123.     The SBA subsequently issued a full denial of Forest View's PPP loan forgiveness application on June 3, 2023.

124.     Forest View appealed the SBA's Decision to the OHA on July 3, 2023.

125.     Despite Forest View's PPP loan being deferred under the law, the SBA recouped $892,426.46 of Forest View's PPP loan from Forest View's Medicare Vouchers between April 24, 2023 and August 29, 2023.

126.     The OHA's failure to grant Forest View's Motion to Compel and require the SBA to reimburse the amounts improperly recouped from Forest View, along with interest, was an abuse of discretion, not in accordance with the law, arbitrary, and capricious.

127.     Forest View is entitled to a permanent injunction requiring Defendants to reimburse the amounts improperly recouped from Forest View ($892,426.46) with interest.

## COUNT FIVE
### Attorney Fees
### 28 U.S.C. § 2412

128.    Forest View incorporates the foregoing paragraphs as if fully set forth herein.

129.    Forest View is entitled to recover its attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.

130.    As a result of Defendants' unlawful, arbitrary, and capricious actions, Forest View is required to obtain legal counsel to bring the foregoing lawsuit to obtain forgiveness of its PPP loan.  It is therefore entitled to its reasonable and necessary attorney fees, costs, and expenses by this Court.

WHEREFORE, Forest View Rehabilitation and Nursing Center, LLC respectfully requests this Court enter judgment in its favor and against Defendants the United States Small Business Administration, Isabella Casillas Guzman in her official capacity as Administrator of the SBA, Janet Yellen in her official capacity as United States Secretary of Treasury, and the United States of America, and enter an Order declaring that the Sixth IFR is not in accordance with law and that it is arbitrary and capricious, permanently enjoining the SBA from enforcing the Sixth IFR against Forest View in determining eligibility, and ordering that the SBA must reimburse Forest View for all amounts improperly recouped on Forest View's deferred PPP loan between April 2023 and August 2023 including interest, and awarding Forest View its reasonable attorney fees and costs, and for such other, further and different relief as the Court deems just and equitable.

Dated this 22nd day of February, 2024.

Forest View Rehabilitation and Nursing Center, LLC, Plaintiff,

By: /s/ *Tiffany S. Beerman*
    Tiffany S. Beerman, #26548
    John A. Svoboda, #19888
    Dvorak Law Group, LLC
    9500 W. Dodge Rd., Ste. 100
    Omaha, Nebraska 68114
    Tel: 402-934-4770
    Fax: 402-933-9630
    tbeerman@ddlawgroup.com
    jsvoboda@ddlawgroup.com

AND

    Jason M. Sax, #6243815
    Zwelling Law, PLLC
    161 North Clark Street, Ste. 1600
    Chicago, IL 60601
    Tel: (312) 345-7231
    Fax: (312) 981-0051
    saxJ@zwellinglaw.com

Attorneys for Plaintiff.

# United States Small Business Administration

# Office of Hearings and Appeals

PAYCHECK PROGRAM APPEAL OF:

Forest View Rehabilitation and
 Nursing Center, LLC

        Appellant

Appealed from
SBA PPP Loan Number
 6431697306

**EXHIBIT A**

Issued: October 16, 2023

Docket No. PPP- 6431697306

*Appearances:* Tiffany Beerman, Esq., for Appellant
              Shamia Stewart, Esq., for SBA

## DECISION

### I. Introduction and Jurisdiction

The above-captioned appeal was timely filed, and OHA has jurisdiction to hear and decide the appeal pursuant to the authority of 13 C.F.R. Part 134, Subpart L.

For the reasons set forth below, the Appellant's **APPEAL IS DENIED**. It is determined that Appellant has not shown the Final SBA Loan Review Decision was based upon an error of fact or law affecting its conclusion Appellant was ineligible to receive a PPP loan.

### II. Background

#### A. Final SBA Loan Review Decision

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law. (Pub. Law.116-136). Appellant applied for the PPP loan at issue on April 6, 2020[1]. (AR at pp.1481- 1482). PPP loan number 6431697306 ("the Loan") was disbursed to Appellant by the lender, Fifth Third Bank, NA, on May 19, 2020, in the amount of $1,069,800. (AR at p. 1493).

---

[1] Appellant's application was signed by Paresh Vipani, CFO, and Michael Blisko, Owner and Manager of Appellant. (AR at 1481-1482).

On January 27, 2021, Appellant executed a PPP Loan Forgiveness Application (Form 3508) requesting forgiveness of the full amount of the Loan. (AR at pp. 1488-1492).

