UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOREST VIEW REHABILITATION AND NURSING CENTER, LLC, | ) ) ) |
| Plaintiff, | ) |
| v. | ) ) |
| THE UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as the United States Secretary of Treasury; and THE UNITED STATES OF AMERICA, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

No. 24 C 1490

Judge Cummings

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT

The United States, the United States Small Business Administration, Administrator Isabella Casillas Guzman, and Secretary of Treasury Janet Yellen, by their attorney, Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, state as follows for their answer to plaintiff Forest View Rehabilitation and Nursing Center, LLC's complaint:

### First Defense

Neither the challenged agency decision nor the challenged agency actions were arbitrary, capricious, contrary to law, in excess of statutory jurisdiction, authority, or limitations, or without observance of procedure required by law.

### Second Defense

There is no waiver of immunity for Forest View's claims for injunctive relief, which are strictly prohibited against SBA.

**Third Defense**

SBA, its agencies, its employees, and its agents complied with the requirements of the CARES Act, the PPP, and the regulations issued thereunder, with respect to the decision and actions at issue in the complaint.

**Fourth Defense**

Any claim that Forest View failed to present or to properly present before SBA's Office of Hearings and Appeals ("OHA") is barred under issue preclusion principles.

**Fifth Defense**

Facts that Forest View failed to include in the OHA administrative record and that were not included cannot support a claim under the Administrative Procedure Act.

**Sixth Defense**

Answering the specific allegations of the complaint, the defendants admit, deny, or otherwise aver as follows:

**Nature of the Action**

1.     **Complaint:**    In order to mitigate the economic devastation caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020).  Congress's purpose in adopting the CARES Act was to ensure continued employment and income for the millions of Americans employed by small businesses. To accomplish that critical goal, Congress created the Paycheck Protection Program ("PPP"), which authorizes the SBA to guarantee hundreds of billions of dollars in loans to small businesses.   PPP loans were to be made by private lenders, and Congress pledged to forgive these loans (i.e., the federal government would reimburse the bank) provided that, *inter alia*, the borrowers used most of the proceeds to pay employees' wages.   *See* 15 U.S.C. §§ 636(a)(36), 9005-06.

**Response:**     Defendants admit that the CARES Act was passed to mitigate the economic devastation caused by the COVID-19 pandemic.  Defendants further admit that one of Congress's purposes in enacting the CARES Act was to ensure continued employment and income for millions of Americans through the Paycheck Protection Program, and that the program

authorized SBA to guarantee billions of dollars in loans to eligible businesses. Defendants deny the remaining allegations of paragraph 1, including Forest View's characterization of 15 U.S.C. §§ 636(a)(36), 9005-06.

2. **Complaint:** "The PPP is a *new* loan program to be administered by the SBA under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)). Its purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms." *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (emphasis added). Section 1106 of the CARES Act "provides that a borrower's indebtedness under a PPP loan will be forgiven to the extent that the borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent, and utilities during the eight-week period following the loan's origination." *Id.* (citing Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020)).

**Response:** Defendants admit that Forest View accurately quotes from *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020), but deny that the case fully characterizes the purposes of the PPP and section 1106 of the CARES Act. Defendants also deny that the case cited Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020), as authority for its summary of section 1106. Defendants deny the remaining allegations of paragraph 2.

3. **Complaint:** Historically, prior to the CARES Act's enactment, the SBA treated certain classes of businesses as ineligible for other SBA lending programs. *See* 13 C.F.R. § 120.110. Aware of this, Congress purposefully intended that the CARES Act would "[i]ncrease[] eligibility" for forgivable PPP loans, *id.* § 636(a)(36)(D), making them widely available to small businesses across the commercial spectrum. Congress did so by establishing specific, limited criteria for PPP loan guarantee eligibility and by providing unambiguously that "*any* business concern . . . *shall* be eligible" for a forgivable PPP loan if it met those criteria. *Id.* § 636(a)(36)(D) (emphasis added).

**Response:** Defendants admit that SBA has excluded certain types of small businesses from eligibility for SBA lending programs and deny the remaining allegations of paragraph 3.

4.     **Complaint:**     Relying on this expanded eligibility, Forest View, a skilled rehabilitation and nursing center, applied for a PPP loan on April 6, 2020.  The SBA approved the loan under the PPP's expanded eligibility criteria on April 30, 2020, and the lender disbursed Forest View's PPP loan on or about May 18, 2020.

      **Response:**     Defendants admit that Forest View applied for a PPP loan and that

its application form (Form 2483) contains signatures dated April 6 and 13, 2020.  Defendants

further admit that the administrative record includes a Transcript of Account reflecting that the

lender disbursed the loan on May 19, 2020.  Defendants deny that SBA approved Forest View's

loan.  Defendants lack knowledge or information sufficient to form a belief about the truth of the

remaining allegations of this paragraph; accordingly, they are denied.

5.     **Complaint:**     "An eligible recipient **shall** be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds are used for certain payroll expenses.  CARES Act § 1106(b), (d) (emphasis added); Paycheck Protection Program Flexibility Act ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641, § 3(b) (2020).  The SBA is required to reimburse the private lender for any PPP loan determined eligible for forgiveness.  CARES Act § 1106(c)(3).  PPP loan recipients must submit forgiveness applications to be considered.  *Id.* § 1106(e).  But Section 1106(b) of the CARES Act provides for forgiveness of a PPP loan only if the borrower was an "eligible recipient" of the PPP loan to at the time it applied for the PPP loan.

      **Response:**     Defendants admit that "An eligible recipient shall be eligible for

forgiveness of indebtedness" is an accurate quote of the first part of the first sentence of section

1106(b) of the CARES Act and that PPP loan recipients must submit forgiveness applications to

be considered for forgiveness.  Defendants deny the remaining allegations of paragraph 5.

6.     **Complaint:**     Despite clear direction from the CARES Act, the SBA adopted its first Interim Final Rule, effective April 15, 2020, which imposed its pre-COVID-19, pre-CARES Act exclusions on PPP loan eligibility (the "First IFR").

      **Response:**     Deny.

7.     **Complaint:**     Although SBA published its intention to issue the First IFR on April 2, 2020, it expressly stated that the First IFR would not take effect until April 15, 2020.

      **Response:**     Defendants admit that the First Interim Final Rule ("IFR") was

published in the Federal Register on April 15, 2020, and that a copy of this IFR was also available

on the SBA and Treasury websites on April 2, 2020.  Defendants deny the remaining allegations

of paragraph 7.

8.     **Complaint:**     The SBA thereafter adopted six total Interim Final Rules.

