UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOREST VIEW REHABILITATION AND NURSING CENTER, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as the United States Secretary of Treasury; and THE UNITED STATES OF AMERICA,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>No. 24 C 1490<br><br>Judge Valderrama |

**COMBINED MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**Table of Contents**

Introduction ................................................................................................................1

**Background** ...............................................................................................................2

**I.** SBA's § 7(a) Loan Program ..................................................................................2

**II.** The CARES Act, the PPP, and Forgiveness of a PPP Loan ...................................2

**III.** The Corporate Group Rule.................................................................................4

**IV.** The Economic Aid Act........................................................................................5

**V.** SBA and OHA Decisions Concerning Forest View's PPP Loan............................6

**Argument** .................................................................................................................7

**I.** **SBA Lawfully Adopted the Corporate Group Rule (Count II)** .......................7

    A. The CARES Act Authorized SBA to Adopt the Corporate Group Rule ...........7

    B. Forest View's Reading of the Act Is Flawed and Overlooks Key Terms.........9

    C. The EAA Ratified the Corporate Group Rule ..............................................12

**II.** **Forest View Fails to Show that the OHA Decision Violated the APA**............13

    A. OHA Did Not Misapply the Corporate Group Rule Retroactively (Count I)................13

    B. OHA's Finding of a Corporate Group Was Not Arbitrary and Capricious (Count III)...16

    C. Equitable Estoppel Did Not Prohibit SBA from Applying the Corporate Group Rule ..20

    D. OHA Complied with the APA in Denying Forest View's Motion to Compel................21

**III.** **Forest View Is Not Entitled to the Relief It Seeks** ...........................................24

**Conclusion** ..............................................................................................................25

i

# Table of Authorities

## Cases

*Abraham Lincoln Memorial Hosp. v. Sebeleius*, 698 F.3d 536 (7th Cir. 2012) ........................... 20

*BellSouth Telecomms., Inc. v. Se. Tel., Inc.*, 462 F.3d 650 (6th Cir. 2006).................................. 14

*Biden v. Texas*, 597 U.S. 785 (2022) ........................................................................................... 7

*Bro. Petroleum, LLC v. United States*, 569 F. Supp. 3d 405 (E.D. La. 2021).............................. 11

*Bruckner Truck Sales, Inc. v. Guzman*, 2023 WL 8606761 (N.D. Tex. Dec. 12, 2023) ......... 11, 13

*Bruckner Truck Sales, Inc. v. Guzman*, 2024 WL 903441 (N.D. Tex. Feb. 27, 2024)........... 11, 13

*D.V. Diamond Club of Flint, LLC v. SBA*, 960 F.3d 743 (6th Cir. 2020) ..................................... 11

*DACO Inv., LLC v. SBA*, 2024 WL 750594 (W.D. La. Feb. 2, 2024) ...................................... 7, 11

*Defy Ventures, Inc. v. SBA*, 469 F. Supp. 3d 459 (D. Md. 2020)................................................. 11

*Diocese of Rochester v. SBA*, 466 F. Supp. 3d 363 (W.D.N.Y. June 10, 2020) ........................... 11

*Durable Mfg. Co. v. U.S. Dept. of Labor*, 578 F.3d 497 (7th Cir. 2009) ..................................... 14

*El-Khader v. Monica*, 366 F.3d 562 (7th Cir. 2004) ..................................................................... 7

*FEC v. Akins*, 524 U.S. 11 (1998)................................................................................................ 25

*Gateway Radiology Consultants, P.A.*, 983 F.3d 1239 (11th Cir. 2020)............................... *passim*

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280 (2010)........ 9

*In re Archbishop of Agaña*, 2021 WL 1702311 (D. Guam Feb. 23, 2021) ................................... 11

*In re Lan Assocs. XI, L.P.*, 192 F.3d 109 (3d Cir. 1999)................................................................ 9

*In re Penobscot Valley Hosp.*, 2020 WL 3032939 (Bankr. D. Me. June 3, 2020) ....................... 11

*In re Vestavia Hills, Ltd.*, 630 B.R. 816 (Bankr. S.D. Cal. 2021) ................................................ 11

*INS v. Orlando Ventura*, 537 U.S. 12 (2002) .............................................................................. 25

*Isley v. Isley*, No., 2023 WL 5431498 (N.D. Ill. Aug. 23, 2023) ........................................... 16, 17

*J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383 (4th Cir. 1990) .......................................................... 25

*Kisor v. Wilkie*, 139 S. Ct. 22400 (2019) ..................................................................... 20

*Lorillard v. Pons*, 434 U.S. 575 (1978) ..................................................................... 12, 13

*Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 2011 WL 1740132 (N.D. Ill. 2011)............... 17

*Matter of Johnson*, 787 F.2d 1179 (7th Cir. 1986)..................................................................... 15

*Montefiore Med. Ctr. v. Local 272 Welfare Fund*, 2017 WL 1194704 (S.D.N.Y. Mar. 31, 2017) ... 8

*N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982)..................................................................... 12

*Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers*, 75 F.4th 743 (7th Cir. 2023)................... 12

*Pharaohs GC, Inc. v. SBA*, 990 F.3d 217 (2d Cir. 2021) ................................................................... 11

*Pine Tree Med. Assocs. v. Sec'y of Health & Human Servs.*, 127 F.3d 118 (1st Cir. 1997).......... 14

*SBA v. Archdiocese of Santa Fe*, 632 B.R. 816 (Bankr. D.N.M. 2021) ........................................ 11

*Seidmon v. Harris*, 526 N.E.2d 543 (Ill. App. Ct. 1988)........................................................ 16, 17

*Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403 (2d Cir. 2022)........................................................ 13

*Team Waste Gulf Coast, LLC v. United States*, 135 Fed.Cl. 683 (Fed. Cl. 2018)........................ 23

*Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*,  2023 WL 5489028 (E.D. Tex. Aug. 24,
2023)........................................................................................................................................... 8

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994) ............................................................ 20

*Tradeways, Ltd. v. U.S. Dep't of the Treas.*, 2020 WL 3447767 (D. Md. June 24, 2020)............. 11

*Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264 (2023)................................................. 9

*United States v. Texas*, 599 U.S. 670 (2023) ................................................................................ 25

*Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302 (2014) ............................................................ 9

*W. Va. Highlands Conservancy, Inc. v. Norton*, 343 F.3d 239 (4th Cir. 2003) .............................. 25

*Webster v. Doe*, 486 U.S. 592 (1988) ........................................................................................... 8

*Wolfe v. Agro*, 163 N.E.3d 913 (Ind. Ct. App. 2021)................................................................... 17

**Statutes**

5 U.S.C. § 553 .................................................................................................... 3

5 U.S.C. § 702 .............................................................................................. 22, 25

15 U.S.C. § 631 .................................................................................................. 1

15 U.S.C. § 632 .................................................................................................. 2

15 U.S.C. § 634 ........................................................................................... *passim*

15 U.S.C. § 636m ......................................................................................... 4, 12

15 U.S.C. § 636 ........................................................................................... *passim*

15 U.S.C. § 9012 ............................................................................................ 3, 8

805 ILCS 180/15-1 ........................................................................................... 19

805 ILCS 180/25-20 ......................................................................................... 19

805 ILCS 206/101 ............................................................................................ 19

805 ILCS 206/202 ............................................................................................ 16

Ind. Code § 23-4-1-6 ....................................................................................... 19

Ind. Code § 23-18-4-1 ..................................................................................... 19

Ind. Code § 23-18-5-3 ..................................................................................... 19

Pub. L. No. 116- 136, 134 Stat. 281 ........................................................... *passim*

Pub. L. No. 116-139, 134 Stat. 620 ................................................................... 4

Pub. L. No. 116-14, 134 Stat. 660 ..................................................................... 5

Pub. L. No. 116-260, 134 Stat. 1182 ................................................................. 5

