UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOREST VIEW REHABILITATION AND NURSING CENTER, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as the United States Secretary of Treasury; and THE UNITED STATES OF AMERICA, <br><br> Defendants. | No. 24 C 1490 <br><br> Judge Valderrama |

**DEFENDANTS' REPSONSE TO PLAINTIFF'S STATEMENT OF FACTS**

Defendants, by their attorney, Morris Pasqual, Acting Unite]d States Attorney for the Northern District of Illinois, respond to plaintiff Forest View Rehabilitation and Nursing Center, LLC's Local Rule 56.1 statement of facts, Dkt. 28-1, as follows:

**Congressional Response to the COVID-19 Pandemic**

1. To mitigate the economic devastation caused by the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). Congress's purpose in adopting the CARES Act was to ensure continued employment and income for the millions of Americans employed by small businesses. To accomplish that critical goal, Congress created the Paycheck Protection Program ("PPP"), which authorized the SBA to guarantee hundreds of billions in loans to small businesses. PPP loans were to be made by private lenders, and Congress pledged to forgive these loans (i.e., the federal government would reimburse the bank) provided that, *inter alia*, the borrowers used most of the proceeds to pay employee wages. See 15 U.S.C. §§ 636(a)(36) and 636m; Defendants' Answer ("Defs. Ans."), ¶ 1.

**Response:** Admit that the CARES Act was passed to mitigate the economic devastation caused by the COVID-19 pandemic. Admit that one of Congress's purposes in enacting the CARES Act was to ensure continued employment and income for millions of Americans through the Paycheck Protection Program, and that the program authorized SBA to guarantee billions of dollars in loans to

1

eligible businesses. Otherwise disputed. Defendants object that the statement does not cite evidentiary material, in violation of LR 56.1(d)(2), and contains legal argument, in violation of LR 56.1(d)(4).

2. "The PPP is a new loan program to be administered by the SBA under Section 7(a) of the Small Business Act (codified at 1 U.S.C. § 636(a)). Its purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms." Its purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms." Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin., 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020) (emphasis added). Section 1106 of the CARES Act "provides that a borrower's indebtedness under a PPP loan will be forgiven to the extent that the borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent, and utilities during the eight- week period following the loan's origination." Id. (citing Interim Final Rule, Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020)); see also Defs. Ans., ¶ 2.

**Response:** Admit that Forest View accurately quotes from *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, 458 F. Supp. 3d 1044, 1050 (E.D. Wis. 2020), but dispute that the case fully characterizes the purposes of the PPP and section 1106 of the CARES Act. Dispute that the case cited Interim Final Rule, Business Loan Program Temporary Changes, Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020), as authority for its summary of Section 1106. Otherwise disputed. Defendants object that the statement does not cite evidentiary material, in violation of LR 56.1(d)(2), and contains legal argument, in violation of LR 56.1(d)(4).

3. Historically, before the CARES Act's enactment, the SBA treated certain classes of businesses as ineligible for other SBA lending programs. See 13 C.F.R. § 120.110. Aware of this, Congress purposefully intended that the CARES Act would "[i]ncrease[] eligibility" for forgivable PPP loans, 15 U.S.C. § 636(a)(36)(D), making them widely available to small businesses across the commercial spectrum. Congress did so by establishing specific, limited criteria for PPP loan guarantee eligibility and by providing unambiguously that "any business concern . . . shall be eligible" for a forgivable PPP loan if it met those criteria. Id. (emphasis added); Defs. Ans., ¶ 3.

**Response:** Admit that SBA has excluded certain types of small businesses from eligibility for SBA lending programs. Otherwise disputed. Defendants object that the statement does not cite evidentiary material, in violation of LR 56.1(d)(2), and contains legal argument, in violation of LR 56.1(d)(4).

4. "An eligible recipient shall be eligible for forgiveness of indebtedness" provided that at least 60 percent of the PPP loan funds are used for certain payroll expenses. CARES Act § 1106(b), (d) (emphasis added); Paycheck Protection Program Flexibility Act ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641, § 3(b) (2020). The SBA is required to reimburse the private lender for any PPP loan determined eligible for forgiveness. CARES Act § 1106(c)(3). PPP loan recipients must submit forgiveness applications to be considered. Id. § 1106(e). Section 1106(b) of the CARES Act provides for forgiveness of a PPP loan only if the borrower was an "eligible recipient" of the PPP loan at the time it applied for the PPP loan. See also Defs. Ans., ¶ 5.