On June 10, 2021, the SBA informed the Appellant's lender it was conducting a review of Appellant's application for forgiveness and requested a copy of Appellant's loan application and all supporting documents, together with any memorandum or other analysis that the lender prepared in making its decision on borrower's Loan Forgiveness Application (AR at pp. 1460-1728). From June 17, 2021, through June 24, 2021, the SBA contacted Appellant's lender requesting additional borrower documents as follows:

> We are doing a thorough review of all documentation provided for the above referenced PPP loan forgiveness application. Based on our preliminary findings of the review, we are considering recommending a [ Partial Approval]. Please understand our recommendation is preliminary and will undergo more processing before reaching a final decision. We are considering this recommendation for the following reason(s):
>
> After doing the calculations showing loan amount $1,069,800 is showing short $71,300 if you have any additional information to increasing the forgiveness to full forgiveness to qualify you.
>
> - Annual Report 940
> - 2020 IRS Form 941
> - Q1 Document to show what the 2019 Per-tax Employee Contribution for Health Insurance
> - 2019 Employer Contributions to Employee Health Ins & Employee Ret Plans
> - Name and employee Gross Amount over $100K
>
> If you have additional information to address the issues mentioned above, please respond to this message In the PPP platform as soon as possible with the ADDITIONAL information. We would like to have all information before making a recommendation and forwarding for further processing. If this new information alters our current proposed recommendation, you will be notified of the change. Or, if you have no additional information to provide, please respond in the PPP platform that you do not have additional information. We have sent this same message through the platform.

(AR at pp. 1469-1471). On November 29, 2021, the SBA issued a Final Loan Review Decision for partial forgiveness. The Final Loan Review Decision was based on the following review:

> SBA has determined that the borrower was ineligible for the PPP
> loan amount received. The reason(s) for SBA's decision is as
> follows:
>
> After review of the documentation provided, the SBA has
> recalculated the borrower's maximum eligible loan amount and
> thus limited forgiveness to this eligible amount. It has been
> confirmed the loan origination amount included FICA and taxes
> for Federal, Social Security and Medicare, which is not correct.
> Employer's contributions to the employee's health plan are in the
> amount of $84,333, while employer's contributions to the
> employee's retirement plan are in the amount of $13,721, as
> verified with the detailed payroll journal prepared by third party
> payroll service provider. The same detailed payroll journal
> identifies 4 employees with annualized earnings in excess of
> $100,000, bringing the total of excess wages to $72,120.
>
> Upon recalculating the eligible maximum loan amount, it has been
> determined that the total payroll costs equal $4,836,442, when
> divided by 12, produces an average monthly payroll of $403,037.
> The maximum eligible loan amount is $1,007,592, which is 2.5
> times the average monthly payroll. When verifying forgiveness
> documentation, gross wages during the covered period are
> sufficient to support loan forgiveness on the eligible origination
> amount.

(AR at pp. 24-25). However, on December 16, 2021, after the issuance of the November 29,
2021, Final Loan Review Decision, SBA's internal notes indicated that Appellant exceeded the
maximum amount for a single corporate group. SBA's notes say the following:

> The borrower exceeded the limitations of $20M for a single
> corporate group. The loan was disbursed after 4/30/2020. Please
> see attached narrative for greater details.

(AR at p. 15). On April 19, 2022, SBA informed Appellant's Lender that they would be doing
another review of Appellant's forgiveness application. The review was triggered, in relevant
part, by issues concerning Appellant's affiliates and the aggregate loan amount issued to
Appellant's corporate group. SBA's notification states the following:

> We are doing a thorough review of all documentation provided for
> the above referenced PPP loan forgiveness application. Based on
> our preliminary findings of the review, we are considering
> recommending a [Full Denial]. Please understand our
> recommendation is preliminary and will undergo more processing
> before reaching a final decision. We are considering this
> recommendation for the following reason(s): After a review of the

3

documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $20,000,000 of PPP loans in the aggregate.

(AR at pp.1479-1480).

On May 5, 2022, the SBA's internal notes refers to a "Final Affiliation Narrative", a document prepared by SBA. (AR at p. 15). The Affiliate Narrative worksheet, which was compiled by using information obtained from multiple 3511s (Affiliation worksheet), SBA loan application schedule As, and other information in the loan files, identified PPP loans funded and disbursed to 61 separate entities that appeared to have common ownership and management with Appellant. (AR at pp. 1693-1710). The worksheet summary stated, in part:

### **Affiliation Through Common Ownership**:

 • 203 Entities are affiliated through common ownership or management of Moishe Gubin, and Michael Blisko and are largely established in the Midwest and Southeast. Entities receiving PPP loans are located in Indiana (20), Illinois (14), Arkansas (14), Tennessee (13), New York (2), and New Jersey (1.)
• Moishe Gubin and Michael Blisko have affiliation through ownership by owning these entities directly or indirectly through ownership of Gubin Enterprises (100% owned by Moishe Gubin), Blisko Enterprises (owned by Michael Blisko), Global Health Ventures (Moishe Gubin and Michael Blisko are 2 of 5 Board members and have ownership through New York Boys Management LLC.)
• These 203 entities include 63 PPP loans. o 61 loans were funded and disbursed; 2 loans were canceled.
• While Moishe Gubin and Michael Gubin individually do not have a majority ownership, they do combine for a majority ownership of the entities that are part of the affiliated group. This gives them the power control more than 50% of the voting equity each entity and control of the 203 entities that are deemed to have common ownership.