       **Response:**     Deny.

9.     **Complaint:**     The Sixth Interim Final Rule, the rule at issue in this case, had a
posted effective date of May 4, 2020 (the "Sixth IFR").  The Sixth IFR imposes restrictions on the
amount of loans a single "corporate group" could receive in PPP loans, and it retroactively applied
this requirement to all loans that had not been fully disbursed by April 30, 2020.

       **Response:**     Defendants admit that the Sixth IFR imposes a limit on the amount

of loans a single "corporate group" could receive in PPP loans and deny the remaining allegations

of paragraph 9.

10.     **Complaint:**     The concept of this "corporate group" limitation was solely a
formation of the SBA in the Sixth IFR.

       **Response:**     Deny.

11.     **Complaint:**     The Sixth IFR lacks any basis in, and is directly contrary to, the plain
text, purpose, and context of the CARES Act.

       **Response:**     Deny.

12.     **Complaint:**     On March 11, 2021, after enactment of the Interim Final Rules,
Congress enacted the American Rescue Plan Act, Pub. L. No. 117-2, 135 Stat. 4 (Mar. 11, 2021)
(the "Rescue Plan"). The Rescue Plan "expanded the eligibility for PPP loans to certain non-profit
entities, and in doing so it again expressly incorporated the limitations embodied in the SBA's
regulations under 13 C.F.R. § 120.110," which is the pre-COVID-19, pre-CARES Act exclusions
on eligibility. *Nat'l Ass'n of Home Builders v. United States SBA*, No. 20-11780, 2021 U.S. Dist.
LEXIS 186548, at *32 (E.D. Mich. Sep. 28, 2021). "The disqualification enacted in the [Rescue
Plan] was included in verbatim provisions of the PPP 'second-round' enabling statute. The
inclusion of additional explicit constraints in the later enactments reinforces rather than contradicts
the conclusion that such limitations deliberately were omitted by Congress when it authorized the
first round of PPP." *Id.*

       **Response:**     Defendants admit that Congress enacted the American Rescue Plan

on March 11, 2021, and that Forest View accurately quotes from *Nat'l Ass'n of Home Builders v.*

*United States SBA*, No. 20-11780, 2021 U.S. Dist. LEXIS 186548, at *32 (E.D. Mich. Sept. 28,

2021).  Defendants deny that plaintiff fully and accurately characterizes 13 C.F.R. § 120.110 and

deny the remaining allegations of paragraph 12.

13.  **Complaint:**  The only maximum borrowing limit that Congress placed on loan amounts under both the PPP and the Rescue Plan was to limit loans to no more than $10,000,000 per single eligible borrower.  CARES Act, § 1102(1)(E)(ii); 15 U.S.C. § 636(a)(36)(E)(ii).  Congress never adopted a limitation for a maximum cap on "corporate groups."  *See id.*

> **Response:**  Deny.

14.  **Complaint:**  The SBA is applying corporate group limitations in the Sixth IFR to refuse to forgive loans it granted to businesses—including Forest View—that applied for a PPP loan in reliance on Congress's promise of loan forgiveness prior to the SBA's adoption of the Sixth IFR on May 4, 2020.  Small businesses risked their financial security by keeping employees on payroll during the COVID-19 pandemic with the benefit of PPP loans they were eligible to receive at the time they applied for them, and at the time that the SBA approved them.  Now, having complied with what Congress required, the SBA is finding that businesses must repay their loans because of the SBA's unlawful application of the Sixth IFR.

> **Response:**  SBA admits that it denied Forest View's forgiveness application
>
> because it exceeded the corporate group limitation in the Sixth IFR.  Defendants deny that SBA
>
> approved the loan.  Defendants lack knowledge or information sufficient to form a belief about the
>
> truth of the allegations in the second sentence; accordingly, they are denied.  Defendants deny the
>
> allegations in the third sentence and the remaining allegations of paragraph 14.

15.  **Complaint:**  This action under the Administrative Procedure Act ("APA") challenges the SBA's adoption of the Sixth IFR, and its application to Forest View.  Specifically, Forest View seeks a declaration that the Sixth IFR is unenforceable with respect to its PPP loan forgiveness application.

> **Response:**  Defendants admit that Forest View purports to challenge SBA's
>
> promulgation of the Sixth IFR and its application to Forest View under the Administrative
>
> Procedure Act.  Defendants deny that Forest View accurately characterizes the declaratory relief
>
> it seeks in its prayers for relief and deny the remaining allegations of paragraph 15.

16.  **Complaint:**  The Sixth IFR renders statutorily eligible business concerns ineligible for PPP loans or loan forgiveness in clear violation of the CARES Act.  This Court should "hold unlawful and set aside" the Sixth IFR. 5 U.S.C. § 706(2).

        **Response:**    Deny.

17.    **Complaint:**    Additionally, because the SBA applied retroactively the Sixth IFR, which was effective on May 4, 2020, to Forest View's loan, which it approved on April 30, 2020, the Court should "hold unlawful and set aside" the Sixth IFR as applied to Forest View as an impermissible retroactive application of the law. *Id.*

        **Response:**    Deny.

18.    **Complaint:**    Notwithstanding, the decision of the SBA's Office of Hearings and Appeals ("OHA") should be reversed as arbitrary, capricious, an abuse of discretion, and not in accordance with the law because it wrongfully found Forest View as part of a corporate group.

        **Response:**    Deny.

19.    **Complaint:**    Further, the OHA decision should be reversed as arbitrary, capricious, an abuse of discretion, and not in accordance with the law because it failed to consider the SBA's blatant violation of 13 C.F.R. § 134.1202 and 15 U.S.C. § 363(a)(36)(M)(ii)(II) when the SBA began collecting on Forest View's PPP loan during the pendency of the appeal.

        **Response:**    Deny.

**Parties**

20.    **Complaint:**    Forest View is a small business based out of Itasca, Illinois, that oeprates [sic] a skilled nursing and rehabilitation center**.**

        **Response:**    Defendants admit that Forest View filed documents in the underlying OHA appeal supporting that Forest View is a business organized as an Illinois limited liability company that runs a nursing and rehabilitation center in Itasca, Illinois, with an individual employee count of 119 at the time of loan application. Defendants deny the remaining allegations of paragraph 20.

21.    **Complaint:**    SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq.* Under the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), the SBA administers the PPP.

        **Response:**    Defendants admit that SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. § 631, *et seq.*, rather than 15 U.S.C. § 633, *et seq.* Defendants admit that SBA administers certain aspects of the PPP as set forth in the CARES Act. Defendants deny the remaining allegations of paragraph 21.