Pub. L. No. 117-2, 135 Stat. 4 ........................................................................... 4

**Regulations**

13 C.F.R. § 121.301 ......................................................................................... 28

13 C.F.R. § 121.302 ..................................................................................... 18, 20

13 C.F.R. § 134.1204 .................................................................................. 23, 24

13 C.F.R. § 134.1201 ...................................................................................... 23

85 Fed. Reg. 26,325 ................................................................................ *passim*

85 Fed. Reg. 20,811 ......................................................................................... 2

85 Fed. Reg. 26,324 (May 4, 2020) ......................................................... *passim*

85 Fed. Reg. 33,010 (June 1, 2020) ...................................................... 4, 15

85 Fed. Reg. 33,012 (June 1, 2020) ............................................................... 4

85 Fed. Reg. 33,013 (June 1, 2020) ............................................................... 4

85 Fed. Reg. 38,304 (June 26, 2020) ............................................................. 4

85 Fed. Reg. 38,306 (June 26, 2020) ............................................................. 4

**Other Authorities**

J. William Callison & Maureen A. Sullivan, Ltd. Liab. Cos.: A State-by-State Guide to Law &

Practice (2023 ed.).................................................................................. 19

J. William Callison & Maureen A. Sullivan, P'ship L. & Prac. (Nov. 2023 Update).................. 16

*Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary..................... 20

Nicholas G. Karambelas, 1 Ltd. Liab. Co.: L., Prac. & Forms (2024) ........................................ 19

**Introduction**

To meet the extraordinary demand for Paycheck Protection Program ("PPP") loans at the height of the coronavirus pandemic, the Small Business Administration exercised its authority under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116- 136, 134 Stat. 281, to adopt its Corporate Group Rule, 85 Fed. Reg. 26,324 (May 4, 2020), to make PPP loans available to the small businesses most in need. The Rule limits to $20 million the amount of "first draw" PPP loans that a corporate group (*i.e.*, a group of businesses that are majority-owned, directly or indirectly, by a common parent) may receive. It also requires loan applicants and recipients to take steps to ensure they do not apply for or receive loans exceeding that limit. SBA determined in a 2023 final PPP loan review decision that plaintiff Forest View Rehabilitation and Nursing Center, LLC ("Forest View"), did not meet loan forgiveness requirements based on the Rule, and SBA's Office of Administrative Hearings ("OHA") affirmed that decision.

Forest View contends that the denial of PPP loan forgiveness violated the Administrative Procedure Act because SBA lacked statutory authority to adopt the Corporate Group Rule and did so without providing any reasoned explanation. Forest View further argues that the OHA decision affirming the denial of loan forgiveness violated the APA by (A) misapplying the Rule retroactively; (B) incorrectly finding that Forest View belonged to a corporate group; (C) failing to equitably estop SBA from applying the Rule to deny loan forgiveness; and (D) denying Forest View's motion requesting that SBA be compelled to reimburse amounts collected on the PPP loan, with interest. Those contentions lack merit. As discussed below, the CARES Act and Small Business Act, 15 U.S.C. § 631, *et seq.*, authorized SBA to adopt the Corporate Group Rule, and SBA provided reasoned explanations in doing so. Moreover, Forest View fails to carry its burden of showing that the OHA decision violated the APA. Lastly, Forest View seeks injunctions and other relief that is unavailable. Thus, the defendants are entitled to judgment as a matter of law.

1

## Background

### I.     SBA's § 7(a) Loan Program.

SBA "is empowered" to make or guarantee general-purpose loans to small businesses under section 7(a) of the Small Business Act ("§ 7(a)"), 15 U.S.C. § 636(a), and "take any and all actions" the agency finds are "necessary or desirable in making, servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on" those loans, *id.* § 634(b)(7).

Ordinarily, to qualify for a § 7(a) loan, an applicant must, *inter alia*, meet size standards for a "small" business set forth in the Act and SBA rules, usually stated in terms of the aggregate number of employees or annual receipts of the borrower and its affiliates.  § 632(a)(1), (2); 13 C.F.R. §§ 120.100(d), 121.201.  The statute does not prescribe a formula for the exact amount of a § 7(a) loan, but states that such a loan shall be no greater than $5 million, and the amount guaranteed by SBA no greater than $3,750,000.  § 636(a)(3)(A).  Typically, SBA guarantees loans by private lenders rather than disburse funds directly.  *See In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1248 (11th Cir. 2020).

### II.     The CARES Act, the PPP, and Forgiveness of a PPP Loan

The CARES Act, enacted on March 27, 2020, provided emergency assistance to individuals, families, businesses, and health-care providers coping with the coronavirus pandemic. *See* 85 Fed. Reg. 20,811, 20,811-12 (Apr. 15, 2020).  Among the Act's measures was the PPP, CARES Act § 1102, which Congress enacted to extend relief to small businesses experiencing economic hardship due to the pandemic, *see* 85 Fed. Reg. at 20,811.  In particular, CARES Act § 1102(a)(2) temporarily expanded SBA's business-loan authority by adding a new paragraph (36) to § 7(a), 15 U.S.C. § 636(a)(36).  *See Gateway*, 983 F.3d at 1249 ("[T]he PPP was not created as a standalone program; instead, it was added into § 7(a)[.]").  Subparagraph 636(a)(36)(B) stated that "[e]xcept as otherwise provided in this paragraph," SBA "*may* guarantee [PPP] loans," issued

2

by private lenders, "under the same terms, conditions, and processes as [other] loan[s] made under" § 7(a). 15 U.S.C. § 636(a)(36)(B) (emphasis added); *see also id*. § 636(a)(36)(F)(ii). The statute then detailed ways in which PPP loans were to differ from other § 7(a) loans. *Id*. § 636(a)(36)(D)-(W). Among these differences, the PPP authorized SBA to guarantee loans to nonprofits, veterans' groups, Tribal concerns, self-employed persons, and small-business concerns, *id*. § 636(a)(36)(D)(i), (ii); and relaxed size limitations to allow businesses with as many as 500 employees (or more, in certain industries) to receive assistance, *id*. § 636(a)(36)(D)(i)(I). The Act also enlarged the $5 million cap applicable to other § 7(a) loans, providing that the "maximum amount" of a PPP loan was to be "the lesser of" (1) the borrower's average monthly payroll costs for the prior year, multiplied by 2.5, plus the balance of the borrower's eligible SBA disaster loans (hereinafter, the "payroll-based formula" or "amount"); or (2) $10 million. *Id*. § 636(a)(36)(E).

Congress initially authorized SBA to guarantee up to $349 billion in PPP loans by June 30, 2020. CARES Act § 1102(b)(1); 15 U.S.C. § 636(a)(36)(A), (B). To ensure that SBA could make such a sum available to small businesses in so short a time, Congress instructed SBA to issue rules implementing the PPP "[n]ot later than 15 days after" the Act's enactment, 15 U.S.C. § 9012. To make that feat possible, Congress also instructed SBA to issue these rules without regard to APA notice-and-comment procedures. 15 U.S.C. § 9012 (citing 5 U.S.C. § 553(b)). Exercising this authority, SBA issued rules between April 15 and October 19, 2020, to ensure the PPP's immediate launch and thereafter to timely address issues of importance to borrowers and lenders, and to the program's fiscal integrity, as they emerged. In light of Congress's clear intent and the needs of small businesses for immediate assistance, SBA also established a streamlined PPP loan-origination process based on borrower self-certifications of eligibility. *See* 85 Fed. Reg. at 20,812, 20,814-16. Because borrowers' applications and supporting documentation were maintained by

3

lenders, not sent to SBA, *see* 85 Fed. Reg. at 20,814, SBA did not (and as a practical matter could not) make independent PPP borrower-eligibility determinations at the loan-origination stage.