**Response:** Admit that "An eligible recipient shall be eligible for forgiveness of indebted"ess" is an accurate quote of the first part of the first sentence of section 1106(b) of the CARES Act and that PPP loan recipients must submit forgiveness applications to be considered for forgiveness. Otherwise disputed. Defendants object that the statement does not cite evidentiary material, in violation of LR 56.1(d)(2), and contains legal argument, in violation of LR 56.1(d)(4).

5. Despite clear direction from the CARES Act, the SBA adopted its first Interim Final Rule, effective April 15, 2020, which imposed its pre-COVID-19, pre-CARES Act exclusions on PPP loan eligibility (the "First IFR"). See 80 Fed. Reg. 20,811 (April 15, 2020).

**Response:** Disputed. Defendants object that the statement does not cite evidentiary material, in violation of LR 56.1(d)(2), and contains legal argument, in violation of LR 56.1(d)(4).

6. Although SBA published its intention to issue the First IFR on April 2, 2020, it expressly stated that the First IFR would not take effect until April 15, 2020. 80 Fed. Reg. 20,811 (April 15, 2020); Defs. Ans., ¶ 7.

**Response:** Admit that the First Interim Final Rule ("IFR") was published in the Federal Register on April 15, 2020, and that a copy of this IFR was also available on the SBA and Treasury websites on April 2, 2020. Otherwise disputed. Defendants object that the statement does not cite evidentiary material, in violation of LR 56.1(d)(2).

7. The SBA thereafter adopted multiple Interim Final Rules. The Sixth Interim Final Rule, the rule at issue in this case, had a posted effective date of May 4, 2020 (the "Sixth IFR"). 85 Fed. Reg. 26,324 (May 4, 2020). The Sixth IFR imposes restrictions on the amount of loans a single "corporate group" could receive in PPP loans, and it retroactively applied this requirement to all loans that had not been fully disbursed by April 30, 2020 (the "Corporate Group Limitation"). 85 Fed. Reg. 26,324 (May 4, 2020); Defs. Ans., ¶ 9.

**Response:** Admit that the Sixth IFR imposes restrictions on the amount of loans a single

3

"corporate group" could receive in PPP loans. Otherwise disputed. Defendants object that the statement does not cite evidentiary material, in violation of LR 56.1(d)(2), and contains legal argument, in violation of LR 56.1(d)(4).

8. The Corporate Group Limitation was solely formed by the SBA in the Sixth IFR. 85 Fed. Reg. 26,324 (May 4, 2020).

**Response:** Disputed. Defendants object that the statement does not cite evidentiary material, in violation of LR 56.1(d)(2), and contains legal argument, in violation of LR 56.1(d)(4).

9. After the SBA enacted many of the Interim Final Rules, on March 11, 2021, Congress enacted the American Rescue Plan Act (the "Rescue Plan"). See Pub. L. No. 117-2, 135 Stat. 4 (Mar. 11, 2021). The Rescue Plan "expanded the eligibility for PPP loans to certain non- profit entities, and in doing so, it again expressly incorporated the limitations embodied in the SBA's regulations under 13 C.F.R. § 120.110," which is the pre-COVID-19, pre-CARES Act exclusions on eligibility. Nat'l Ass'n of Home Builders v. United States SBA, No. 20-11780, 2021 U.S. Dist. LEXIS 186548, at *32 (E.D. Mich. Sep. 28, 2021). "The disqualification enacted in the [Rescue Plan] was included in verbatim provisions of the PPP 'second-round' enabling statute. The inclusion of additional explicit constraints in the later enactments reinforces rather than contradicts the conclusion that such limitations deliberately were omitted by Congress when it authorized the first round of PPP." Id.; see also Defs. Ans., ¶ 12.

**Response:** Admit that Congress enacted the American Rescue Plan on March 11, 2021, and that Forest View accurately quotes from *Nat'l Ass'n of Home Builders v. United States SBA*, No. 20-11780, 2021 U.S. Dist. LEXIS 186548, at *32 (E.D. Mich. Sept. 28, 2021). Otherwise disputed, including Forest View's characterization of 13 C.F.R. § 120.110. Defendants object that the statement is not concise, in violation of LR 56.1(d)(1), does not cite evidentiary material, in violation of LR 56.1(d)(2), and contains legal argument, in violation of LR 56.1(d)(4).

10. The only maximum borrowing limit that Congress placed on loan amounts under both the PPP and the Rescue Plan was to limit loans to no more than $10,000,000 per single eligible borrower. CARES Act, § 1102(1)(E)(ii); 15 U.S.C. § 636(a)(36)(E)(ii). Congress never adopted a limitation for a maximum cap on "corporate groups." See id.