(*Id.* at p. 1693-1694). The Affiliate Narrative Worksheet included the following spreadsheet:

continued next page

Loans with Affiliation Based on Common Ownership and Management
Of Moishe Gubin and Michael Blisko

| BORROWER NAME | PPP SBA LOAN # | # EMPLOYEES | Loan Amount |
|---|---|---|---|
| Approved Funding Corp | 7637837703 | 18 | $224,500.00 |
| Precious Care Management LLC | 8316277400 | 7 | $62,500.00 |
| The Waters of Batesville II LLC | 6995267105 | 77 | $596,475.00 |
| The Waters of Clifty Falls II LLC | 7441877103 | 68 | $606,767.00 |
| The Waters of Gallatin, LLC | 6797547105 | 89 | $747,571.00 |
| The Waters of Huntingburg II LLC | 7765667106 | 51 | $513,722.50 |
| The Waters of Martinsville II LLC | 7840937105 | 89 | $664,109.00 |
| The Waters of Princeton II LLC | 7987727106 | 90 | $626,990.00 |
| The Waters of Rising Sun II LLC | 7984307103 | 54 | $390,652.00 |
| THE WATERS OF SCOTTSBURG II LLC | 7544337108 | 66 | $634,147.50 |
| The Waters of Springfield, LLC | 7869027107 | 63 | $505,175.00 |
| The Waters of Stamps, LLC | 7842087103 | 69 | $448,787.00 |
| The Waters of Winchester, LLC | 7521037109 | 73 | $711,484.00 |
| The Waters of Cheatham, LLC | 6667337103 | 70 | $607,745.00 |
| The Waters of Clinton, LLC | 6711037105 | 89 | $713,084.00 |
| The Waters of Covington II LLC | 7544417108 | 99 | $789,422.50 |
| The Waters of Greencastle II LLC | 7720607106 | 71 | $629,205.00 |
| The Waters of Johnson City, LLC | 6943867106 | 84 | $563,532.50 |
| The Waters of Robertson, LLC | 7884247101 | 59 | $445,254.00 |
| Forest View Rehabilitation and Nursing Center LLC | 6431697306 | 119 | $1,069,800.00 |
| Mountain View Residential Home - A Waters Community, LLC | 8048717110 | 17 | $119,515.00 |
| Oak Lawn Respiratory and Rehabilitation Center, LLC | 6469857301 | 117 | $954,000.00 |
| Parkshore Estates Nursing and Rehabilitation Center, LLC | 6732007302 | 166 | $1,374,400.00 |
| The Waters of Dillsboro-Ross II LLC | 7668417110 | 74 | $726,467.50 |
| The Waters of Indianapolis II LLC | 7813397103 | 99 | $538,250.00 |
| The Waters of Lakebridge, LLC | 7004727106 | 101 | $771,032.50 |
| The Waters of New Castle II, LLC | 7957637102 | 48 | $377,014.00 |
| The Waters of North Little Rock, LLC | 7819797106 | 119 | $852,632.00 |
| The Waters of Roan Highlands, LLC | 7073907105 | 73 | $544,662.50 |
| The Waters of Shelbyville, LLC | 7166987106 | 81 | $589,160.00 |
| The Waters of Smyrna, LLC | 7354427110 | 97 | $636,085.00 |
| The Waters of Union City | 7423617102 | 57 | $500,640.00 |
| The Waters of White Hall, LLC | 7900127101 | 125 | $925,117.00 |
| West Dixon Assisted Living - A Waters Community | 8033287109 | 12 | $104,467.00 |
| West Park a Waters Community, LLC | 7862277109 | 73 | $538,857.00 |
| Hot Springs Nursing and Rehabilitation - A Waters Community, LLC | 7937387102 | 130 | $1,078,682.00 |