22.     **Complaint:**     Defendant Isabella Casillas Guzman is the Administrator of the SBA, and is sued only in her official capacity. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for causes of action brought under the APA.

      **Response:**     Defendants admit the allegations in the first sentence but deny that the second sentence accurately characterizes the law and deny the remaining allegations of paragraph 22.

23.     **Complaint:**     Defendant Janet Yellen is the Secretary of the United States Department of Treasury, and is sued only in her official capacity.

      **Response:**     Defendants admit that defendant Janet Yellen is the Secretary of the United States Department of Treasury and that she is sued only in her official capacity.  Defendants deny that either Secretary Yellen or the Department of Treasury is a proper defendant in this suit because Forest View purports to bring this lawsuit under the APA to challenge alleged actions of SBA, a federal agency that is separate and independent from the Department of Treasury.

24.     **Complaint:**     Defendant United States of America is a proper defendant in APA cases.  *See* 5 U.S.C. § 702.

      **Response:**     Defendants deny that Forest View accurately characterizes 5 U.S.C. § 702 but admit that the United States can be a proper defendant in APA cases.  Defendants deny the remaining allegations of paragraph 24.

## Jurisdiction and Venue

25.     **Complaint:**     This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

      **Response:**     Defendants deny that 28 U.S.C. § 1331 provides a basis for subject matter jurisdiction here.  Jurisdiction over lawsuits against the SBA Administrator can be provided by 15 U.S.C. § 634(b)(1).  Jurisdiction over petitions for judicial review under the APA can be provided by 5 U.S.C. § 702.

26.     **Complaint:**     Forest View has standing to seek review of the Sixth IFR because the SBA has used the rule to deny Forest View's loan forgiveness application.

**Response:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

27. **Complaint:** Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e).

   **Response:** Admit.

28. **Complaint:** The SBA's Sixth IFR is a final agency action under 5 U.S.C. § 704.

   **Response:** Deny. The Sixth IFR itself is a regulation, and paragraph 28 does not specify any particular action associated with it (*e.g.*, an instance of its application).

29. **Complaint:** Forest View is entitled to judicial review of the SBA's decision on Forest View's loan forgiveness application, and the OHA's Decision following appeal of the same. *See* 13 C.F.R. § 134.1211(g).

   **Response:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

### Factual Background

30. **Complaint:** Forest View is a Manager-Managed Limited Liability Company.

   **Response:** Defendants admit that Forest View submitted documents and information in the underlying OHA appeal indicating that it appears to be managed by managers and identifies itself as a limited liability company. Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 30; accordingly, they are denied.

31. **Complaint:** Forest View is a small skilled rehabilitation and nursing center located in Itasca, Illinois.

   **Response:** Defendants admit that Forest View filed documents in the underlying OHA appeal indicating that Forest View runs a nursing and rehabilitation center in Itasca, Illinois, with an individual employee count of 119 at the time of its loan application in April 2020. Defendants deny the remaining allegations of paragraph 31.

32.    **Complaint:**    Forest View is not a holding or parent company, nor does it have a holding or parent company.

    **Response:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

33.    **Complaint:**    At all times relevant, Forest View had the following ownership structure: Michael Blisko ("Blisko") individually owns 50%, and Gubin Enterprises Limited Partnership ("Gubin Enterprises") owns 50%.

    **Response:**    Defendants admit that certain documents and information submitted by Forest View in the underlying OHA appeal indicate that Forest View was owned by Michael Blisko (50% ownership) and Gubin Enterprises Limited Partnership (50% ownership).  Defendants deny the remaining allegations of paragraph 33.

34.    **Complaint:**    Gubin Enterprises is owned by several trusts, where the beneficial ownership rests with four individuals.  Blisko has no ownership interest in Gubin Enterprises.

    **Response:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 34, which concern Gubin Enterprises' current ownership; accordingly, they are denied.

35.    **Complaint:**    Forest View is managed by Blisko.

    **Response:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph, which concern Forest View's current management; accordingly, they are denied.

36.    **Complaint:**    Forest View suffered significant harm during the COVID-19 pandemic.  As a result of this harm, Forest View considered terminating some of its employees and reducing the wages of other employees in order for its business to survive.

    **Response:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

37.    **Complaint:**    Before promulgating any of the Interim Final Rules, the federal agencies responsible for implementing the PPP had touted the program as providing payroll assistance to any business with fewer than 500 employees.  *See, e.g.*, SBA, *Financial Assistance*

*from the US SBA for Small Businesses and Non-Profits*, (Mar. 31, 2020) ("Businesses . . . with 500 or fewer employees may apply."); U.S. Dep't of Treas., *Small Business Paycheck Protection Program*, (Mar. 31, 2020) ("All Small Businesses Eligible"); *see also* 15 U.S.C. § 636(a)(36)(D).

> **Response:** Defendants deny the allegations of paragraph 37 and further state that Forest View does not accurately describe the content of their cited sources or of 15 U.S.C. § 636(a)(36)(D).

38. **Complaint:** On or around April 6, 2020, in the face of financial hardship and challenging decisions, Forest View submitted a PPP Borrower Application to Fifth Third Bank, National Association (the "Lender") for a forgivable PPP loan in the amount of $1,069,800.00 to mitigate business losses and enable it to retain its employees through the economic downturn.

> **Response:** Defendants admit that Forest View submitted a PPP loan application in April 2020 and that the application contains signatures dated April 6 and 13, 2020. Defendants deny that the application sought a loan in the amount of $1,069,800, since the application was for $1,069,818. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph; accordingly, they are denied.

39. **Complaint:** Forest View was approved for its PPP loan by the Lender on April 30, 2020. At the time of the approval, it operated under the provisions stated by Congress, which provided that loans were for all businesses that met the size requirements for small businesses.

> **Response:** Defendants admit that Forest View was approved for a PPP loan by its lender, Fifth Third Bank, National Association, on April 30, 2020, based on Forest View's self-certification for a PPP loan. Defendants deny the remaining allegations of paragraph 39.

40. **Complaint:** On or about May 1, 2020, the SBA issued a Note to Forest View in the full amount of its requested $1,069,800.00.

> **Response:** Defendants admit that, during the OHA appeal, Forest View uploaded a note listing a loan amount of $1,069,800.00 and containing a signature by its authorized representative, Michael Blisko, dated May 18, 2020. Defendants deny that SBA issued the note to Forest View and any remaining allegations of paragraph 40.

41.    **Complaint:**    The full amount of Forest View's PPP loan was distributed to Forest View on or about May 18, 2020.