SBA launched the PPP on April 3, 2020. SBA Press Release No. 20-30. Although the program's termination date was June 30, 2020, CARES Act § 1102(b), the entire $349 billion was exhausted by April 16. *See* SBA Press Release No. 20-32; *see also* SBA, PPP Report 2 (May 30, 2020) (lenders processed nearly 4.5 million loans in two months). Congress authorized another $310 billion in PPP loans on April 24, 2020. Pub. L. No. 116-139, 134 Stat. 620, § 101(a)(1). Ultimately Congress authorized SBA to guarantee more than $813 billion in PPP loans, Pub. L. No. 117-2, 135 Stat. 4, § 5001(d)(1), and nearly 12 million PPP loans were approved.

CARES Act § 1106 also states that an "eligible recipient" of a PPP loan "shall" be eligible for forgiveness "in an amount equal to" the sum of the recipients' covered payroll costs and other allowable expenses, 15 U.S.C. § 636m(b), but not to exceed the principal amount of the loan, *id.* § 636m(d)(1). To obtain forgiveness, an eligible borrower submits an application and supporting documents to its lender, which then determines if the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to SBA. 15 U.S.C. § 636m(g); *see* 85 Fed. Reg. 38,304, 38,306 (June 26, 2020). SBA then remits the appropriate amount to the lender— subject, however, to any SBA review of the loan. 15 U.S.C. § 636m(c)(3); 85 Fed. Reg. at 38,306.

This process created a heightened risk of loans being erroneously sought and approved, so SBA implemented a system of PPP loan review. If the agency determines during a review that "an action by the borrower has resulted in its receipt of a PPP loan that did not meet program requirements," it denies forgiveness of the loan. 85 Fed. Reg. 33,010, 33,012-13 (June 1, 2020).

## III.    The Corporate Group Rule

SBA published the Corporate Group Rule at issue here on May 4, 2020. 85 Fed. Reg. 26,324 (May 4, 2020). Under the Rule, "businesses that are part of a single corporate group shall

4

in no event receive more than $20,000,000 of PPP loans in the aggregate." *Id.* at 26,325. The Rule defines a "corporate group" as businesses "majority owned, directly or indirectly, by a common parent." *Id.* The Rule also requires the applicant "to notify the lender if the applicant has applied for or received PPP loans in excess of" the $20 million limit and to "withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation." *Id.* The Rule advised borrowers that loans received in disregard of its terms "will not be eligible for forgiveness." *Id.* The Rule became "immediately effective with respect to any loan that" had "not yet been fully disbursed as of April 30, 2020," and has "no retroactive effect." *Id.*

SBA explained that the Rule's purpose was to "preserve the limited resources available to the PPP" considering "the previous lapse of PPP appropriations and the high demand for PPP loans." *Id.* SBA determined "that limiting the amount of PPP loans that a single corporate group may receive [would] promote the availability of PPP loans to the largest possible number of borrowers, consistent with the CARES Act." *Id.* SBA concluded that it had authority to issue an "aggregate limitation" on the amount of PPP loans issued to a single corporate group because the terms of the CARES Act "specify a 'maximum'—but not a minimum—loan amount" for each borrower that SBA "may" guarantee. *Id.* n.1 (citing 15 U.S.C. § 636(a)(36)(B), (E)).

## IV. The Economic Aid Act

The PPP expired on August 8, 2020, *see* Pub. L. No. 116-14, 134 Stat. 660, but the "Economic Aid Act," or "EAA", (Pub. L. No. 116-260, 134 Stat. 1182, 1993-2052) (Dec. 27, 2020)), reauthorized and extended the program to March 31, 2021, and added another $147.5 billion in loan authority. EAA § 323(a)(1). The EAA made changes concerning eligibility and uses of loan proceeds, *id.* §§ 304(a), (b)(2), § 310, 316-18, § 319, and prescribed a "maximum loan amount" calculation for PPP loans issued to farmers and ranchers, similar to the payroll formula in

5

§ 636(a)(36)(E). *Id.* § 313(a)(2) (adding 15 U.S.C. § 636(a)(36)(V)). The EAA also authorized SBA to guarantee "second-draw" PPP loans to certain businesses that obtained "first-draw" PPP loans, EAA § 311(a) (adding 15 U.S.C. § 636(a)(37)), under the same terms and conditions as first-draw loans, except as the EAA otherwise provided. 15 U.S.C. § 636(a)(37) (B). The EAA established a "maximum loan amount" for second-draw PPP loans based on the CARES Act's payroll formula for first-draw loans, but with a smaller cap of $2,000,000. *Id.* § 636(a)(37)(C).

## V.     SBA and OHA Decisions Concerning Forest View's PPP Loan

Forest View describes itself as a skilled rehabilitation and nursing center. SOF ¶ 1. Michael Blisko, an individual, and Gubin Enterprises Limited Partnership, a limited liability partnership, each own a 50% share of the business. *Id.* On April 13, 2020, Forest View applied for a PPP loan to a lender, Fifth Third Bank, which approved the application on April 30, 2020. SOF ¶¶ 2, 5. On May 18, 2020, Forest View executed a promissory note for the loan, and the lender disbursed the loan. SOF ¶¶ 6-9. Forest View applied to SBA for loan forgiveness in January 2021, and SBA granted partial loan forgiveness in November 2021. SOF ¶¶ 10-12.

SBA subsequently learned that Forest View might have belonged to a corporate group that had exceeded the Corporate Group Rule's $20 million loan limit and began investigating the matter in April 2022. SOF ¶ 13; *see also* 86 Fed. Reg. 8283, 8294 (authorizing SBA, in its discretion, to investigate whether a borrower received a loan in violation of a regulation, such as based on fraud, including after issuing a loan review decision). After the investigation, SBA issued a final loan review decision denying loan forgiveness based on the Rule. SOF ¶¶ 14-18, 23. Forest View never notified its lender that it belonged to a corporate group that had exceeded the $20 million loan limit, as the Corporate Group Rule requires. Forest View appealed SBA's final loan review decision to OHA the next month, but no other decision, and OHA affirmed the decision in October 2023. SOF ¶¶ 24-30.

6

## Argument

**I.    SBA Lawfully Adopted the Corporate Group Rule (Count II).**

Forest View falsely contends that SBA unlawfully denied PPP loan forgiveness under the Corporate Group Rule because the agency lacked authority to adopt the Rule.  Compl. Ct. II.   In particular, Forest View asserts that the CARES Act states that "any business concern" is eligible "for PPP loans subject to the size requirements" and other limits explicitly listed "in the CARES Act," but does not authorize SBA to impose limits on businesses belonging to corporate groups. Pl. Mem. at Arg. §§ II, IV.  That contention is wrong in at least three respects.  First, it ignores SBA's *discretion* to guarantee PPP loans under § 636(a)(36)(B).    Second, it misreads the § 636(a)(36)(E) loan "maximum" that SBA "may" authorize under § 636(a)(36)(B) as an entitlement to receive the payroll-based loan amount, up to $10 million.    Third, it mistakes the Corporate Group Rule as a limitation on PPP *eligibility* that contravenes the size criteria of § 636(a)(36)(D)(i).

### A.  The CARES Act Authorized SBA to Adopt the Corporate Group Rule.

By their terms, §§ 636(a)(36)(B) and (E) provided ample authority for SBA to adopt the Corporate Group Rule.  Section 636(a)(36)(B) provides that SBA "*may* guarantee [PPP] loans under the same terms [and] conditions" as other § 7(a) loans, "[e]xcept as otherwise provided" in the ensuing provisions of § 636(a)(36) (emphasis added).  Importantly, the word "may" in a statute "*clearly* connotes discretion."   *Biden v. Texas*, 597 U.S. 785, 802 (2022); *El-Khader v. Monica*, 366 F.3d 562, 567 (7th Cir. 2004).  Thus, just as SBA generally "is empowered" but not required to make or guarantee § 7(a) loans, 15 U.S.C. § 636(a), the CARES Act grants SBA *discretion* to guarantee PPP loans meeting the Act's criteria.    *See Gateway*, 983 F.3d at 1257 ("permissive word 'may' vests the SBA with discretionary authority."); *DACO Inv., LLC v. SBA*, 2024 WL 750594, at *9 n.96 (W.D. La. Feb. 2, 2024) (same), *appeal docketed*, No. 24-30319 (5th Cir.).