**Response:** Disputed. Defendants object that the statement does not cite evidentiary material, in violation of LR 56.1(d)(2), and contains legal argument, in violation of LR 56.1(d)(4).

11. Before promulgating any of the Interim Final Rules, the federal agencies responsible for implementing the PPP had touted the program as providing payroll assistance to any business

with fewer than 500 employees. See, e.g., SBA, Financial Assistance from the US SBA for Small Businesses and Non-Profits, (Mar. 31, 2020) ("Businesses . . . with 500 or fewer employees may apply."); U.S. Dep't of Treas., Small Business Paycheck Protection Program, (Mar. 31, 2020) ("All Small Businesses Eligible"); see also 15 U.S.C. § 636(a)(36)(D).

**Response:** Disputed. Forest View does not accurately describe the content of its cited sources or of 15 U.S.C. § 636(a)(36)(D).

12. The SBA is applying the Corporate Group Limitation in the Sixth IFR to refuse to forgive loans it granted to businesses that applied for a PPP loan in reliance on Congress's promise of loan forgiveness before the SBA adopted the Sixth IFR on May 4, 2020. See Defs. Ans., ¶ 14.

**Response:** Admit that SBA denied Forest View's forgiveness application based on the corporate group limitation in the Sixth IFR. Otherwise disputed. Defendants object that the statement does not cite evidentiary material, in violation of LR 56.1(d)(2), and contains legal argument, in violation of LR 56.1(d)(4).

### Plaintiff's PPP Loan and Forgiveness Applications and the SBA's Denial

13. Plaintiff is a Manager-Managed Limited Liability Company in Itasca, Illinois, providing skilled nursing, memory, respiratory, and rehabilitation services. See Plaintiff's Complaint ("Pl. Compl"), ¶¶ 20, 30, 31; Defs. Ans. ¶ 20, 30, 31; Administrative Record ("AR"), pp. 147–185.

**Response:** Admit that Forest View filed documents in the underlying appeal before SBA's Office of Hearings and Appeals ("OHA") supporting that Forest View is a business organized as a manager-managed Illinois limited liability company that runs a nursing and rehabilitation center in Itasca, Illinois. Otherwise disputed; the cited evidentiary material does not support the remaining allegations, and the defendants stated in their answer that they lack knowledge or information sufficient to form a belief as to the allegations in ¶¶ 30 and 31 of the complaint.

14. Plaintiff is not a holding or parent company, nor does it have a holding or parent company. AR, pp. 147–185.

**Response:** Disputed. The cited material from the administrative record consists of an affidavit and attached materials that do not support the statement. USA_147-USA_185. The defendants further object that Forest View fails to cite "specific references to the affidavits, parts of

5

the record, and other supporting materials" to support the statement, in violation of LR 56.1(a)(3).

15. At all times relevant, Plaintiff had the following ownership structure: Michael Blisko ("Blisko") individually owned 50%, and Gubin Enterprises Limited Partnership, LP ("Gubin Enterprises") owned 50%. See AR, pp. 105, 147–185, 1106.

**Response:** Admitted.

16. Gubin Enterprises is owned by several trusts, where the beneficial ownership rests with four individuals. Blisko has no ownership interest in Gubin Enterprises. AR, pp. 109–148.

**Response:** Disputed. The cited material from the administrative record consists of an affidavit and attached materials that do not support the statement. USA_109-USA_148. The defendants further object that Forest View fails to cite "specific references to the affidavits, parts of the record, and other supporting materials" to support the statement, in violation of LR 56.1(a)(3).

17. Plaintiff is managed by Blisko. AR, pp. 147.

**Response:** Admitted.

18. On or around April 6, 2020, in the face of financial hardship and challenging decisions, Plaintiff submitted a PPP Borrower Application to Fifth Third Bank, National Association (the "Lender") for a forgivable PPP loan in the amount of $1,069,818.00 to mitigate business losses and enable it to retain its employees through the economic downturn. AR, pp. 3– 6, 1100–1103, 1952–1955.

**Response:** Admit that Forest View submitted a PPP Application Form to Fifth Third Bank, National Association, for a PPP loan in the amount of $1,069,818.00. Otherwise disputed. The cited application was executed by Michael Blisko on April 13, 2020 (USA_0004), and the remaining allegations are unsupported by the cited documents.