2

Narrative_Final_1112022.pdf   [2022/01/12 13:47:46]                                    1694 of 1728

| | | | |
|---|---|---|---|
| The Waters of Muncie II, LLC | 7937777101 | 70 | $504,835.00 |
| Infinity Healthcare Management of Florida LLC | 8803838406 | 29 | $418,490.00 |
| UMUC Management LLC | 7410817409 | 12 | $121,200.00 |
| Alpha Home - A Waters Community, LLC | 7936017105 | 78 | $564,285.00 |
| BELLA MONTE RECOVERY II LLC | 2992827702 | 27 | $253,172.00 |
| Continental Nursing and Rehabilitation Center | 1158947805 | 144 | $1,231,400.00 |
| Freedom Hospice LLC | 9717867003 | 15 | $239,103.96 |
| Heritage Home Health Services, LLC | 9754397003 | 24 | $350,310.00 |
| Lakeview Rehabilitation and Nursing Center, LLC | 6554187306 | 143 | $1,237,200.00 |
| Midtown Post Acute and Rehabilitation-a Waters Community, LLC | 7669407109 | 124 | $953,980.00 |
| Momence Meadows Nursing & Rehabilitation | 1154377803 | 79 | $618,500.00 |
| MONARCH HOSPICE & PALLIATIVE CARE, INC | 5737047003 | 35 | $540,180.00 |
| Parker Nursing & Rehabilitation Center, LLC | 2028017205 | 73 | $500,478.00 |
| South Point Nursing & rehabilitation Center | 1152177809 | 206 | $1,601,200.00 |
| THE CORE CENTERS II LLC | 1258247706 | 15 | $145,940.00 |
| The Waters of Cumberland, LLC | 7612587105 | 88 | $762,371.00 |
| The Waters of Fort Smith, LLC | 7751757108 | 128 | $963,500.00 |
| The Waters of Lebanon | 7951627109 | 55 | $419,070.00 |
| The Waters of Mountain view, LLC | 7797267109 | 96 | $633,742.50 |
| The Waters of Newport, LLC | 7731677104 | 114 | $731,107.00 |
| The Waters of Rogers | 7693277107 | 111 | $836,407.00 |
| The Waters of West Dixon, LLC | 7993627107 | 103 | $688,532.00 |
| The Waters of Woodland Hills, LLC | 7576847102 | 40 | $409,432.78 |
| United Rx | 3475337301 | 264 | $3,051,550.00 |
| West Suburban Nursing and Rehabilitation Center, LLC | 6589157308 | 164 | $1,695,600.00 |
| **Grand Total** | | **5031** | **$41,653,490.74** |

| Withdrawn PPP Loans | | | |
|---|---|---|---|
| **The Waters of Robertson, LLC** | 7115057109 | | |
| **Midway Neurological and Rehabilitation Center, LLC** | 6415077308 | | |

5

(Id. at p. 1695). With regards to loan limitation to a single corporate group, the Affiliation Narrative Worksheet concluded:

> Loan Limitation Corporate Group 1 – Moishe Gubin and Michael Blisko
>
> • While the affiliated group of Moishe Gubin and Michael Blisko are eligible for PPP financing base on the Alternative Size Standard, they exceed the limit for a single corporate group of $20 million.
>
> • All PPP loans within this corporate group total $41,208,236.74.
>
> • However, 46 Loans, totaling $27,594,038.74, were disbursed on, or prior to, April 30, 2020. While the total exceeds the maximum allowed to a single corporate group, loans exceeding the limitation but disturbed on, or prior to, April 30, 2020, are eligible for PPP financing as described in IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and NonInsured Depository Institution Lenders......
>
> • The corporate group of Moishe Gubin and Michael Blisko reached the limitation for PPP financing to a single corporate group prior to April 30, 2020. Therefore, any entity associated with this corporate group was ineligible for additional PPP financing after April 30, 2020, as described in IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and NonInsured Depository Institution Lenders.
>
> • Entities associated with the corporate group received 15 PPP loans totaling $14,059,452 that were disbursed after April 30, 2020. All 15 entities were ineligible for PPP loans at the time funds were disbursed.
>
> • Of these 15 PPP loans:
> o 2 have a status of Accepted and need to be reviewed for denial.
> o 3 have a status of Denied and no further action is needed.
> o 2 have not been submitted for forgiveness. Additionally, Chron notes should be entered detailing the reason for each loan's lack of eligibility.
> o 8 have a status of Payment Confirmed.

(AR at pp. 1703-1705). The following spreadsheet was included to show the 15 PPP loans that were disbursed after April 30, 2020:

6

| Loan # | Borrower | Loan Amount | Disbursement Date | Status |
|---|---|---|---|---|
| 7637837703 | Approved Funding Corp | $224,500.00 | 5/8/2020 | Accepted |
| 8316277400 | Precious Care Management LLC | $62,500.00 | 5/22/2020 | Accepted |
| 6469857301 | Oak Lawn Respiratory and Rehabilitation Center, LLC | $954,000.00 | 5/18/2020 | Denial Under Review |
| 6732007302 | Parkshore Estates Nursing and Rehabilitation Center, LLC | $1,374,400.00 | 5/18/2020 | Denial Under Review |
| 6431697306 | Forest View Rehabilitation and Nursing Center LLC | $1,069,800.00 | 5/19/2020 | Denial Under Review |
| 7410817409 | UMUC Management LLC | $121,200.00 | 5/29/2020 | Not Yet Submitted for Forgiveness |
| 8803838406 | Infinity Healthcare Management of Florida LLC | $418,490.00 | 2/25/2021 | Not Yet Submitted for Forgiveness |
| 2992827702 | BELLA MONTE RECOVERY II LLC | $253,172.00 | 5/1/2020 | *Payment Confirmed* |
| 1258247706 | THE CORE CENTERS II LLC | $145,940.00 | 5/1/2020 | *Payment Confirmed* |
| 3475337301 | United Rx | $3,051,550.00 | 5/1/2020 | *Payment Confirmed* |
| 1158947805 | Continental Nursing and Rehabilitation Center | $1,231,400.00 | 5/18/2020 | *Payment Confirmed* |
| 1152177809 | South Point Nursing & rehabilitation Center | $1,601,200.00 | 5/18/2020 | *Payment Confirmed* |
| 6554187306 | Lakeview Rehabilitation and Nursing Center, LLC | $1,237,200.00 | 5/19/2020 | *Payment Confirmed* |
| 1154377803 | Momence Meadows Nursing & Rehabilitation | $618,500.00 | 5/19/2020 | *Payment Confirmed* |
| 6589157308 | West Suburban Nursing and Rehabilitation Center, LLC | $1,695,600.00 | 5/19/2020 | *Payment Confirmed* |

(*Id.* at p.1705). Internal SBA notes, dated May 6, 2022, document the following conclusion:

> SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows:
>
> After a review of the documentation provided, the SBA concludes that the Borrower business which is part of a corporate group has received more than $20,000,000 of PPP loans in the aggregate. The corporate group of Moishe Gubin and Michael Blisko reached the limitation for PPP financing to a single corporate group prior to April 30, 2020. Therefore, any entity associated with this corporate group was ineligible for additional PPP financing after April 30, 2020, as described in IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders. • Entities associated with the corporate group received 15 PPP loans totaling $14,059,452 that were disbursed after April 30, 2020. All 15 entities were ineligible for PPP loans at the time funds were disbursed. • Of these 15 PPP loans: 5 have a status of Accepted/Denial Under Review and need to be reviewed for denial. (This loan is listed in these 15 PPP loans.).

(AR at p. 14).

On June 3, 2023, the SBA issued its Final SBA Loan Review Decision (FLRD). (AR at pp. 22-23). The decision concluded Appellant was ineligible for the PPP loan received due to exceeding the maximum allowable amount to a single corporate group. The FLRD explained:

> SBA has determined that the borrower was ineligible for the PPP loan. The reason(s) for SBA's decision is as follows: After a

> review of the documentation provided, the SBA concludes that the
> Borrower business which is part of a corporate group has received
> more than $20,000,000 of PPP loans in the aggregate. A thorough
> analysis of the supporting documentation confirms that the
> corporate group of Moishe Gubin and Michael Blisko exceeded the
> limitation for PPP loan funds to a single corporate group prior to
> April 30, 2020. Therefore, any entity associated with/listed under
> this corporate group was ineligible for additional PPP funding after
> April 30, 2020. This loan has been identified as one of the loans
> funded after the maximum allowable amount was exceeded.

*Id.*

## **B. Appeal**

The Appellant timely filed its appeal on July 3, 2023. (Portal Doc, *Forest View-PPP Appeal w/Exhibits A-H)*. In its appeal, Appellant argues, in part:

> Borrower believes that the SBA's final loan review decision
> regarding its PPP loan was erroneous for the following reasons:
> (A) the SBA previously forgave Borrower's SBA loan 18 months
> prior; (B) the interim final rule adopting the corporate group
> limitation cannot be retroactively applied to Borrower's loan; (C)
> the corporate group limitation exceeds the scope of the SBA's
> authority; and (D) even if the corporate group limitation is
> applicable to Borrower, which it is not, Borrower is not part of a
> corporate group and is fully eligible for its PPP loan. (Id. at pp. 4-
> 5)[2].

Appellant further contends that because they have no majority owner they therefore do not fall within the definition of a corporate group. Appellant's argument is below:

> Borrower is owned by Michael Blisko ("Blisko") (50%) and Gubin
> Enterprises Limited Partnership ("Gubin Enterprises") (50%). See
> Exhibit G: Schedule K-1 from Borrower's 2019 and 2020 Tax
> Returns.[4] Gubin Enterprises, in turn, is owned by several trusts
> where the beneficial ownership rests with four individuals. See
> Exhibit H: Agreement of Limited Partnership of Gubin
> Enterprises.[5] Blisko has no ownership interest in Gubin
> Enterprises. As such, **Borrower does not have a majority owner**,
> meaning a person or entity who has ownership of "more than 50
> percent of the entity." 12 C.F.R. § 1234.2 (emphasis added).