**Response:**    Defendants admits that the administrative record includes a Transcript of Account from Forest View's lender indicating that the lender disbursed the loan on May 19, 2020.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph; accordingly, they are denied.

42.    **Complaint:**    Forest View used its loan proceeds to meet payroll and other expenses permitted by the CARES Act.  Forest View used at least 60 percent of the loan proceeds for payroll.  While it experienced various operational challenges caused by the pandemic, Forest View was able to retain its working employees at the same payroll with the assistance of the PPP loan. Forest View did not reduce any of its employees' wages or terminate any of its employees because of the PPP loan.  Because of this, Forest View was able to continue providing rehabilitative and skilled nursing care to its patients.

**Response:**    Defendants deny Forest View's account concerning its retention and payment of employees; the administrative record indicates that Forest View represented that it had 119 employees in its April 2020 loan review application and then later represented that it had 61 employees (far fewer) in its January 2021 loan forgiveness application.   Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph; accordingly, they are denied.

43.    **Complaint:**    On or around January 27, 2021, as it was permitted to do so under the CARES Act, Forest View submitted a PPP Loan Forgiveness Application (Form 3508) to the Lender, requesting forgiveness for its full PPP loan amount.

**Response:**    Defendants admit that Forest View signed a PPP loan forgiveness application (Form 3508) on or around January 27, 2021, requesting forgiveness of the PPP loan in the amount of $1,069,800.00 and deny the remaining allegations of paragraph 43.

44.    **Complaint:**    The Lender determined Forest View should receive full loan forgiveness in the amount of $1,069,800.00 and submitted its decision to the SBA for final review.

**Response:**    Defendants admit that the lender submitted a request for loan forgiveness to SBA for $1,069,800.00 and deny the remaining allegations of paragraph 44.

45.    **Complaint:**    On or about November 29, 2021, the SBA notified Forest View that the SBA was forgiving $1,007,592.00 of Forest View's PPP loan (the "Forgiveness Letter").  The Forgiveness Letter explained that Forest View had miscalculated its maximum loan amount by including FICA and federal taxes, but that it was still receiving partial forgiveness in the amount of $1,007,592.00 (a $62,208.00 difference from its PPP loan).

   **Response:**    Defendants admit that SBA issued a decision on or about November 29, 2021, but deny that Forest View accurately characterizes the decision, which stated in pertinent part:

> SBA has determined that the borrower was ineligible for the PPP loan amount received.  The reason(s) for SBA's decision is as follows: After review of the documentation provided, the SBA has recalculated the borrower's maximum eligible loan amount and thus limited forgiveness to this eligible amount.  It has been confirmed the loan origination amount included FICA and taxes for Federal, Social Security and Medicare, which is not correct.  Employer's contributions to the employee's health plan are in the amount of $84,333, while employer's contributions to the employee's retirement plan are in the amount of $13,721, as verified with the detailed payroll journal prepared by third party payroll service provider.  The same detailed payroll journal identifies 4 employees with annualized earnings in excess of $100,000, bringing the total of excess wages to $72,120.  Upon recalculating the eligible maximum loan amount, it has been determined that the total payroll costs equal $4,836,442, when divided by 12, produces an average monthly payroll of $403,037.  The maximum eligible loan amount is $1,007,592, which is 2.5 times the average monthly payroll.  When verifying forgiveness documentation, gross wages during the covered period are sufficient to support loan forgiveness on the eligible origination amount.

Defendants deny the remaining allegations of paragraph 45.

46.    **Complaint:**    Forest View did not appeal the SBA's determination of partial forgiveness.  The SBA's decision became final 30 days later.  See 13 C.F.R. § 134.1201(b).

   **Response:**    Defendants admit that Forest View did not appeal the November 29, 2021 decision to OHA and deny the remaining allegations of paragraph 46.

47.    **Complaint:**    On or about January 17, 2023, Forest View contacted Lender to confirm that the $63,208.00 balance on the PPP loan was debited out of Forest View's accounts. In response, Lender stated it was "under the impression [Appellant's PPP] loan had been fully denied, so perhaps there was miscommunication from the SBA to our operations group.  I do not

see any balance debited on this loan, but will determine best course of action in the interim stay tuned" and would not take the appropriate payment from Forest View's accounts.

      **Response:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

48.    **Complaint:**    On or about January 23, 2023, Lender reached out to Forest View and stated, "[w]e followed-up with the SBA and they need to look into it further. The only determination we received was for partial forgiveness, though the SBA's system shows a Not Approved Decision—so it is unclear as to what the final decision was. I will let you know as soon as we hear anything in response."

      **Response:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

49.    **Complaint:**    Lender continued to investigate why Forest View could not pay the unforgiven part of its PPP loan.

      **Response:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

50.    **Complaint:**    On or about May 31, 2023, Forest View attempted to again confirm with Lender that the $62,208.00 was debited from its accounts.

      **Response:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

51.    **Complaint:**    On or about June 3, 2023, over 18 months after Forest View's PPP loan was partially forgiven by the SBA in the amount of $1,007,592.00, the SBA issued another final PPP loan review decision finding Forest View ineligible for PPP loan (the "Decision"), stating that Forest View was "part of a corporate group" that "received more than $20,000,000.00 of PPP loans in the aggregate" based on the Sixth IFR.

      **Response:**    Defendants deny that Forest View accurately characterizes the events referenced in this paragraph. Defendants admit that, on or about April 19, 2022, SBA informed Forest View's lender that it was reviewing the pertinent loan and considering recommending a full denial of loan forgiveness based on concerns associated with Forest View's membership in a corporate group that had received more than $20 million of PPP loans in the

aggregate. Defendants further admit that the corporate group rule required PPP loan applicants like Forest View to take affirmative steps to ensure that they do not receive or apply for PPP loans in excess of what the corporate group rule permits. Defendants further admit that SBA then conducted a thorough analysis and issued a final loan review decision on June 3, 2023, stating, among other things, that Forest View was ineligible for the PPP loan because it was part of a corporate group that had received more than $20 million in PPP loans in the aggregate. Defendants deny the remaining allegations of paragraph 51.

52. **Complaint:** In its Decision, the SBA failed to identify alleged common parent of the "corporate group," and it failed to provide any basis for its "corporate group" or common parent determination.

**Response:** Deny.

53. **Complaint:** On July 3, 2023, Forest View timely submitted an appeal of the Decision to the OHA (the "Appeal"), articulating that (1) the SBA previously forgave Forest View's PPP loan 18 months prior, (2) the Sixth IFR cannot be retroactively applied to Forest View's loan, (3) the Sixth IFR exceeds the scope of the SBA's authority, and (4) even if the Sixth IFR is applicable, Forest View is not part of a corporate group and is fully eligible for its PPP loan.