Among those criteria is § 636(a)(36)(E), providing that "the maximum [PPP] loan amount

7

shall be the lesser of" a borrower's payroll-based amount or $10 million. But "maximum," means "'the 'highest value or extreme limit,'" or the "'highest *possible* magnitude or quantity of something.'" *Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*, 2023 WL 5489028, at *8 (E.D. Tex. Aug. 24, 2023) (quoting Maximum, Oxford Eng. Dictionary Online (Dec. 2022 ed.)) (emphasis added); *see also Montefiore Med. Ctr. v. Local 272 Welfare Fund*, 2017 WL 1194704, at *5 (S.D.N.Y. Mar. 31, 2017). Thus, SBA correctly observed that § 636(a)(36)(E) "specified a 'maximum'—*but not a minimum*—[PPP] loan amount,"85 Fed. Reg. at 26,325 n.1 (emphasis added). Read together, §§ 636(a)(36)(B) and (E) establish a ceiling—not a floor—on the value of the PPP loans that SBA is permitted—but not required—to authorize to any given borrowers. The statute thus conferred on SBA ample discretion to exercise its rulemaking authority under 15 U.S.C. § 9012 to set a lower aggregate ceiling for borrowers constituting a single corporate group.

Reinforcing that conclusion is 15 U.S.C. § 634(b)(7), which vests SBA with authority to "take any and all actions" it "determines" are "are necessary or desirable in making . . . or otherwise dealing with" § 7(a) loans, which include PPP loans. *See Gateway,* 983 F.3d at 1256 (because "the PPP was not created as a standalone program but was added into the existing § 7(a) program," it is subject to "existing SBA authority" under § 7(a)). By situating the PPP in § 7(a), Congress adopted a standard that "fairly exudes deference" to SBA. *Cf. Webster v. Doe*, 486 U.S. 592, 600 (1988); *see SBA v. McClellan*, 364 U.S. 446, 447 (1960) (Congress conferred "extraordinarily broad powers" on SBA). SBA's adoption of the Corporate Group Rule as "necessary and appropriate" to "preserve finite appropriations for PPP loans and [to] ensure broad access for eligible borrowers," "in light of the previous lapse" of "appropriations and the high demand for PPP loans," 85 Fed. Reg. at 26,325 & n.1, fell within the broad discretion that §§ 636(a)(36)(B) and (E), and § 634(b)(7) confer. Those statutes use empowering language affording SBA considerable flexibility and are comparable to those the Supreme Court in *Loper Bright* recognized as conferring

8

discretion on an agency warranting judicial respect. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 & n.6, 2273 (2024). The Rule boils down to an "unremarkable" exercise of discretion to "adopt policies to prioritize [agency] expenditures within the bounds established by Congress." *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 327 (2014).

## B. Forest View's Reading of the Act Is Flawed and Overlooks Key Terms.

Forest View's contention that the CARES Act precludes SBA from capping loans to borrowers at any amount less than $10 million, irrespective of their corporate group status, distorts the Act's plain text. Pl. Mem. 15-17. Forest View argues that the loan caps in § 636(a)(36)(E), read together with the criteria for size eligibility in § 636(a)(36)(D)(i) and other limitations explicitly listed in the CARES Act, means that business concerns satisfying the size eligibility and other limitations are automatically eligible for a PPP loan, up to $10 million, regardless of whether they belong to a corporate group. *Id.* But that contention is founded on isolated provisions that Forest View misconstrues and takes out of context and should be rejected. *See Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023) (courts "must read the words Congress enacted in their context and with a view to their place in the overall statutory scheme"); *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 289-90 (2010).

*First*, Forest View misconstrues § 636(a)(36)(E). Forest View distorts the plain text, which states that "the *maximum*" (emphasis added) amount of a PPP loan "shall be the lesser of" the payroll-cost mount, or $10 million, by taking that provision to mean that the amount of a PPP loan must be *equal to* a borrower's payroll-cost amount (though no more than $10 million), leaving SBA no discretion to set a lower aggregate cap for loans to a corporate group. But, as explained (pp. 7-9, *supra*), a statute placing a cap on a fee, grant, or other award of funds is not naturally "construed as an entitlement to the maximum [amount] specified." *In re Lan Assocs.*, 192 F.3d at 116. That is all the more so when § 636(a)(36)(E) is read in tandem with §§ 636(a)(36)(B)

and 634(b)(7).  As discussed above, § 636(a)(36)(B), providing that SBA "may" but is not required to guarantee PPP loans, further undercuts Forest View's contention that loans shall be no *less* than a borrower's payroll-cost amount (up to $10 million).  The discretion conferred on SBA by § 634(b)(7) to "take any and all actions" the agency deems "necessary or desirable" in "making" or "otherwise dealing with" § 7(a) loans, including PPP loans, also gave the agency leeway to set a cap on the aggregate amount in PPP loans that may be issued to a corporate group.  *Supra* at 7-9. There is no warrant for ignoring those provisions.

*Second*, the meaning of § 636(a)(36)(E) is unaltered by 15 U.S.C. § 636(a)(36)(D)(i), which Forest View also misconstrues.  Pl. Mem. 11-12.   That clause provides that "in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or Tribal business concern . . . shall be *eligible* to receive a [PPP] loan" if it employs no more than 500 individuals or meets the SBA size standard  for the applicant's industry (emphasis added). According to Forest View, § 636(a)(36)(D)(i) means that *all* businesses meeting its size criteria should receive a PPP loan, without leaving SBA discretion to deny loans to members of a corporate group that has exceeded the Rule's $20 million maximum.  Pl. Mem. 15.  That argument confuses *eligibility* to receive a PPP loan, 15 U.S.C. § 636(a)(36)(D)(i), with a cap on the *loan amount* an eligible borrower may receive.  A *dollar limit* on a loan is not a restraint on borrower *eligibility*. Likewise, the Corporate Group Rule is not a condition on PPP loan eligibility.  For example, if Blisko and Gubin Enterprises Limited Partnership had exercised restraint and limited the size of the PPP loans each of their companies requested so as to remain within the $20 million cap, then all of them (including Forest View) could have been granted full loan forgiveness (assuming they otherwise satisfied loan-forgiveness requirements).

The Second and Eleventh Circuits have persuasively rejected the argument, echoed here by Forest View, that § 636(a)(36)(D)(i) impliedly precludes application of other SBA eligibility

10

rules to the PPP. Those circuits found that this argument is "not tenable" and "illogical." *See Pharaohs GC, Inc. v. SBA*, 990 F.3d 217, 227 (2d Cir. 2021); *Gateway*, 983 F.3d at 1258. Taken in context, § 636(a)(36)(D)(i) is properly understood not as setting forth exclusive eligibility criteria for PPP loans, but rather as expanding by size and type the class of entities to which SBA is authorized—but not required—to make PPP loans. *See Pharaohs GC*, 990 F.3d at 228; *Gateway*, 983 F.3d at 1256. Although Forest View urges reliance on an interlocutory ruling by a divided Sixth Circuit motions panel in *D.V. Diamond Club of Flint, LLC v. SBA*, 960 F.3d 743 (6th Cir. 2020), *see* Pl. Mem. 17, the Second and Eleventh Circuit's contrary decisions represent the greater weight of authority on the proper understanding of § 636(a)(36)(D)(i).[1]