19. Plaintiff was approved for a PPP loan by the Lender on or around May 1, 2020, when the SBA issued a Note to Plaintiff in the full amount of its requested $1,069,800.00. AR, p. 7. At the time of the approval, Plaintiff operated under the provision stated by Congress, which provided the loans were for all businesses that met the size requirements for small businesses. See CARES Act.

**Response:** Admit that Fifth Third Bank, National Association approved Forest View's application for a PPP loan. Otherwise disputed. The cited material does not support the remaining statements, and the Forest View executed the cited promissory note on May 18, 2020 (USA_0012).

6

The second sentence is unsupported by evidentiary material, in violation of LR 56.1(d)(2), constitutes legal argument, in violation of LR 56.1(d)(4), and mischaracterizes the CARES Act.

20. Loan proceeds were distributed to Plaintiff on or around May 18, 2020. AR, pp.

**Response:** Admitted.

21. Plaintiff used its loan proceeds to meet payroll and other expenses permitted by the CARES Act. *See* AR, pp. 1697–1701. Plaintiff used at least 60 percent of the loan proceeds for payroll. *See id.* While it experienced various operational challenges caused by the pandemic, Plaintiff could retain its employees at the same payroll with the assistance of the PPP loan. Plaintiff did not reduce its employees' wages or terminate any of its employees because of the PPP loan. *See id.*

**Response:** Admit that Forest View represented that it used at least 60 percent of the loan proceeds to meet payroll expenses. Otherwise disputed. The defendants object that Forest View fails to cite "specific references to the affidavits, parts of the record, and other supporting materials" to support the statement, in violation of LR 56.1(a)(3). Additionally, the phrase "permitted by the CARES Act" is undefined and the remaining statements are unsupported by the cited documents. Forest View's PPP Loan Forgiveness Application shows that it had 119 employees at the time of its loan application (USA_1952) but only 61 employees at the time of its forgiveness application (USA_1956).

22. On or around January 27, 2021, as permitted under the CARES Act, Plaintiff submitted a PPP Loan Forgiveness Application (Form 3508) to the Lender, requesting forgiveness for its full PPP loan amount. AR, pp. 1956–1960.

**Response:** Admit that Forest View submitted a PPP Loan Forgiveness Application (Form 3508) to request forgiveness in the amount of $1,069,800.00 (USA_0956) on January 27, 2021 (USA_1957). Otherwise disputed; the cited material does not support the remaining statements.

23. The Lender determined that Plaintiff should receive full loan forgiveness of $1,069,800.00 and submitted its decision to the SBA. *See* AR, pp. 1–2, 14–16, 231–235, 1961–1963, 1970–1971.

**Response:** Admitted.

24. On November 29, 2021, the SBA issued a PPP Loan Review Decision (the "First Loan Review Decision"), finding Plaintiff eligible for partial forgiveness of its PPP loan in the

7

amount of $1,007,592.00, stating that the SBA had "recalculated [Plaintiff]'s maximum eligible loan amount and [] limited forgiveness to this eligible amount." AR, pp. 14–16, 233–235, 1961– 1963.

**Response:** Admitted.

25. Plaintiff did not appeal the SBA's First Loan Review Decision. Pl. Compl., ¶ 46; Defs. Ans., ¶ 46.

**Response:** Admitted.

26. On or around December 3, 2021, Plaintiff requested information from the Lender on how to begin repaying the portion of its PPP loan that was not forgiven. AR, p. 1965.

**Response:** Defendants object that the statement and cited document cannot be considered in reviewing the OHA decision under the APA. In particular, as explained in the defendants' summary judgment memorandum and response, Forest View failed to properly appeal any SBA debt collection decision and include the cited document(s) in the OHA administrative record in accordance with OHA's required process in 13 C.F.R. Parts 134, 140. Instead, Forest View attached the cited document to an untimely and otherwise improper motion to compel.

Subject to and without waiving this objection, admit that on December 3, 2021, Israel Vargas of Infinityhcm.com asked Patrick Smith of Fifth Third Bank, "Attached Forest View SBA decision, how to we start the process of paying this difference? [sic.]," and received no response. Otherwise disputed on the basis that the cited document does not support the statement.

27. Thereafter, on or around January 17, 2023, Plaintiff again sought confirmation from the Lender whether the unforgiven portion of Plaintiff's PPP loan had been debited from its accounts. AR, p. 1965.