---

[2] Appellants full Appeal can be viewed in the OHA Portal.

Without a majority owner, Borrower cannot be part of a "corporate group" pursuant to the definition in the Sixth IFR. Further, because there is no majority owner, there is no "common parent" under the Sixth IFR. Black's Law Dictionary defines a "parent corporation" as "[a] corporation that has a controlling interest in another corporation (called a subsidiary corporation), usu. through ownership of more than one-half the voting stock. — Often shortened to parent. — Also termed parent company." Black's Law Dictionary 418 (10th ed. 2014) (italics in original, bold emphasis added); cf. 15 U.S.C. § 636(a)(36)(D)(iv) (noting applicability of the affiliation standards)[6]. Neither Blisko, an individual, nor Gubin Enterprises can meet the definition of a "common parent" because they do not hold a controlling interest in Borrower. Further, Blisko cannot be a "common parent[s]" because he is an individual, not a company.

(*Id.* at pp. 16-17).

## III. DISCUSSION

### A. Standard of Review

At the outset, it is noted that the Appellant has the burden of proving all elements of its appeal. Specifically, to prevail, the Appellant must prove that the Final SBA Loan Review Decision is based upon a clear error of fact or law. (13 C.F.R. §134.1210).

### B. Analysis

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes. In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. (15 U.S.C. § 636(a)(36)(D)).

On May 4, 2020, an Interim Final Rule (85 FR 26324) was issued to address the use of PPP loan funds by large corporate groups. A limit was set on the amount of PPP loans that could be loaned to a large corporate group that was majority owned by a single individual or corporate entity.

The wording of the Interim Final Rule stated as follows:

> 1. Can a single corporate group receive unlimited PPP loans?
>
> No. To preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate.
>
> For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent. This limitation shall be immediately effective with respect to any loan that has not yet been fully disbursed as of April 30, 2020.
>
> It is the responsibility of an applicant for a PPP loan to notify the lender if the applicant has applied for or received PPP loans in excess of the amount permitted by this interim final rule and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule. Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness. A lender may rely on an applicant's representation concerning the applicant's compliance with this limitation. …
>
> SBA's affiliation rules, which relate to an applicant's eligibility for PPP loans, and any waiver of those rules under the CARES Act, continue to apply independent of this limitation. Businesses are subject to this limitation even if the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules. [See 13 CFR § 121.103]

(85 FR 26324, May 4, 2020).

The above regulation states that there is a limit on the amount of loans dispersed for, businesses that are part of a single corporate group and they are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent. To determine if the Appellant is in a single corporate group and controlled by it, it must be determined if they are affiliated with said group. The CARES act incorporated the existing SBA rules for affiliation in 13 CFR § 121.103(a). By design, the SBA affiliation rules are intended to be broadly applied. Title 13 C.F.R. § 121.103(a) provides:

(a) ***General Principles of Affiliation.***

(1) Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists.

(2) SBA considers factors such as ownership, management, previous relationships with or ties to another concern, and contractual relationships, in determining whether affiliation exists.

(3) Control may be affirmative or negative. Negative control includes, but is not limited to, instances where a minority shareholder has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.

(4) Affiliation may be found where an individual, concern, or entity exercises control indirectly through a third party.

(5) In determining whether affiliation exists, SBA will consider the totality of the circumstances, and may find affiliation even though no single factor is sufficient to constitute affiliation.

In accord with the foregoing, 13 C.F.R. § 121.301(f)(1) details circumstances under which entities are to be considered affiliated:

(1) Affiliation based on ownership. For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. **If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.**

In its appeal, Appellant argues that there is no majority owner of Appellant and thus it cannot be a part of a corporate group. (Portal Doc, *Forest View-PPP Appeal*). I disagree with Appellant's analysis. When applying the regulatory guidance from 13 C.F.R. § 121.301(f)(1), if there is no individual, concern or entity that owns or has the power to control more than 50 percent of the concern's voting equity, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) *or other officers, managing members, or partners to be in control* of the concern. Additionally, the SBA's affiliation guidelines in 13 CFR § 121.103

11

examine affiliation through a totality of the circumstances to determine the level or degree to which an entity is controlled or managed by another.