**Response:** Defendants admit that on July 3, 2023, Forest View submitted an appeal of SBA's final loan review decision to the OHA Portal. Defendants deny that Forest View fully and accurately describes the content of its submission but admit that the submission raised certain contentions regarding the purported conflict between SBA's June 3, 2023 decision and its November 29, 2021 decision; the purported unlawful retroactive application of the corporate group rule; whether the corporate group rule exceeded SBA's authority; and whether Forest View was part of a corporate group and fully eligible or its PPP loan. Defendants deny that the contentions in the submission hold merit and the remaining allegations of paragraph 53.

54. **Complaint:** Forest View's Appeal extended the deferment period of the PPP loan until a final decision was issued. See 13 C.F.R. § 134.1202; 15 U.S.C. § 636(a)(36)(M)(ii)(II).

**Response:** Deny.

55. **Complaint:** On or about July 10, 2023, the OHA issued a Notice and Order, directing Forest View to provide a copy of the Appeal to the Lender, and confirming that Forest View's PPP loan was deferred until the OHA's decision became final.

**Response:** Defendants admit that OHA issued a Notice and Order on or about July 10, 2023, stating in pertinent part, "Forest must provide their lender with a copy of the appeal to extend the deferment period of the PPP loan until OHA's decision becomes final. See 13 C.F.R. § 134.1202(b)." Defendants deny the remaining allegations of paragraph 55.

56. **Complaint:** Forest View timely provided a copy of the Appeal to the Lender.

**Response:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

57. **Complaint:** On or about August 31, 2023, while the Appeal was pending, Transworld Systems, Inc. ("TSI"), a third-party collection agency acting on behalf of the Department of Treasury, notified Forest View that its PPP loan was placed with TSI (the "Notice").

**Response:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

58. **Complaint:** The Notice stated that TSI was collecting specifically for SBA's account number 6431697306 (Forest View's PPP loan number) which had a total balance of $1,069,800.00 (Forest View's total PPP loan amount) as of March 28, 2023, more than two months before the SBA issued its Decision.

**Response:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

59. **Complaint:** The Notice stated that TSI had a balance of $285,735.55 remaining for collection from Forest View.

**Response:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph; accordingly, they are denied.

60. **Complaint:** TSI actively recouped payments from Forest View's Medicare Vouchers under the Federal Payment Levy Program, collecting a total of $892,429.46 between April 2023 and August 2023:

| Date Recouped | Amount |
|---|---|
| April 24, 2023 | $234,984.39 |
| April 25, 2023 | $913.51 |
| May 19, 2023 | $27,032.11 |
| May 24, 2023 | $198,516.11 |
| May 30, 2023 | $14,790.25 |
| June 20, 2023 | $7,609.09 |
| June 21, 2023 | $19,875.46 |
| June 23, 2023 | $167,900.15 |
| June 27, 2023 | $21,672.78 |
| July 31, 2023 | $1,447.68 |
| August 22, 2023 | $24,673.06 |
| August 24, 2023 | $171,964.17 |
| August 25, 2023 | $718.95 |
| August 29, 2023 | $331.75 |
| **TOTAL** | **$892,426.46** |

**Response:** Defendants admit that TSI engaged in certain collections activity from April 2023 to August 2023 but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph; accordingly, they are denied.

61. **Complaint:** The SBA recouped $476,236.37 from Forest View's total PPP loan amount before it issued its Decision, and recouped an additional $416,193.09 while Forest View's Appeal was pending.

**Response:** Deny.

62. **Complaint:** The SBA's recoupment of Forest View's PPP loan proceeds was in violation of 13 C.F.R. § 134.1202 and 15 U.S.C. § 636(a)(36)(M)(ii)(II).

**Response:** Deny.

63. **Complaint:** On or about August 21, 2023, when these payments were questioned by the Lender, the SBA falsely informed the Lender that the OHA had denied Forest View's Appeal.

**Response:** Deny.

64. **Complaint:** On or about September 7, 2023, Forest View filed a motion requesting that the OHA enter an Order compelling the SBA to reimburse Forest View for all amounts improperly recouped on the PPP loan, to reimburse Forest View for interest, and prohibit the SBA from further collecting on the PPP loan during the pendency of the Appeal (the "Motion").

**Response:** Admit.

65. **Complaint:** On or around October 16, 2023, the OHA denied Forest View's appeal. The October 16, 2023 OHA Decision is attached hereto as Exhibit A.

**Response:** Admit.

66. **Complaint:** In the decision, the OHA found that Blisko and Gubin Enterprises were, in effect, a partnership, and that the partnership was "part of a corporate group" that obtained loans exceeding $20,000,000. See Ex. A., pp. 12-13.

**Response:** Defendants admit that the OHA held in its decision in part that "[d]ue to Michael Blisko's involvement in over 203 other healthcare entities, to include nursing homes and rehabilitation centers, with Gubin Enterprises Limited Partnership, both Michael Blisko and Gubin Enterprises Limited Partnership, constitute a partnership and are such part of a corporate group." (citations omitted). Defendants deny the remaining allegations of paragraph 66.

67. **Complaint:** The OHA did not identify the common parent of the corporate group, and it failed to provide any basis for its common parent determination.

**Response:** Deny.

68. **Complaint:** The OHA did not cite to any existing statutes, regulations, or authority in support of its ability to designate a non-existent entity as a comment [sic] parent.

**Response:** Deny.

69. **Complaint:** The OHA further found that the Sixth IFR was not retroactively applied to Forest View because Forest View signed a promissory note for the PPP loan "14 days after the publication and immediate implementation of [the Sixth IFR] on May 4, 2020." Ex. A, p. 13.

**Response:** Defendants admit that the OHA rejected Forest View's contention that SBA unlawfully applied the corporate group rule regulation retroactively but deny that Forest View fully and accurately describes the basis for the rejection and deny any remaining allegations of paragraph 69.

70. **Complaint:** Finally, the OHA also held that Forest View's Motion was moot given its denial of Forst [sic] View's Appeal. Ex. A, p. 14.

**Response:** Defendants admit that the OHA decision held that "[a]s for Appellant's arguments in its Motion to Compel, their appeal and response, regarding whether recoupment of monies, after appellant received the November 29, 2021 Final Loan Review Decision, from Appellant's PPP loan was improper or not," the "issue is now moot, due to the June 03, 2023 Final Loan Review Decision being upheld." Defendants deny the remaining allegations of paragraph 70.