Forest View next asserts that Congress "intended for the CARES Act to unambiguously allow a borrower to obtain a loan up to" $10 million, and so the $20 million limit of the Corporate Group Rule exceeds SBA's authority. Pl. Mem. Arg. § IV. But again, this argument disregards the difference between a "maximum" amount and an entitlement, and neglects § 636(a)(36)(B) and § 634(b)(7), which expressly endowed SBA with broad discretion in administering the PPP and in issuing rules it deemed "necessary or desirable" to promote the program's purposes. Subparagraph 636(a)(36)(E) does not entitle PPP borrowers to the "maximum loan amount." In analogous contexts, the Supreme Court has held that to confer "rights" a statute must contain "rights-creating" language "phrased with an unmistakable focus on the benefited class," rather than terms phrased

---

[1] *Tradeways, Ltd. v. U.S. Dep't of the Treas.*, 2020 WL 3447767 at \*13 (D. Md. June 24, 2020); *Defy Ventures, Inc. v. SBA*, 469 F. Supp. 3d 459, 473-74, 476 (D. Md. 2020); *see also DACO*, 2024 WL 750594 at \*\*6-11; *Bruckner Truck Sales, Inc. v. Guzman*, 2023 WL 8606761 at \*\*4, 6 (N.D. Tex. Dec. 12, 2023) ("Bruckner I"), *reconsideration denied*, 2024 WL 903441 (N.D. Tex. Feb. 27, 2024) ("Bruckner II"); *accord Bro. Petroleum, LLC v. United States*, 569 F. Supp. 3d 405, 411- 12 (E.D. La. 2021); *Diocese of Rochester v. SBA*, 466 F. Supp. 3d 363, 375-78 (W.D.N.Y. June 10, 2020); *SBA v. Archdiocese of Santa Fe*, 632 B.R. 816 (Bankr. D.N.M. 2021); *In re Vestavia Hills, Ltd.*, 630 B.R. 816 (Bankr. S.D. Cal. 2021); *In re Penobscot Valley Hosp.*, 2020 WL 3032939 (Bankr. D. Me. 2020); *In re Archbishop of Agaña*, 2021 WL 1702311 (D. Guam Feb. 23, 2021).

as "a directive" to an agency "for the distribution of public funds." Subparagraph 636(a)(36)(E) clearly belongs in the latter category. Its determination of what the "maximum loan amount shall be," in tandem with § 636(a)(36)(B), is properly understood as a directive to SBA that it "may" authorize no loan greater than the lesser of the borrower's payroll-based amount, or $10 million. *Compare* 15 U.S.C. § 636m(b) ("An eligible recipient shall be eligible for forgiveness of [a PPP] loan in an amount *equal to* the sum of the following costs incurred and payments. . . .").

Forest View further protests that SBA's adoption of the Corporate Group Rule was "arbitrary and capricious" and without "reasoned explanation." Pl. Mem. at Arg. § II(C). But the Rule itself sufficiently explained its adoption, Background § III, *supra*, and Forest View's contrary position simply recasts its mistaken argument that SBA lacked authority to adopt the Rule.

### C. The EAA Ratified the Corporate Group Rule

In any event, Congress independently sustained the Corporate Group Rule's validity in the EAA. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *see also N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982) ("Where an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned."); *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 75 F.4th 743, 752 (7th Cir. 2023).

That principle applies here. *See supra* at 5, 6. In December 2020, the EAA re-authorized and refunded the PPP, which had expired in August 2020. EEA § 323(a)(1). In doing so, the EAA made amendments to the CARES Act affecting borrower eligibility and permissible uses of loan proceeds without changing the maximum loan amount calculation for first-draw PPP loans. *Id.* Indeed, the EAA added maximum loan amount calculations for loans to farmers and ranchers

and for second-draw PPP loans that are both modeled on the same payroll-based formula as in §

636(a)(36)(E). EAA §§ 311, 313 (adding 15 U.S.C. § 636(a)(36)(V), (37)(B)). Yet, at the same

time, the EAA in no way "purport[ed] to restrict SBA's authority" to impose an aggregate

corporate-group limit on any of these categories of loans. *Cf. Bruckner I*, 2023 WL 8606761 at *5

(similar analysis as to SBA's loan-forgiveness rule). On that point "SBA's approach *was* left

completely untouched." *Id.* The appropriate inference under *Lorillard*, 434 U.S. at 580, and *Bell*,

456 U.S. at 535, is that the EAA "represents Congress's affirmative decision to ratify the SBA's

conclusion that it had statutory authority to" impose the Corporate Group Rule. *Bruckner I*, 2023

WL 8606761 at *5; *Bruckner II*, 2024 WL 903441 at *4 & n.8; *see also Springfield Hosp., Inc. v.*

*Guzman*, 28 F.4th 403, 426-27 (2d Cir. 2022) (applying similar analysis of the EAA).

## II.  Forest View Fails to Show that the OHA Decision Violated the APA.

Forest View argues alternatively that the OHA decision affirming SBA's denial of PPP

loan forgiveness violated the APA by (A) applying the Rule retroactively; (B) finding that Forest

View belonged to a corporate group; (C) declining to equitably estop SBA from applying the Rule;

and (D) failing to grant Forest View's motion to compel. These arguments also lack merit.

### A.  OHA Did Not Misapply the Corporate Group Rule Retroactively (Count I).

Forest View incorrectly contends that applying the Corporate Group Rule to it was

impermissibly retroactive. Compl., Ct. I. The Rule applies to all PPP loans that had "not yet been

fully disbursed as of April 30, 2020," 85 Fed. Reg. 26,324, and SBA *prospectively* applied the

Rule to Forest View's loan disbursed on May 18. SOF ¶ 9.

Forest View's theory is that once it *applied* to a lender in mid-April 2020, the application

conferred *vested rights* entitling Forest View to have SBA review the loan under only then-in-force

legal authority, which did not include the Corporate Group Rule. Pl. Mem. at Arg. § III(A). But

the "mere filing of an application," such as a PPP loan application, clearly "is not the kind of

completed transaction in which a party could fairly expect stability of the relevant laws as of the transaction date." *Pine Tree Med. Assocs. v. Sec'y of Health & Human Servs.*, 127 F.3d 118, 121 (1st Cir. 1997). Indeed, even when a person applies to a *federal agency* for benefits (and by contrast here, Forest View applied to a *lender*), that applicant lacks any vested rights requiring the agency to review the application under only the law in force on the filing date. *Id.* at 122; *BellSouth Telecomms., Inc. v. Se. Tel., Inc.*, 462 F.3d 650, 660-61 (6th Cir. 2006). An application is "simply a preliminary step" in obtaining the benefit sought (here, forgiveness), "not a final determination or event," and so "no new legal consequences would affect the application" of Forest View when the Corporate Group Rule came into force after the application date. *Durable Mfg. Co. v. U.S. Dept. of Labor*, 578 F.3d 497, 503 (7th Cir. 2009).

In any event, general retroactivity principles foreclose Forest View's contention. SBA never applied the Corporate Group Rule retroactively by disrupting vested rights Forest View had secured or imposing a new duty "with respect to transactions already completed." *Id.* A finding of retroactivity hinges on "a commonsense, functional judgment" informed "by considerations of notice, reliance, and settled expectations." *Id.* The relevant factors cannot support a retroactivity finding. When SBA adopted the Corporate Group Rule on May 4, 2020, Forest View had not even completed the preliminary loan disbursement process to receive a PPP loan. Instead, Forest View waited until May 18, 2020, *i.e.*, two weeks *after* the Rule was adopted, to execute a promissory note with its lender, which amounted to an essential step in the disbursement process by, for example, setting forth the loan's key terms. SOF ¶ 8. That same day, the lender executed SBA Form 2484, which provided information and certifications concerning the loan, including certifications regarding Forest View's eligibility to participate in the PPP program, and only then disbursed the loan. SOF ¶¶ 6-7, 9. Any one of several events could have prevented the PPP loan disbursement before execution of the promissory note. For example, the lender could have

14

discovered an indication of fraud; Forest View could have elected not to receive the loan based on a perceived change in legal or business conditions; Forest View could have applied to multiple lenders for a loan and chosen only one; or the lender could have discovered that Forest View was ineligible. Thus, SBA's loan review decision *prospectively* applied the Corporate Group Rule by denying loan forgiveness because Forest View had "received" a loan as of May 18, 2020, in violation of the $20 million limit. SOF ¶ 24. Contrary to Forest View's contention, denial of forgiveness was not predicated on an agency position that the Corporate Group Limit was in force on the date Forest View applied for the loan. Pl. Mem. at 16.