**Response:** Defendants incorporate herein their objection to paragraph 26. Subject to and without waiving the objection, admit that on January 17, 2023, Israel Vargas of Infinityhcm.com asked Patrick Smith of Fifth Third Bank, "[W]as this balance debited from our accounts? Can you let me know when and from which account?" Otherwise disputed on the basis that the cited document does not support the statement.

28. On or around January 18, 2023, the Lender reached out to Plaintiff, stating that it

"was under the impression [Plaintiff's] loan had been fully denied, so perhaps there was miscommunication from the SBA to our operations group. I do not see any balance debited on this loan, but will determine best course of action in the interim. Stay tuned." AR, p. 1965.

**Response:** Defendants incorporate herein their objection to paragraph 26. Subject to and without waiving the objection, admit that Patrick Smith stated that *he* (not Fifth Third Bank) "was under the impression" that Forest View's loan "had been fully denied, adding "perhaps there was miscommunication from the SBA to our operations group. I do not see any balance debited on this loan, but will determine best course of action in the interim. Stay tuned." Otherwise disputed on the basis that the cited document does not support the statement.

29. On or around January 23, 2023, the Lender reached out to Plaintiff and stated, "[w]e followed-up with the SBA and they need to look into it further. The only determination we received was for partial forgiveness, though the SBA's system shows a Not Approved Decision— so it is unclear what the final decision was. I will let you know as soon as we hear anything in response." AR, p. 1964.

**Response:** Defendants incorporate herein their objection to paragraph 26. Subject to and without waiving the objection, admit that Patrick Smith (not Fifth Third Bank) made the quoted statement. Otherwise disputed on the basis that the cited document does not support the statement.

30. On or around May 31, 2023, Plaintiff again attempted to confirm with the Lender whether the unforgiven portion of Plaintiff's PPP loan had been debited from its accounts. AR, pp. 1967–1968.

**Response:** Defendants incorporate herein their objection to paragraph 26 above. Subject to and without waiving the objection, disputed; the cited documents do not support the statement. The document shows that on May 31, 2023, Zach Simpson of Infinity Health Care Consultants (not Forest View) attempted to confirm whether a $62,208 payment was made.

31. On or about June 3, 2023, over 18 months after the SBA issued the First Loan Review Decision, partially forgiving Plaintiff's PPP loan in the amount of $1,007,592.00, the SBA issued another PPP loan review decision, finding Plaintiff ineligible for PPP loan forgiveness (the "Final Loan Review Decision"), stating that Plaintiff was "part of a corporate group" that "received more than $20,000,000.00 of PPP loans in the aggregate" based on the Sixth IFR and the Corporate Group Limitation. AR, pp. 1–2, 231–232, 1970–1971

**Response:** Admit that on June 3, 2023, SBA issued a PPP loan review decision concluding

that Forest View was "part of a corporate group" that "has received more than $20,000,000 of PPP loans in the aggregate," that Forest View's loan was "one of the loans funded after the maximum allowable amount was exceeded," and that "forgiveness in the amount of $0.00 is appropriate."

32. The Final Loan Review Decision states "that the corporate group of Moishe Gubin and Michael Blisko exceeded the limitation for PPP loan funds to a single corporate group," but does not provide any basis for this analysis nor does the Final Loan Review Decision identify the common parent of this corporate group. AR, pp. 1–2, 231–232, 1970–1971.

**Response:** Admit that paragraph 32 accurately quotes part of the final loan review decision. Otherwise disputed. Forest View mischaracterizes the final loan review decision, and SBA and its OHA identified a partnership between Blisko and Gubin Enterprises Limited Partnership as the common parent and thoroughly explained the reasoning for the finding. *E.g.*, USA_2019-USA_2033.

33. On July 3, 2023, Plaintiff timely submitted an appeal of the Final Loan Review Decision with the SBA's Office of Hearings and Appeals (the "OHA"). AR, pp. 90–106. In its appeal with the OHA, Plaintiff argued that the SBA previously forgave Plaintiff's PPP loan eighteen months prior, the Sixth IFR cannot be retroactively applied to Plaintiff's loan, the Sixth IFR exceeds the scope of the SBA's authority, and that Plaintiff is not part of a "corporate group" (the "Appeal") *Id*.

**Response:** Admitted.

34. During the pendency of Plaintiff's OHA Appeal, Transworld Systems, Inc. ("TSI"), a third-party collection agency acting on behalf of or in connection with the Department of Treasury, notified Plaintiff that its PPP loan was placed with TSI (the "Notice"). AR, pp. 1975– 1977.