Here, Michael Blisko is the manager of the Appellant. (AR at pp. 891-892, 900,1488-1489, and Portal Doc, *Ex J- Aff of M. Blisko*). He has been shown to be a 50% owner of the Appellant. (AR at p. 919 and Portal Doc, *Ex J-Aff of M. Blisko* ). Further, the Operating Agreement, provided with Appellant's Appeal, lists Michael Bilsko as a manager. (Portal Doc, *Ex J- Aff of M. Blisko at p. 4*). The Operating Agreement defines Management of the Company "shall be managed under sole direction and control of the Managers." (*Id.* at p. 14). Additionally on April 6, 2020, Michael Blisko signed an application for a PPP loan on behalf of the Appellant. (AR at pp. 891-892). Addendum A to the PPP loan application also identifies the Appellant as "affiliated" with the other entities in question. (AR at p. 919). On May 18, 2020, Michael Bilsko signed the note for the PPP loan as an authorized manager of Appellant. (AR at p. 32). Finally, on January 27, 2021, Michael Blisko signed a PPP loan forgiveness form on behalf of the Appellant, further demonstrating ownership and control of Appellant. (AR at p. 1489). This all demonstrates, by acting on behalf of Appellant in securing a loan for Appellant, that there is a significant degree of managing control over Appellant.

As for Moishe Gubin, they are the President of Gubin Ventures GP, Inc., which is the General Partner of Gubin Enterprises Limited Partnership (Portal Doc, *Ex I- Aff M. Gubin*). Gubin Enterprises Limited Partnership owns 50% of Appellant. (Portal Doc, *Ex J-Aff of M. Blisko*). Additionally, both Michael Blisko and Gubin Enterprises Limited Partnership, own various percentages[3] of 203 other healthcare entities[4], 61 of which received PPP loans totaling more than $20,000,000.00. (AR at pp. 1693-1694). Ownership of 50% tends to provide a significant level of control over the entity. It is not the only determinative but is a strong indication of ownership and control of the entity.

As for the word partners, stated in 13 C.F.R. § 121.301(f)(1), the regulation allows for *partners to be in control* of the concern. ""Under the Uniform Partnership Act, a partnership is an association of two or more persons to carry on, as co-owners, a business for profit." (*internal citations omitted*) *Sys. Dev. Integration, LLC v. Comput. Scis. Corp., 739 F. Supp. 2d 1063, 1084 (N.D. Ill. 2010).*

Due to Michael Blisko's involvement in over 203 other healthcare entities, to include nursing homes and rehabilitation centers, with Gubin Enterprises Limited Partnership, both

---

[3] Some of these percentages, which range from 29.62% to 50% can be found on Appellant's Addendum A to PPP loan application and the Affiliate Spreadsheet. (AR at pp. 919 and 1515-1519).

[4] Approximately 62 of the entities that received loans were nursing care facilities under NAICS code 623110. The rest were a mix of Continuing Care Retirement Communities (623212), Outpatient Mental and Substance Abuse Centers (621420); Office of Physicians and Mental Health Specialists (621112); Continuing Care Retirement Communities (623311); Home Health Care Services (621610); Medical, Dental, and Hospital Equipment and Supplies Merchant Wholesalers (423450); Pharmacies and Drug Stores (446110); Surgical Appliance and Supplies Manufacturing (339113); Other Professional and Technical Services (541990); Other Management Consulting Services (541618); Other Activities Related to Credit Intermediation (522390). (AR at p.1693).

Michael Blisko and Gubin Enterprises Limited Partnership, constitute a partnership and are such part of a corporate group.

The Appellant additionally argues that the Interim Final Rule, issued May 4, 2020, does not apply to them because their application was signed on April 6, 2020, and to enforce the later regulation on Appellant's application is a retroactive application of regulation which the SBA did not have the authority to enforce retroactively. (Portal Doc, *Forest View-PPP Appeal*). Appellant is correct that they applied on April 6, 2020, before the issuance of the Interim Final Rule in question, however they did not have a signed promissory note until May 18, 2020, which is 14 days after the publication and immediate implementation of 85 FR 26324 on May 4, 2020. Thus, the Appellant is incorrect in stating the regulation was applied retroactively to Appellant, since Appellant had not signed the PPP loan note and received the funds until after 85 FR 26324 was published. Further, the Interim Final Rule, applies to loans not fully disbursed by April 30, 2020. Appellant's loan was disbursed on May 18, 2020. Thus, for all the reasons stated above, the cited Interim Final Rule is applicable to Appellant's loan, and does preclude loans to a corporate group that combined are in excess of $20 million.

Appellant's argument that SBA's rule was contrary to the plain language of the CARES Act need not be addressed as it is outside the authority of an Administrative Law Judge or an Administrative Judge, such as myself. I am therefore only authorized to determine whether adopted regulations and policies by SBA have been appropriately applied to the facts the case.