71.   **Complaint:** The retroactive application of the Sixth IFR to Forest View has harmed and will continue to harm, Forest View. In the midst of fluctuating economic uncertainty driven by the pandemic, Forest View now has to worry that the loan forgiveness it reasonably relied upon will be withheld and it will not be reimbursed for the money that was wrongfully taken on the SBA's directive.

**Response:** Deny.

72.   **Complaint:** Forest View reasonably relied on the SBA's approval of its PPP loan on April 30, 2020, as well as the SBA's prior representations, that the PPP loans would be forgiven so long as Forest View was eligible.

**Response:** Defendants deny the allegations of paragraph 72, including the allegation that SBA approved Forest View's PPP loan.

73.   **Complaint:** Numerous other courts have held that the Interim Final Rules issued by the SBA are contrary to law, exceed the SBA's statutory authority, and are arbitrary and capricious. *See Nat'l Ass'n of Home Builders v. U.S. Small Business Administration*, No. 2011780, 2021 U.S. Dist. LEXIS 186548, at *35 (E.D. Mich. Sept. 28, 2021) (enjoining the SBA from denying PPP loans to otherwise-qualified applicants on the basis of the First IFR, given the First IFR exceeded the SBA's statutory authority)[1]; *DV Diamond Club v. Small Business Administration*, 960 F.3d 743, 746-47 (6th Cir. 2020) (denying a motion for stay of injunction barring the First IFR's application to business owners who were previously ineligible for SBA lending programs, finding that the business owners had a substantial likelihood of success on their claim that the rule conflicted with the CARES Act); *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (holding that the First IFR exceeds statutory authority); *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, No. 20-1729 (7th Cir. May 20, 2020) (order) (denying the SBA's motion for a stay pending appeal); *In re Gateway Radiology Consultants, P.A.*, No. 8:19-BK-04971-MGW, 2020 WL 3048197, at *19 (Bankr. M.D.

---

[1]   [This footnote is included here because it is alleged in the complaint.] This case was vacated by the Sixth Circuit Court of Appeals pursuant to settlement between the parties. *See Nat'l Ass'n of Home Builders v. United States Small Bus. Admin.*, No. 21-1765, 2023 U.S. App. LEXIS 908 (6th Cir. Jan. 13, 2023).

Fla. June 8, 2020) (enjoining the SBA's attempt to "disqualify[] an entire class of troubled small businesses—perhaps those who need it the most— from obtaining grants to pay employees so their workers don't lose their jobs"); *In re Skefos*, No. 19-29718-L, 2020 WL 2893413, at *13 (Bankr. W.D. Tenn. June 2, 2020) ("SBA acted arbitrarily and capriciously in excluding applicants whose owners are debtors in bankruptcy from the PPP."); *In re Roman Catholic Church of Archdiocese of Santa Fe*, No. 18- 13027 T11, 2020 WL 2096113, at *7 (Bankr. D.N.M. May 1, 2020) (holding that the SBA's First IFR "constitutes a usurpation of Congressional authority to determine which businesses are eligible for PPP funds").

        **Response:**    Deny.

    74.    **Complaint:**    Further, the OHA's decision applying a partnership theory to Blisko and Gubin Enterprises is contrary to law, exceeds the SBA's statutory authority, and is arbitrary and capricious. As such, even if the Sixth IFR was proper under the law, which it is not, Forest View disagrees that it is part of a corporate group as the OHA sets forth in its Decision. The OHA's Decision finding Forest View as part of a corporate group was arbitrary, capricious, an abuse of discretion, and not in accordance with the facts and the law.

        **Response:**    Defendants admit that Forest View disagrees that it is part of a corporate group as the OHA set forth in its decision and deny the remaining allegations of paragraph 74.

    75.    **Complaint:**    Additionally, the OHA's decision is arbitrary, capricious, an abuse of discretion, and not in accordance with the law because it failed to issue a decision on SBA's blatant violation of 13 C.F.R. § 134.1202 and 15 U.S.C. § 363(a)(36)(M)(ii)(II) when the SBA began collecting on Forest View's PPP loan during the pendency of the appeal.

        **Response:**    Deny.

    76.    **Complaint:**    Finally, the OHA's decision, along with the SBA's Decision, deprived Forest View of procedural and substantive due process provided to borrowers under the PPP, because it fails to properly identify the alleged common parent used to substantiate its denial of Forest View's PPP loan based on the corporate group limitation.

        **Response:**    Deny.

## COUNT ONE
### Agency Action Contrary to Law
### Loan Application Submitted Before Sixth IFR
### 5 U.S.C. §706(2)(A), (C)

    77.    **Complaint:**    Forest View incorporates the foregoing paragraphs as if fully set forth herein.

**Response:** Defendants adopt and incorporate by reference their answers to paragraphs 1 to 76 as if pleaded fully herein.

78. **Complaint:** The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

**Response:** Defendants admit that the APA authorizes judicial review of certain federal agency actions but deny the remaining allegations of paragraph 78.

79. **Complaint:** The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(A), (C).

**Response:** Admit.

80. **Complaint:** The Sixth IFR, 85 Fed. Reg. 26324, states explicitly that "[t]his rule is effective May 4, 2020."

**Response:** Admit.

81. **Complaint:** The Sixth IFR further provides that "SBA has drafted this rule, to the extent practicable, in accordance with the standards set forth in section 3(a) and 3(b)(2) of the Executive Order 12988, to minimize litigation, eliminate ambiguity, and reduce burden. *The rule has no preemptive or retroactive effect.*" (emphasis added).

**Response:** Admit that the regulation contains the quoted language without the added emphasis.

82. **Complaint:** The Sixth IFR provides a limitation on the amount of PPP loans a single corporate group can receive, stating that "businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate." The Sixth IFR defines a corporate group as businesses that "are majority owned, directly or indirectly, by a common parent."

**Response:** Defendants admit the allegations in the first sentence of paragraph 82 and that the Sixth IFR states, "For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent." Defendants deny the remaining allegations of paragraph 82.

83.    **Complaint:**    The Sixth IFR inconsistently provides that the corporate group "limitation shall be immediately effective with respect to any loan that has not been fully disbursed as of April 30, 2020.".

       **Response:**    Defendants admit that the Sixth IFR contains the quoted language

but deny the remaining allegations of paragraph 83.

84.    **Complaint:**    On April 6, 2020, Forest View submitted its PPP loan application to the Lender.