Forest View also errs in contending that two SBA regulations and SBA's response to a "Frequently Asked Question" show that SBA could not review its loan under the Corporate Group Rule. Pl. Mem. at Arg. § III(A)(i). Forest View invokes 13 C.F.R. § 121.302, which concerns when SBA determines the "size status of an applicant for SBA financial assistance," but the Corporate Group Rule applies to PPP loan applicants that belong to a corporate group that received more than $20 million in PPP loans—regardless of whether they fit the size criteria in 15 U.S.C. § 636(a)(36)(D). Forest View also selectively quotes 85 Fed. Reg. 33,010, but as explained above, the quoted passage concerns a borrower's *eligibility* to participate in the program, while the Corporate Group Rule sets a PPP loan *limit* on what eligible borrowers belonging to corporate groups can receive. And even were the two regulations in tension, the Rule explicitly states that it applies to PPP loans that had "not yet fully disbursed as of April 30, 2020," 85 Fed. Reg. 26,324, and that explicit temporal range would take precedence over more general text elsewhere. *See Matter of Johnson*, 787 F.2d 1179, 1181-82 (7th Cir. 1986). Further, the document providing SBA's responses to "Frequently Asked Questions" explicitly states that it "does not carry the force and effect of law independent of the statutes and regulations on which it is based," PPP Loans

15

Frequently Asked Questions, July 29, 2021, at p. 1, n.1, so those responses, too, must yield to the Rule in the event of inconsistency.

### B. OHA's Finding of a Corporate Group Was Not Arbitrary and Capricious (Count III).

Forest View also fails to carry its heavy burden under the APA of showing that OHA's finding that Forest View belonged to a corporate group that had received over $20 million in PPP loans was arbitrary and capricious or unsupported by substantial evidence. *See* Pl. Mem. at Arg. § III(B). A business is part of a "corporate group" if it is "majority owned, directly or indirectly, by a common parent entity." 85 Fed. Reg. 26,325. Here, OHA found that Forest View (along with Oak Lawn and Parkshore in the companion cases, Case Nos. 23 C 4363 (*Oak Lawn*), 23 C 4367 (*Parkshore*)) is majority-owned by a partnership-in-fact between Michael Blisko and Gubin Enterprises Limited Partnership ("Gubin Enterprises"). SOF ¶ 30.

A partnership is "the association of 2 or more persons to carry on as co-owners of a business for profit" whether "*or not the persons intend to form a partnership*." 805 ILCS 206/202(a) (emphasis added); *see also Isley v. Isley*, No. 23 C 01720, 2023 WL 5431498, at *3 (N.D. Ill. Aug. 23, 2023) (citing 805 ILCS 206/202(a)); Ind. Code § 23-4-1-6; J. William Callison & Maureen A. Sullivan, P'ship L. & Prac. § 5.1 (Nov. 2023 Update) ["P'ship Law & Prac."] (same).[2] Formation of a partnership does not require a written agreement but may be inferred from the relevant circumstances. *Isley*, 2023 WL 5431498, at *3 (citing *Seidmon v. Harris*, 526 N.E.2d 543, 545 (Ill. App. Ct. 1988)); *see also* P'ship Law & Prac. § 5.7. As between the parties to a partnership, "the existence of a partnership is a question of intent" to carry on in business together "based on

---

[2] Where a case turns on the application of federal laws or regulations, the question of whether a business relationship qualifies as a partnership is ultimately one of federal law, *Central States Sw. & Se. Areas Pension Fund v. Johnson*, 991 F.2d 387, 392 (7th Cir. 1993), but state law may also be "instructive," *Connors v. Ryan's Coal Co., Inc.*, 923 F.2d 1461, 1467 n.37 (11th Cir. 1991). Defendants cite Illinois law and Indiana law because 34 of the 61 Blisko-Gubin Enterprises business entities that received a PPP loan are located in Indiana (20) or Illinois (14). SOF ¶ 12.

all of the facts and circumstances." *Seidmon*, 526 N.E.2d at 545; *see also Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, No. 10 C 7064, 2011 WL 1740132, at *5 ("It is the existence of such an association that is relevant, not their intent to form something called a partnership."); *Wolfe v. Agro*, 163 N.E.3d 913, 922 (Ind. Ct. App. 2021). To determine whether to infer a partnership in the absence of an agreement, courts consider "the manner in which the parties have dealt with each other; the mode in which each has, with the knowledge of the other, dealt with persons in a partnership capacity; whether the alleged partnership has advertised using the firm name; and whether the alleged partners shared the profits." *Isley*, 2023 WL 5431498, at *3. Here, for purposes of SBA's application of the Corporate Group Rule to Forest View's forgiveness application, these factors show a partnership-in-fact exists between Blisko and Gubin Enterprises.

As to the parties' dealings with one another, numerous facts reflect the intent of Blisko and Gubin Enterprises to associate with one another to carry on a business for profit. Together, they own combined majority interests in 61 businesses, including Forest View, Parkshore, and Oak Lawn, most of which are nursing care facilities, which received over $40 million in total PPP loans. SOF ¶¶ 15, 17. Moreover, Blisko and Gubin Enterprises share common ownership or management of at least 203 businesses. SOF ¶ 14. Such a shared empire did not form by happenstance, but rather reflects Blisko and Gubin Enterprises' conscious design.

The record before SBA also indicates that Blisko and Gubin Enterprises' commonly owned businesses are not run independently but rather are parts of an elaborate business venture in nursing homes. Indeed, just among those entities receiving PPP loans are 14 Illinois entities in which Blisko and Gubin Enterprises together own a majority interest, including Forest View, Oak Lawn, and Parkshore. SOF ¶¶ 16, 18. These entities submitted PPP loan applications using the same primary contact, Paresh Vipani, business phone number and extension, email address (pvipani@infinityhcm.com), and mailing address. SOF ¶ 18. Moreover, the Blisko-Gubin

Enterprises nursing homes' physical facilities are owned by subsidiaries of a real estate investment trust, Strawberry Fields REIT, LLC, that is co-owned by Blisko and the president of Gubin Enterprises' general partner, Moishe Gubin. *Parkshore*, Dkt. 44 (SOF) ¶ 14. These subsidiaries pay for consulting services from Indiana-registered limited liability company Infinity Healthcare Management, LLC, formerly known as New York Boys Management, LLC, which is owned equally by Blisko and Gubin Enterprises and managed by Blisko and Moishe Gubin. *Id.* ¶ 15.

Substantial evidence before SBA also establishes that Blisko and Moishe Gubin have continually held themselves out to the public as coventurers in business, including in advertisement material. The common information submitted in the PPP loan applications of the 14 Illinois entities shows how they represented themselves as a partnership-in-fact to SBA. Blisko and Moishe Gubin's 20-year "Partnership" is touted on the consulting company Infinity's website. SOF ¶ 19. Infinity also lists both Forest View and Parkshore among its dozens of "Client Facilities." SOF ¶ 20. And in a 2016 *Chicago Tribune* news article about another nursing home owned in common, Continental Nursing & Rehabilitation Center, Blisko, and Moishe Gubin are described as "longtime business partner[s]." SOF ¶ 22. Moishe Gubin is the president of Gubin Enterprises' 1% owner and general partner Gubin Ventures GP, Inc. and trustee of one of its two 49.5% limited partners, the Moishe Gubin Trust Dated July 14, 2013. *Parkshore*, Dkt. 44 (SOF) ¶¶ 10-12. Thus, any distinction between Moishe Gubin and Gubin Enterprises is, as concerns the Blisko-Gubin Enterprises partnership for purposes of SBA's forgiveness analysis, inconsequential.