**Response:** Defendants incorporate herein their objection to paragraph 26 above. Subject to and without waiving the objection, the defendants admit that TSI acted on behalf of the U.S. Department of Treasury and sent notices to Forest View. Otherwise disputed. SBA notified Forest View about potential collections by the U.S. Department of Treasury in January 2023, and the U.S. Department of Treasury, Bureau of Fiscal Service, began notifying Forest View about collections activity relating to its PPP loan debt after Forest View's deadline to appeal the debt collection to OHA expired, *e.g.* USA_1977-80, 13 C.F.R. § 140.3(e)(1), and before OHA filed its July 2023 appeal petition appealing SBA's final loan review decision with OHA. Moreover, the cited "Notice" does

not state that Forest View's "PPP loan was placed with TSI."

35. The Notice stated that TSI was collecting specifically for SBA's account number 6431697306—Plaintiff's PPP loan number, see AR, pp. 1–2—which had a total amount due and owing of $1,069,800.00 as of March 28, 2023, more than two months before the SBA issued the Final Loan Review Decision. AR, pp. 1975–1977; see also AR, pp. 1–2, 231–232, 1970–1971.

**Response:** Defendants incorporate herein their objection to paragraph 26 above. Subject to and without waiving the objection, admit that TSI engaged in collections activity relating to Forest View's PPP loan debt. Otherwise disputed. Forest View does not accurately characterize the cited "Notice." USA_1975-USA_1977.

36. The Notice further stated that Plaintiff's PPP loan had a balance of $285,735.55 remaining for collection. AR, pp. 1975–1977.

**Response:** Defendants incorporate herein their objection to paragraph 26 above. Subject to and without waiving the objection, admit that the Notice stated, "Currently we have a balance of $285,735.55 in regards to the US Department of Treasury." USA_1975. Otherwise disputed.

37. TSI actively recouped payments from Plaintiff's Medicare Vouchers under the Federal Payment Levy Program, collecting $892,429.46 between April 2023 and August 2023. AR, pp. 1975–1980.

**Response:** Defendants incorporate herein their objection to paragraph 26 above. Subject to and without waiving the objection, admit that TSI collected amounts from Forest View. Otherwise disputed; the cited documents do not support the statement and make no mention of Forest View's Medicare vouchers or the Federal Payment Levy Program.

38. On or around September 7, 2023, Plaintiff filed a motion requesting the OHA enter an Order compelling the SBA to reimburse Plaintiff for all amounts improperly recouped on the PPP loan, to reimburse Plaintiff for interest, and prohibit the SBA from further collecting on the PPP loan during the pendency of the Appeal. AR, pp. 1944–1951.

**Response:** Admitted.

39. On or around October 16, 2023, the OHA denied Plaintiff's Appeal (the "Decision"). AR, pp. 2019–2033.

**Response:** Admitted.

11

40. In the Decision, the OHA found that Blisko and Gubin Enterprises "constitute a partnership and are such part of a corporate group" that obtained loans exceeding $20,000,000.00 but did not identify a common parent. AR, pp. 2019–2033.

**Response:** Admit that the defendants accurately quote part of the OHA decision. Otherwise disputed. The OHA decision affirmed SBA's determination that the common parent was a partnership between Michael Blisko and Gubin Enterprises Limited Partnership and rejected Forest View's contention that a partnership cannot qualify as a "common parent" for purposes of the Corporate Group Rule. *E.g.*, USA_2030-31.

41. The OHA further found that the Sixth IFR was not retroactively applied to Plaintiff because Plaintiff signed a promissory note for its PPP loan "14 days after the publication and immediate implementation of the [Sixth IFR] on May 4, 2020." AR, pp. 2031.

**Response:** Admitted.

42. The OHA also determined that Plaintiff's motion compelling the reimbursement of funds improperly recouped from Plaintiff was now moot, given the ultimate denial of Plaintiff's Appeal. AR, p. 2032.

**Response:** Admitted.

43. The OHA's Decision became final on November 15, 2023, thirty days after the OHA published its Decision. AR, p. 2033.

**Response:** Admit that OHA's decision affirming SBA's final loan review decision became final on November 15, 2023. Disputed to the extent that Forest View contends that OHA issued any final decision on any debt collection appeal, which must conform with 13 C.F.R. §§ 134.226(b), 134.227(b)(1).

    Respectfully submitted,

    MORRIS PASQUAL
    Acting United States Attorney

    By: s/ Jordan A. Rosen
        JORDAN A. ROSEN
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-5331
        jordan.rosen@usdoj.gov