> An Administrative Judge or Administrative Law Judge has no constitutionally based judicial power, see Ramspecky. Federal Trial Examiners Conference, 345 U.S. 128,132-33 (1953), but are employees of the executive branch department or agency employing them. See e.g., 20 U.S.C. §1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department"). As such ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. See Nash v. Bowen, 869 F.2d 675, 680(2d Cir.), cert, denied, 493 U.S. 813 (1989); Mullen v. Bowen, 800 F.2d 535, 540-41 n.5 (6th Cir.1986); Brennan v. Department of Health and Human Services, 787 F.2d 1559 (Fed. Cir.), cert. denied, 479 U.S. 985 (1986); Goodman v. Svahn, 614 F. Supp. 726, 728 (D.D.C. 1985);Association of Administrative Law Judges, Inc. v. Heckler, 594 F. Supp. 1132, 1141 (D.D.C.1984); c f D'Amico v. Schweiker, 698 F.2d 903, 906 (7th Cir. 1983). Accord 34 CFR §81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

*Auth. of Educ. Dep't Admin. L. Judges in Conducting Hearings,* 14 U.S. Op. Off. Legal Counsel 1, 2–3 (1990), 1990 WL 750326, at *1–6, https://www.justice.gov/file/20131/download.

Thus, an Administrative Judge has no authority to decide the constitutionality of an SBA law, regulation, or policy or to interpret such contrary to SBA's established regulation or policy

[emphasis added]. Neither initial nor final decisions rendered by the SBA's Office of Hearings and Appeals (OHA) under this subpart are precedential, and thus decisions in other PPP cases are not persuasive in this matter. 13 CFR §134.1212.

As for Appellant's arguments in its Motion to Compel, their appeal and response, regarding whether recoupment of monies, after appellant received the November 29, 2021 Final Loan Review Decision, from Appellant's PPP loan was improper or not. The issue is now moot, due to the June 03, 2023 Final Loan Review Decision being upheld.

Lastly, as to Appellant's Objection to the Administrative Record, Appellant objects in part:

> 9. The Affiliate Narrative Worksheet contains numerous redactions by the SBA as to its analysis of the loans it argues are part of a "corporate group" with Appellant.
> 10. While Appellant's position is that the SBA cannot clawback Appellant's loan and that the corporate group limitation does not apply to Appellant, Appellant still has a right to fully examine the SBA's analysis.
> 11. The SBA failed to include any basis as to why such redactions contain privileged information (and arguably, such information has no basis to be privileged under the law given its relevance to the pending appeal).
> 12. The Affiliate Narrative Worksheet also contains references to attachments, but none of the referenced attachments are included in the AR.

(Portal Doc, *Objection to Administrative Record at p. 2*)

I am denying Appellants objections based on the following: First, Appellant's Argument that there are numerous redactions to SBA's Affiliate Narrative worksheet is twofold- there are in fact redactions to the SBA's Affiliate Narrative Worksheet, however the majority of those redactions are in relation to Hold Codes placed on a majority of different PPP loans taken by the owners of Appellant, and different corporate groups SBA found to exist. (AR at pp. 1705-1709). There are no redactions listed on the chart[5] provided by SBA for loans that fall under the corporate group of Moishe Gubin and Michael Blisko, that were disbursed prior to April 30, 2020. (AR at p.1704-1705). Secondly, Appellant argues that the Affiliate Narrative Worksheet contains references to attachments. Having reviewed the document carefully, I fail to see anywhere in the narrative where SBA cites to documents and fails to attach them. However, if Appellant is referring to the following sentence in the Affiliate Narrative Worksheet:

> All information was obtained from multiple SBA 2483 schedule A, ETRAN, multiple 3511s, Guidehouse reports, and other information contained in the loan files.

---

[5] The chart can be found on p. 7 of this decision.

(AR at p. 1693). These documents are listed in the Administrative Record and can be found throughout. If that is the case, Appellant has failed to properly ascertain them or review the record. Further Appellant has failed to where in the Affiliate Narrative Worksheet SBA has referenced attachments.

Based on my review of the record, I have concluded that the regulations and policies of SBA were properly applied to the facts of this case.

## C. Conclusion

Based upon the foregoing, it is determined that Appellant has not shown the Final SBA Loan Review Decision was based upon an error of fact or law. Accordingly, **the Appellant's appeal is DENIED.**

This is an initial agency decision. However, unless a request for reconsideration is filed pursuant to 13 C.F.R. section 134.1211(c)(1), or unless the SBA Administrator elects to review this decision per 13 C.F.R. section 134.1211(d), this decision shall become the final agency decision of SBA 30 calendar days after its service. 13 C.F.R. § 134.1211. In accordance with the regulations, a party may file a request for reconsideration within 10 calendar days after service of this decision under 13 C.F.R. section 134.1211(c)(1). The requesting party may serve its petition via the OHA Case Portal at *https://appeals.sba.gov*. It is each party's responsibility to review applicable rules and procedures. 13 C.F.R. 134.1211 (c)(1). **A request for reconsideration must clearly show an error of fact or law material to the initial decision**. 13 C.F.R. § 134.1211(c)(1).

**SO ORDERED.**

*Gary D. Smith*
Gary D. Smith
Administrative Judge