       **Response:**    Defendants admit that Forest View signed a PPP loan application on

April 6, 2020, and April 13, 2020.  Defendants deny the remaining allegations of paragraph 84.

85.    **Complaint:**    Forest View's eligibility was based solely on the laws, rules, and guidance in effect at the time of its PPP loan application. *See* Paycheck Protection Program Loans Frequently Asked Questions as of July 29, 2021, Question 17 ("Borrowers and lenders may rely on the laws, rules, and guidance available **at the time of the relevant application**.") (emphasis added); *see* Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program – Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, p. 46 ("The Administrator has determined that to be an eligible recipient that is entitled to forgiveness under section 7A(b), the borrower must be an 'eligible recipient' under section 7(a)(36) and section 7(a)(37) of the Small Business Act and rules and guidance available **at the time of borrower's loan application**."); 13 C.F.R. § 121.302 ("The size of an applicant for SBA financial assistance is determined **as of the date the application** for financial assistance is accepted for processing by the SBA . . . Changes in size after the applicable date when size is determined will not disqualify an applicant for assistance.") (emphasis added).

       **Response:**    Deny.

86.    **Complaint:**    On April 30, 2020, the SBA approved Forest View's loan application.

       **Response:**    Defendants deny that SBA approved Forest View's loan application.

87.    **Complaint:**    On May 1, 2020, the SBA issued a Note in the full amount of Forest View's PPP loan, which Forest View signed on May 18, 2020, at which point funds were disbursed.

       **Response:**    Defendants deny that SBA issued the note and that it was issued on

May 1, 2020.  Defendants admit that Forest View signed the note on May 18, 2020, but denies that

the funds were disbursed that same day; the administrative record contains a Transcript of Account

from the lender reflecting that the disbursement occurred on May 19, 2020. Defendants deny the

remaining allegations of paragraph 87.

88. **Complaint:** At no point during this process was the Sixth IFR in effect and applicable to Forest View. As such, notwithstanding the fact that Forest View was not part of a corporate group, even if it was, Forest View was eligible for its PPP loan at the time it applied for the loan and up through May 4, 2020, the effective date of the Sixth IFR.

**Response:** Deny.

89. **Complaint:** Forest View used its PPP loan proceeds for payroll expenses and other eligible expenses under the CARES Act.

**Response:** Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of this paragraph; accordingly, they are denied.

90. **Complaint:** The CARES Act, as amended, provides that all such "*eligible recipient[s] shall* be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

**Response:** Defendants admit that the CARES Act contains the quoted language

without the added emphasis but deny Forest View's characterization of the CARES Act, including

section 1106(b), (d), and the Flexibility Act, including section 3(b). Defendants deny the

remaining allegations of paragraph 90.

91. **Complaint:** Forest View used at least 60 percent of its PPP loan proceeds for payroll.

**Response:** Defendants lack knowledge or information sufficient to form a

belief about the truth of the allegations of this paragraph; accordingly, they are denied.

92. **Complaint:** Because it properly and lawfully utilized its loan proceeds, which it was eligible to receive at the time it applied for its PPP loan, Forest View applied for loan forgiveness January 27, 2021. Its loan forgiveness application was approved by the Lender.

**Response:** Defendants admit that Forest View applied for loan forgiveness on

or about January 27, 2021, and that the loan forgiveness application was approved by the lender.

Defendants deny the remaining allegations of paragraph 92.

93. **Complaint:** However, notwithstanding Forest View being eligible for a PPP loan at the time of its loan application, SBA first indicated its intent to retroactively apply the Sixth IFR to Forest View on June 3, 2023, when it denied Forest View's loan forgiveness application after partially forgiving Forest View's PPP loan over 18 months prior.

      **Response:** Deny.

94. **Complaint:** Defendants' actions to retroactively apply the Sixth IFR to determine that Forest View was ineligible for its PPP loan are not in accordance with law, including the CARES Act, the APA and the Interim Final Rule itself. Forest View is entitled to an order declaring the same.

      **Response:** Deny.

95. **Complaint:** Forest View is entitled to a permanent injunction enjoining Defendants from retroactively applying the Sixth IFR.

      **Response:** Deny.

## COUNT TWO
### Agency Acton Contrary to Law
### Sixth IFR Contrary to Law
### 5 U.S.C. §706(2)(A), (C)

96. **Complaint:** Forest View incorporates the foregoing paragraphs as if fully set forth herein.

      **Response:** Defendants adopt and incorporate by reference their answers to paragraphs 1 to 95 as if pleaded fully herein.

97. **Complaint:** The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

      **Response:** Defendants admit that the APA authorizes judicial review of certain federal agency actions but deny the remaining allegations of paragraph 97.

98. **Complaint:** The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(A), (C).

      **Response:** Admit.

99. **Complaint:** The CARES Act provides that "in addition to small business concerns, *any* business concern . . . *shall* be eligible to receive a covered loan," CARES Act

§ 1102(a)(36)(D)(i) (emphasis added), subject only to the conditions that a business meet the CARES Act's size requirement, make the required good-faith borrower certification, and have been in operation as of February 15, 2020.

> **Response:** Defendants admit that the CARES Act contains the quoted language without the added emphasis but deny Forest View's characterization of the CARES Act, including section 1102(a)(36)(D)(i), and the remaining allegations of paragraph 99.

100. **Complaint:** The CARES Act, as amended, also provides that all such "eligible recipient[s] shall be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

> **Response:** Defendants admit that the CARES Act contains the quoted language but deny Forest View's characterization of the CARES Act, including section 1106(b), (d), and the Flexibility Act, including section 3(b). Defendants deny the remaining allegations of paragraph 100.

101. **Complaint:** Nothing in the CARES Act authorizes the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the Sixth IFR.

> **Response:** Deny.

102. **Complaint:** The Sixth IFR exceeds the Defendants' authority under the CARES Act because the IFR would limit PPP loans in a way that is contrary to the CARES Act, as Congress's only monetary limitation on PPP loan amounts was $10,000,000 per single eligible borrower. *See* CARES Act § 1102(1)(E)(ii); 15 U.S.C. § 636(a)(36)(E)(ii).

> **Response:** Deny.

103. **Complaint:** Congress never adopted a PPP loan limitation for "corporate groups."

> **Response:** Deny.

104. **Complaint:** The SBA's corporate group limitation in the Sixth IFR is not authorized by any statute, and is in excess of statutory jurisdiction and authority. 5 U.S.C. § 706(2)(C).

> **Response:** Deny.