The final factor indicative of *de facto* partnership, the potential partners' sharing in profits, is inherent in the structure of nearly all the business entities in which Blisko and Gubin Enterprises own a combined majority interest: limited liability companies. *See* SOF ¶ 17. Under Illinois and Indiana law, natural persons and business entities with interests in LLCs are "members," and they may acquire "membership interests" entitling them to financial and managerial rights, such as the

18

right to share in profits and to participate jointly in the management of the company's internal affairs and the operation of its business, with power usually allocated in proportion to the members' capital contributions.[3] The default rule is that Blisko and Gubin Enterprises, as members of Forest View, Oak Lawn, Parkshore, and other LLCs, have the power to manage and receive profit distributions from these LLCs. Forest View provided no evidence counseling against applying that default rule despite having multiple opportunities to do so before OHA.

Taken together, these facts constitute substantial evidence supporting that SBA's finding that the Blisko-Gubin Enterprises partnership is the "common parent," 85 Fed. Reg. at 26,325, of Forest View, Parkshore, Oak Lawn, and other businesses that collectively received over $20 million in PPP loans, and thus that Forest View was part of a corporate group with these entities.

Forest View protests that it could have no majority owner under the Corporate Group Rule because two parties each owned a 50% share in the business. Pl. Mem. at 18. It heavily relies on a definition of "majority-owned affiliate" from 12 C.F.R. § 1234.2 to make its case, but that regulation applies to a wholly separate scheme involving the independent Federal Housing Finance Agency. *Id.* Additionally, the Corporate Group Rule states that borrowers are part of the same corporate group if they are owned "directly *or indirectly*, by a common parent." Fed. Reg. at 26,325 (emphasis added). Under the law of partnership, it is the substance rather than the form of a transaction which controls," so it is well recognized that the members of a partnership may form separate business entities to carry on the partnerships objectives, while still remaining partners as

---

[3] Nicholas G. Karambelas, 1 Ltd. Liab. Co.: L., Prac. & Forms § 6.4 (2024) ["LLC Law & Prac."] (Westlaw citation: LLCLPF § 6:4); *e.g.*, 805 ILCS 180/1-5; Ind. Code §§ 23-18-1-15, 23-18-1-17, 23-18-6-1; LLC Law & Prac. § 8.3 (Westlaw citation: LLCLPF § 8.3); *e.g.*, 805 ILCS 180/15-1 *et seq.*; Ind. Code §§ 23-18-1-10; J. William Callison & Maureen A. Sullivan, Ltd. Liab. Cos.: A State-by-State Guide to Law & Practice § 8.3 (2023 ed.) ("Member management of limited liability companies") ["Ltd. Liab. Cos."] (Westlaw citation: LLC § 8.3); *id.* § 7.5 ("Profit and loss sharing") (Westlaw citation: LLC § 7:5); *e.g.*, 805 ILCS 180/15-1; 805 ILCS 180/25-20; Ind. Code §§ 23-18-4-1, 23-18-5-3.

between themselves. *Boyarsky v. Froccaro*, 516 N.Y.S.2d 775, 777 (N.Y. App. 1987); *see also United Eurodif S.A.*, 555 U.S. 305, 317-18 (2009) ("public law is not constrained by private fiction," so, "in reading *regulatory* and taxation statutes, '*form should be disregarded for substance* and the emphasis should be on economic reality'") (emphasis added). Forest View is also wrong that the Rule allows only a corporation to qualify as a "common parent entity." Pl. Mem. at 19. The Rule applies to all "businesses." 85 Fed. Reg. at 26,325. Moreover, "parent" simply means a business entity superior to a subsidiary entity. *See, e.g.*, "Parent," *Merriam-Webster.com Dictionary*, https://www.merriam.webster.com/dictionary /parent ("a group from which another arises and to which it usually remains subsidiary; a *parent* company"). Moreover, even if Forest View pointed to any genuine ambiguity concerning the reach of the phrase "majority owned, directly or indirectly, by a common parent entity" (it does not), SBA's interpretation of the reach of its own regulation would be entitled to deference for falling "within the bounds of reasonable interpretation." *Kisor v. Wilkie*, 588 U.S. ---, ---, 139 S. Ct. 2400, 2416 (2019); *Abraham Lincoln Mem'l Hosp. v. Sebeleius*, 698 F.3d 536, 547 (7th Cir. 2012); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

## C. Equitable Estoppel Did Not Prohibit SBA from Applying the Corporate Group Rule.

Forest View also fails to show that SBA was equitably estopped from denying forgiveness under the Corporate Group Rule in June 2023 after the agency had granted partial loan forgiveness in November 2021. Pl. Mem. at Arg. § I.

Initially, Forest View's complaint does not allege any estoppel claim, *see generally* Compl., and "a plaintiff may not amend its complaint through arguments in a summary judgment brief." *ExxonMobil Oil Corp. v. Amex Const. Co.*, *Inc.*, 702 F. Supp. 2d 942, 966 (N.D. Ill. 2010).

In any event, the claim also fails on the merits. It is "'an open question whether equitable estoppel is [even] available against the government.'" *Matamoros v. Grams*, 706 F.3d 783, 793

(7th Cir. 2013) (quoting *Solis-Chavez v. Holder*, 662 F.3d 462, 471-72 (7th Cir. 2011)).  But even assuming, *arguendo*, that such a claim is available against SBA, the plaintiff must show that "(1) the party to be estopped knows the facts; (2) that party intended for his conduct to be acted upon or acted in such a manner that the party asserting estoppel had a right to believe he intended as such; (3) the party asserting estoppel was ignorant of the facts; and (4) the party asserting estoppel reasonably relied on the other's conduct to his substantial injury."  *Id.*  The plaintiff must also show that the government engaged in "affirmative misconduct."  *Solis-Chavez*, 662 F.3d at 472.

Forest View fails to show, or even allege, that SBA engaged in affirmative misconduct, which "requires an affirmative act to misrepresent or mislead," not "mere negligence" or "inadvertent oversight." *Matamoros*, 706 F.3d at 794.  The Corporate Group Rule required *Forest View* to notify the lender if Forest View "received PPP loans in excess of the amount permitted" under the Rule, so SBA's 2021 decision resulted from *Forest View's* mistake.  85 Fed. Reg. 26,324.  But even if *SBA* erred, Forest View offers no facts (or even an allegation) showing that the error amounted to anything more than inadvertent oversight.

Forest View also fails to satisfy the remaining estoppel elements.  Forest View itself alleges that it "reasonably relied" on its *lender's* "approval of its PPP loan on April 30, 2020"—not on *SBA's* decision more than a year later, in November 2021, to issue a partial loan forgiveness decision.  *E.g.*, Compl. ¶¶ 72, 42.  Forest View also does not show, or even allege, that it suffered any "substantial injury" from the 2021 decision.  Moreover, as discussed above, the Corporate Group Rule prohibited Forest View from receiving a PPP loan, and equitable estoppel is never proper against the government in cases where the plaintiff "should never have received in the first place." *Kennedy v. U.S.*, 965 F.2d 413, 418 (7th Cir. 1992).  Lastly, Forest View fails to show that SBA knew the facts concerning its corporate group membership in 2021.