105.    **Complaint:**    Defendants' actions to exclude businesses – such as Forest View – primarily engaged in the business of skilled nursing and rehabilitation, who are entitled to loan forgiveness are not in accordance with law, including the CARES Act and the APA. Forest View is entitled to an order declaring the same.

           **Response:**    Deny.

106.    **Complaint:**    Forest View is entitled to a permanent injunction enjoining Defendants from applying the Sixth IFR against it, and the Sixth IFR must be vacated, set aside, and not used as basis to deny Forest View's request for forgiveness of its PPP loan.

           **Response:**    Deny.

## COUNT THREE
### Arbitrary & Capricious Agency Action
### 5 U.S.C. §706(2)(A)

107.    **Complaint:**    Forest View incorporates the foregoing paragraphs as if fully set forth herein.

           **Response:**    Defendants adopt and incorporate by reference their answers to paragraphs 1 to 106 as if pleaded fully herein.

108.    **Complaint:**    The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

           **Response:**    Defendants admit that the APA authorizes judicial review of certain federal agency actions but deny the remaining allegations of paragraph 108.

109.    **Complaint:**    The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious," or "an abuse of discretion." *Id.* § 706(2)(A).

           **Response:**    Admit.

110.    **Complaint:**    The CARES Act provides that "in addition to small business concerns, *any* business concern . . . *shall* be eligible to receive a covered loan," 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added), subject only to the conditions that a business meet the Act's size requirement, makes the required good-faith borrower certification, and have been in operation as of February 15, 2020.

**Response:**    Defendants admit that the CARES Act contains the quoted language but deny Forest View's characterization of the CARES Act, including section 1102(a)(36)(D)(i), and the remaining allegations of paragraph 110.

111.    **Complaint:**    The CARES Act, as amended, also provides that all such "eligible recipient[s] shall be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds were used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Flexibility Act § 3(b).

**Response:**    Defendants admit that the CARES Act contains the quoted language but deny Forest View's characterization of the CARES Act, including section 1106(b), (d), and the Flexibility Act, including section 3(b), and the remaining allegations of paragraph 111.

112.    **Complaint:**    The CARES Act does not authorize the SBA to impose additional eligibility criteria for PPP loans or forgiveness, including the Sixth IFR.

**Response:**    Deny.

113.    **Complaint:**    Defendants' exclusion of Forest View as an eligible business is an abuse of discretion.

**Response:**    Deny.

114.    **Complaint:**    Further, Defendants' reliance on an partnership theory between Forest View's owners after Forest View definitively showed it had no majority owners or a common parent is similarly an abuse of discretion.

**Response:**    Deny.

115.    **Complaint:**    Forest View is entitled to a permanent injunction enjoining Defendants from applying the Sixth IFR against it.

**Response:**    Deny.

## COUNT FOUR
### Agency Action Contrary to Law
### Improper Collection of Payment Before Decision and During Pendency of Appeal
### 5 U.S.C. §706(2)(A), (C)

116.    **Complaint:**    Forest View incorporates the foregoing paragraphs as if fully set forth herein.

**Response:** Defendants adopt and incorporate by reference their answers to paragraphs 1 to 115 as if pleaded fully herein.

117. **Complaint:** The APA authorizes judicial review of federal agency actions. 5 U.S.C. §702.

**Response:** Defendants admit that the APA authorizes judicial review of certain federal agency actions but deny the remaining allegations of paragraph 117.

118. **Complaint:** The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Id. § 706(2)(A), (C).

**Response:** Admit.

119. **Complaint:** The CARES Act requires lenders to provide complete payment deferment relief for impacted borrowers with covered PPP loans until issuance of a decision on a borrower's loan forgiveness application. 15 U.S.C. §§ 636(a)(36)(M)(ii)(II) and 636m.

**Response:** Defendants admit that the CARES Act contains provisions related to deferment relief but deny Forest View's characterization of the Act and the remaining allegations of paragraph 119.

120. **Complaint:** 13 C.F.R. § 134.1202 states, "[a] timely appeal by a PPP borrower of a final SBA loan review decision extends the deferment period of the PPP loan until a final decision is issued under § 134.1211.".

**Response:** Defendants admit that 13 C.F.R. § 134.1202 contains the quoted language.

121. **Complaint:** Forest View submitted its loan forgiveness application on or around January 27, 2021.

**Response:** Admit.

122. **Complaint:** The SBA granted partial forgiveness of Forest View's PPP loan on November 29, 2021.

**Response:** Admit.

123.    **Complaint:**    The SBA subsequently issued a full denial of Forest View's PPP loan forgiveness application on June 3, 2023.

   **Response:**    Admit.

124.    **Complaint:**    Forest View appealed the SBA's Decision to the OHA on July 3, 2023.

   **Response:**    Admit.

125.    **Complaint:**    Despite Forest View's PPP loan being deferred under the law, the SBA recouped $892,426.46 of Forest View's PPP loan from Forest View's Medicare Vouchers between April 24, 2023 and August 29, 2023.

   **Response:**    Deny.

126.    **Complaint:**    The OHA's failure to grant Forest View's Motion to Compel and require the SBA to reimburse the amounts improperly recouped from Forest View, along with interest, was an abuse of discretion, not in accordance with the law, arbitrary, and capricious.

   **Response:**    Deny.

127.    **Complaint:**    Forest View is entitled to a permanent injunction requiring Defendants to reimburse the amounts improperly recouped from Forest View ($892,426.46) with interest.

   **Response:**    Deny.

### Count FIVE
### Attorney Fees
### 28 U.S.C. § 2412

128.    **Complaint:**    Forest View incorporates the foregoing paragraphs as if fully set forth herein.

   **Response:**    Defendants adopt and incorporate by reference their answers to

paragraphs 1 to 127 as if pleaded fully herein.

129.    **Complaint:**    Forest View is entitled to recover its attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.

   **Response:**    Deny.

130.    **Complaint:**    As a result of Defendants' unlawful, arbitrary, and capricious actions, Forest View is required to obtain legal counsel to bring the foregoing lawsuit to obtain

forgiveness of its PPP loan. It is therefore entitled to its reasonable and necessary attorney fees, costs, and expenses by this Court.

       **Response:**    Deny.

       WHEREFORE, the defendants request that the case be dismissed with costs and such further relief as may be appropriate.

                 Respectfully submitted,

                 MORRIS PASQUAL
                 Acting United States Attorney

                 By: <u>s/ Jordan Rosen</u>
                    JORDAN ROSEN
                    Assistant United States Attorney
                    219 South Dearborn Street
                    Chicago, Illinois 60604
                    (312) 353-5331
                    jordan.rosen@usdoj.gov