### D. OHA Complied with the APA in Denying Forest View's Motion to Compel (Count IV).

Next, Forest View fails to show that the OHA decision violated the APA by denying Forest View's motion to compel SBA to reimburse amounts offset against the PPP loan debt, with interest, while Forest View's (now rejected) OHA appeal was pending. Compl., Ct. IV.

As background, the Debt Collection Act of 1982 and Debt Collection Improvement Act of 1996 authorize federal agencies to coordinate with the U.S. Department of Treasury to collect delinquent nontax debt through the Treasury Offset Program. 31 U.S.C. § 3716(c)(6)(A); 31 C.F.R. § 285.5. Treasury can collect such debt through an "administrative offset," including by "withholding funds payable by the United States" to the debtor, such as government benefit funds. 31 U.S.C. § 3701(a)(1). SBA initiates such Treasury collections by sending a notice to the PPP borrower, 13 C.F.R. § 140.2(b)(1), 140.3(a)-(c), who may then appeal SBA's notice to OHA, § 134.102(i)—but only "within 15 days of receipt of the written notice," § 140.3(e)(1). Here, SBA sent its notice to Forest View in January 2023, but Forest View never appealed that notice to OHA, and Treasury began offsetting government funds owed to Forest View to recover the loan debt in April 2023. SOF ¶ 31 (USA_1978). Months later, in July 2023, Forest View appealed a *different* SBA decision to OHA—a loan forgiveness decision—and, in that proceeding, filed a motion to compel SBA to reimburse all amounts collected on the PPP loan and cease further collections activity under 13 C.F.R. § 134.1202, which states that a "timely appeal by a PPP borrower of a final SBA loan review decision extends the deferment period for the PPP loan until a final decision is issued under § 134.1211." OHA denied that motion as moot. SOF ¶ 31. Forest View argues that the APA required granting that motion. *See* Compl. ¶ 126; *see also id.* ¶¶ 64-65, 70, 75.

Forest View's claim fails on multiple grounds. First, the APA waives sovereign immunity only insofar as the plaintiff seeks "relief other than money damages," 5 U.S.C. § 702, but for this motion-to-compel claim, Forest View seeks an order requiring SBA to "reimburse Forest View for

all amounts improperly recouped" on its loan, with interest, during the OHA appeal. Compl. at 21, ¶¶ 64, 126, 127. *O'Connell v. Mills*, No. 13-15124, 2014 WL 354696 (E.D. Mich. Jan. 31, 2014), is instructive. There, the plaintiff challenged the offsetting of his debt on an SBA-backed loan with Social Security benefit payments and sought "a refund of the amounts withheld." *Id.* at *4. The court held that sovereign immunity barred any APA claim seeking such "wholly monetary" relief or any injunction for that relief. *Id.*; *accord Harrison v. Soc. Sec. Admin.*, No. 3:13 C 435, 2014 WL 29042, at *4 (E. D. Va. June 2, 2014).

Second, Forest View's motion to compel violated OHA regulations, so OHA cannot have violated the APA in denying it. Initially, the motion was untimely. SBA sent Forest View its notice under § 140.3(a)-(c) in January 2023, but Forest View never filed any OHA appeal petition concerning that notice, let alone within 15 days of receiving the notice as required, and Treasury began collections in April 2023. SOF ¶ 31. Perhaps realizing that the appeal deadline had expired, Forest View opted to file a *motion to compel* in September 2023. SOF ¶ 31. But in addition to that motion being untimely, OHA regulations only allow for an appeal petition satisfying § 134.203—not a motion to compel—to initiate a debt collection appeal. *See Oldham v. U.S. SBA*, 1:18 C 073-C, 2019 WL 11503083, at *2; *Canada v. SBA*, 21 C 91-RP, 2021 WL 8442057 (W.D. Tex. Dec. 20, 2021), *adopting report and recommendation*, 2021 WL 8442058 (W.D. Tex. Oct. 13, 2021); *accord Pala v. Karen Gordon Mills*, 2014 WL 12619318 (S.D. Tex. April 11, 2014).

Third, Forest View's claim fails under issue exhaustion. Under the OHA scheme, an appellant "must" appeal to OHA "before judicial review of a final SBA loan review decision may be sought in Federal district court," 13 C.F.R. § 134.1201(d), and *properly* exhaust each legal argument there prior to pressing it in district court, § 134.1204(a)(2). But Forest View never appealed a debt collection decision or *properly* raised a debt collection issue before OHA. *Team Waste Gulf Coast, LLC v. United States*, 135 Fed.Cl. 683, 687-89 (Fed. Cl. 2018).

Fourth, Forest View's use of the wrong appeal procedure means that this court lacks a final OHA decision and administrative record to review under the APA. *See Driftless Area Land Conservancy v. Rural Utils. Serv.*, 74 F.4th 489, 493-94 (7th Cir. 2023) (dismissing APA action where agency decision was not "final" and there was no "record to review."). Forest View's appeal petition appealed only a final loan review decision—not any debt collection decision. SOF ¶ 26. That appeal was governed under 13 C.F.R. Subpart L, a review process specific to PPP loan review decisions—not to debt collection decisions. § 134.1201(a), (b). SOF ¶ 25. Subpart L and Subpart B, which can apply to debt collection appeals, set forth different requirements for appeal petitions (*compare* § 134.1204, *with* § 134.203), administrative records (*compare* § 134.1207, *with* § 134.205), and the timing and finality of the OHA decision (*compare* § 134.1211, *with* §§ 134.226(b), 134.227(b)(1)). Thus, the parties prepared the administrative record OHA decided on under Subpart L, so that record concerned a loan review decision (not any debt collection decision), and OHA never issued a final debt collection decision in accordance with § 134.227(b)(1).

Finally, Forest View's lender never deferred PPP loan payments under 15 U.S.C. § 636(a)(36)(M)(ii)(II), so there was no deferment for SBA to extend under 13 C.F.R. § 134.1202(d). In November 2021, SBA issued a decision granting Forest View partial loan forgiveness, and the lender thereafter required—and did not defer—principal and interest loan payments. SOF ¶ 12. As a result, SBA had no deferment to extend. To be sure, in 2023, SBA denied loan forgiveness after investigating and finding that Forest View had received a loan in violation of the Corporate Group Rule. But Forest View failed to fulfill its obligation to report that matter, and the new decision did not entail that SBA suddenly had a deferment to extend.

## III. Forest View Is Not Entitled to the Relief It Seeks.

In any event, Forest View seeks relief that is unavailable here. Compl. at 21 (prayer for relief). Even if Forest View were to prevail, the remedy would be to remand for further SBA

proceedings. Where, as here, a statute places the matter for decision "primarily in agency hands," the court "is not generally empowered to conduct a de novo inquiry into the matter" and "reach its own conclusions." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002). Except in rare situations, the court must "set aside the agency's action and remand the case" even if the agency might later "reach the same result for a different reason." *FEC v. Akins*, 524 U.S. 11, 25 (1998); *W. Va. Highlands Conservancy, Inc. v. Norton*, 343 F.3d 239, 248 (4th Cir. 2003). Forest View's requests for injunctions are also barred by SBA's limited waiver of sovereign immunity, which provides that no "injunction" or "similar process" shall be issued against SBA or its property. 15 U.S.C. § 634(b)(1); *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383 (4th Cir. 1990). The APA does not authorize courts "to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Nor does the APA empower courts to "set aside" agency rules by nullifying or revoking them. *United States v. Texas*, 599 U.S. 670, 693-702 (2023) (Gorsuch, J., concurring, joined by Thomas and Barrett, JJ.); *cf. Labrador v. Poe*, 144 S. Ct. 921, 931-32 (2024) (Kavanaugh, J., joined by Barrett, J., concurring in grant of stay).

## Conclusion

For the foregoing reasons, the defendants are entitled to summary judgment, and Forest View's motion for summary judgment should be denied.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Jordan A. Rosen
    JORDAN A. ROSEN
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5331
    jordan.rosen@usdoj.gov