UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FOREST VIEW REHABILITATION AND NURSING CENTER, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 24 C 1490 |
| THE UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the Small Business Administration; JANET YELLEN, in her official capacity as the United States Secretary of Treasury; and THE UNITED STATES OF AMERICA, | ) ) ) ) ) ) ) ) ) ) | Judge Alexakis |
| Defendants. | ) | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Table of Contents**

Introduction ................................................................................................................1

Argument ...................................................................................................................2

I.   Forest View's Statutory-Authority Argument Lacks Merit (Count II) ...........................2

   A.  The CARES Act Did Not Preclude SBA from Adopting the Corporate Group Rule .........2

   B.  Congress Ratified SBA's Reading of the CARES Act in the Corporate Group Rule ..........6

II.  Forest View Fails to Show that the OHA Decision Violated the APA .............................7

   A.  OHA Did Not Misapply the Corporate Group Rule Retroactively (Count I) ....................8

   B.  SBA's Finding of a Corporate Group Was Not Arbitrary and Capricious (Count III) .......10

   C.  Estoppel Did Not Prohibit SBA from Applying the Corporate Group Rule .....................14

   D.  OHA Complied with the APA in Denying Forest View's Motion to Compel (Count IV) .15

III. Forest View Is Not Entitled to the Relief It Seeks ...........................................................18

Conclusion ................................................................................................................20

## Table of Authorities

**Cases**

*Alabama v. North Carolina*, 560 U.S. 330 (2010) .......................................................... 19

*Aqua Prod., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) ............................................ 10

*Arizona v. Tohono O'odham Nation*, 818 F.3d 549 (9th Cir. 2016) ................................ 11

*Arnett v. C.I.R.*, 473 F.3d 790 (7th Cir. 2007) ................................................................. 12

*Barnhart v. Peabody Coal Co.*, 537 U.S. 149 (2003) ........................................................ 6

*Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002) ................................................ 19

*Biestek v. Berryhill*, 587 U.S. 97 (2019) ................................................................... 10, 14

*Borden v. United States*, 593 U.S. 420 (2021) ................................................................... 4

*Bredemeier v. McDonough*, 2024 WL 1050236 (N.D. Ill. Mar. 11, 2024) ................ 8, 9, 12

*Bruckner Truck Sales v. Guzman*, 2023 WL 8606761 (N.D. Tex. Dec. 2023) ................. 7

*Butler v. Principi*, 244 F.3d 1337 (Fed. Cir. 2001) ......................................................... 17

*Calcutt v. FDIC*, 598 U.S. 623 (2023) ............................................................................ 18

*Cent. States Se. and Sw. Areas Pension Fund v. Bellmont Trucking Co., Inc.,* 788 F.2d 428 (7th Cir. 1986) .............................................................................................................................. 19

*Cent. States, Se. & Sw. Areas Pension Fund v. Johnson*, 991 F.2d 387 (7th Cir. 1993) ............. 13

*Connors v. Ryan's Coal Co.*, 923 F.2d 1461 (11th Cir. 1991) ........................................ 13

*Cook v. Ball*, 144 F.2d 423 (7th Cir. 1944) ..................................................................... 15

*Deese v. Esper*, 483 F. Supp. 3d 290 (D. Md. 2020) ....................................................... 10

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024) .................... 18

*Dep't of Hous. & Urb. Dev. v. Rucker*, 535 U.S. 125 (2002) ............................................ 7

*Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125 (2002) ...................................... 11

*Dep't of the Army v. Blue Fox*, 525 U.S. 255 (1999) ....................................................... 20

ii

*Duarte v. Mayorkas*, 27 F.4th 1044 (5th Cir. 2022) ................................................................ 7

*Expedient Servs., Inc. v. Weaver*, 614 F.2d 56 (5th Cir. 1980)................................................ 19

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) .................................................................. 7

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ............................................................................... 3

*Holland v. Pardee Coal Co.*, 269 F.3d 424 (4th Cir. 2001).......................................................... 6

*Hosh. v. Lucero*, 680 F.3d 375 (4th Cir. 2012) ........................................................................... 6

*In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239 (11th Cir. 2020) ................................ 5

*In re Williams*, 330 F.3d 277 (4th Cir. 2003).............................................................................. 6

*Isley v. Isley*, No. 23 C 1720, 2023 WL 5431498 (N.D. Ill. Aug. 23, 2023) ............................... 13

*J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383 (4th Cir. 1990)........................................................ 19

*Jets Servs., Inc. v. Hoffman*, 420 F. Supp. 1300 (M.D. Fla. 1976) ............................................ 19

*Kennedy v. United States*, 965 F.2d 413 (7th Cir. 1992) ........................................................... 15

*Kisor v. Wilkie*, 588 U.S. 558 (2019) ................................................................................. 10, 12

*Little v. United States*, 489 F. Supp. 1012 (C.D. Ill. 1980)........................................................ 19

*Loper Bright*, 144 S.Ct. 2244 (2024) ....................................................................................... 10

*Lorillard v. Pons*, 434 U.S. 575 (1978) ...................................................................................... 7

*Mar v. Kleppe*, 520 F.2d 867 (10th Cir. 1975) ......................................................................... 19

*N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512 (1982)................................................................... 7

*Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers*, 75 F.4th 743 (7th Cir. 2023) ................... 7

*Negusie v. Holder*, 555 U.S. 511 (2009).................................................................................... 18

*Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414 (1990).............................................................. 15

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1 (D.D.C. 2006).......................................................................................................................................... 18

*Pfizer, Inc. v. United States*, 149 Fed. Cl. 711 (2020) ............................................................... 17

*Pharaohs GC, Inc. v. SBA*, 990 F.3d 217 (2d Cir. 2021) ........................................................ 5

*Pine Tree Med. Assocs. v. Sec'y of Health & Human Servs.*, 127 F.3d 118 (1st Cir. 1997) .......... 8

*Romeo v. United States*, 462 F.2d 1036 (5th Cir. 1972) ........................................................ 19

*Seidmon v. Harris*, 526 N.E.2d 543 (Ill. App. Ct. 1988) ....................................................... 13

*Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87 (1995) .......................................................... 12

*Shays v. Fed. Election Comm'n*, 528 F.3d 914 (D.C. Cir. 2008)................................................ 12

*Smith v. Garland*, 103 F.4th 1244 (7th Cir. 2024)............................................................... 10

*Stilwell v. Office of Thrift Supervision*, 569 F.3d 514 (D.C. Cir. 2009) ...................................... 12

*Talevski by next friend Talevski v. Health & Hosp. Corp. of Marion Cty.,* 6 F.4th 713 (7th Cir.
   2021).......................................................................................................................... 3

*Team Waste Gulf Coast, LLC v. United States*, 135 Fed. Cl. 683 (Fed. Cl. 2018) ................ 12, 16

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994).......................................................... 10

*Tommolillo v. Columbia Bank*, 2024 WL 1328186 (D.N.J. Mar. 28, 2024) ................................ 19

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.,*
   10 F.4th 869 (D.C. Cir. 2021) ........................................................................................ 6

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.,*
   40 F.4th 646 (D.C. Cir. 2022) ........................................................................................ 6

*Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052 (1st Cir. 1987)...................................... 20

*United States ex rel. Schroeder v. Hutchinson Reg'l Med. Ctr.*, 2024 WL 4298655 (D.Ka. Sept.
   26, 2024).................................................................................................................. *10*

*United States v. Boler*, 115 F.4th 316 (4th Cir. 2024) ................................................................ 10

*United States v. Bond*, 762 F.3d 255 (2d Cir. 2014).................................................................. 18

*United States v. Fowler*, 913 F.2d 1382 (9th Cir. 1990)............................................................ 15

*United States v. Hook*, 471 F.3d 766 (7th Cir. 2006)................................................................ 12

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952)............................................ 16

*United States v. Ponle*, 110 F.4th 958 (7th Cir. 2024)............................................................... 10

*Valley Constr. Co. v. Marsh*, 714 F.2d 26 (5th Cir. 1983) ......................................................... 19

*Vanda Pharms., Inc. v. Food & Drug Admin.*, 436 F. Supp. 3d 256 (D.D.C. 2020) ................... 13

*Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661 (5th Cir. 2007) .................................................. 18

*Webb v. United States*, 66 F.3d 691 (4th Cir. 1995) .................................................................. 18

*Wolfe v. Agro*, 163 N.E.3d 913 (Ind. Ct. App. 2021) ................................................................ 13

**Statutes**

5 U.S.C. § 702 .......................................................................................................................... 15

15 U.S.C. § 634 ................................................................................................................... *passim*

15 U.S.C. § 636 ................................................................................................................... *passim*

15 U.S.C. 9012 ....................................................................................................................... **2, 6**

805 ILCS § 206/202 ................................................................................................................ 13

**Regulations**

13 C.F.R. § 140.3 ................................................................................................................ 16, 17

13 C.F.R. § 121.302 .................................................................................................................. 9

13 C.F.R. § 134.1201 .......................................................................................................... 16, 18

13 C.F.R. § 134.1202 ............................................................................................................... 15

13 C.F.R. § 134.1207 ............................................................................................................... 17

13 C.F.R. § 134.1211 ............................................................................................................... 18

13 C.F.R. § 134.203 ................................................................................................................ 16

13 C.F.R. § 134.205 ................................................................................................................ 17

85 Fed. Reg. 26,325 .......................................................................................................... 2, 4, 11

85 Fed. Reg. 26,324 ........................................................................................................ 2, 4, 8, 9

85 Fed. Reg. 30,010 .................................................................................................................. 9

**Introduction**

Plaintiff Forest View's opposition and reply, Dkt. 51 ("Opp."), fails to rehabilitate its APA challenges to SBA's adoption of the Corporate Group Rule and to OHA's 2023 final decision.[1]

Forest View's argument that SBA lacked statutory authority to adopt the Corporate Group Rule fails to account for the ordinary meaning of 15 U.S.C. § 636(a)(36). Subparagraph (E) of that subsection sets a "maximum" amount for each PPP loan equal to the lesser of the borrower's payroll-based costs or $10 million—not an *entitlement* to that maximum, as Forest View contends. Moreover, Forest View's argument that subparagraph (D) required SBA to authorize a PPP loan up to that maximum amount to "any" size-compliant business, regardless of its membership in a corporate group, ignores the text and context of that subparagraph and conflates the distinct concepts of loan eligibility and loan amount. Thus, neither subparagraph precluded SBA from adopting the Rule. In any event, Congress ratified the Rule via the Economic Aid Act, which addressed maximum PPP loan amounts without altering the Rule, including its $20 million limit.

Forest View's alternative contentions that OHA's 2023 final decision violated the APA also lack merit. *First*, Forest View mischaracterizes SBA's *prospective* application of the Corporate Group Rule in denying loan forgiveness as a *retroactive* application. *Second*, Forest View's assertions that SBA erred in finding that it belonged to a *de facto* partnership for the narrow purposes of SBA's application of the Rule disregard established partnership law principles and the substantial evidence supporting that finding. *Third*, Forest View did not allege an estoppel claim in the complaint or before OHA and cannot satisfy estoppel elements in any event. *Fourth*, Forest View fails to show that OHA erred in denying its motion to compel. *Fifth*, Forest View seeks relief that is barred by 15 U.S.C. § 634(b)(1) or improper under well-settled APA principles.

---

[1] This reply uses specialized terms defined in the defendants' opening memorandum, Dkt. 40 ("Mem."), and, unless otherwise noted, omits internal citations and quotation marks.

## Argument

### I.     Forest View's Statutory-Authority Argument Lacks Merit (Count II).

SBA had ample discretion to adopt the Corporate Group Rule under the CARES Act and pre-existing authorities governing the § 7(a) loan program under the Small Business Act.  Mem. at 7-13 (discussing 15 U.S.C. §§ 636(a)(36)(B) and (E), 9012, 634(b)(7)).  The Rule, in part, limits to $20 million the amount of "first draw" PPP loans that a corporate group may receive.  85 Fed. Reg. 26,324, 26,325 (May 4, 2020).  That limit rested on SBA's determination that "the previous lapse of PPP appropriations and the high demand for PPP loans" made it necessary to limit the aggregate amount in PPP loans available to borrowers forming a corporate group to "preserve the limited resources available to the PPP program."  *Id.*  SBA found that the $20 million "limit"—double the maximum available to an individual borrower, § 636(a)(36)(E)—struck "an appropriate balance between broad availability of PPP loans and program resource constraints."  *Id.*

#### A.     The CARES Act Did Not Preclude SBA from Adopting the Corporate Group Rule.

Forest View concedes that SBA "would have been warranted" in adopting a regulation like the Corporate Group Rule under 15 U.S.C. § 634(b)(7) of the Small Business Act for § 7(a) loans other than PPP loans.  Opp. at 7.  But Forest View contends that the CARES Act precluded SBA from adopting the Corporate Group Rule under that statutory provision or any other authority when it purportedly mandated that "any" PPP borrower "shall be eligible," § 636(a)(36)(D), for an SBA-guaranteed PPP loan equal to the "maximum loan amount" specified in § 636(a)(36)(E), regardless of the borrower's membership in a corporate group or program resource constraints.  Opp. at 2-8; Dkt. 28-2 at 8-9.  That contention distorts subparagraphs (D) and (E) by ignoring key text, yanking terms from their context, and mischaracterizing the $20 million loan limit as determining a borrower's eligibility to participate in the PPP altogether.

*First*, Forest View misreads subparagraph (E)—which provides that the "*maximum* [PPP]

2

loan amount shall be *the lesser of*" (emphases added) the borrower's payroll-based amount or $10 million—as *entitling* borrowers to that maximum PPP loan amount. Opp. at 5-8. But subparagraph (E) sets only the "maximum" amount for a PPP loan, not the minimum. As Forest View concedes, "maximum" means "the highest value or extreme limit." *Id*. at 6. Subparagraph (E) thus cannot be understood as conferring an *entitlement* on a borrower to receive a PPP loan at the "extreme limit" authorized by statute. Mem. at 9-10.

Moreover, the Supreme Court has held in analogous contexts that for a statute to confer an entitlement, it must contain "rights-creating" language "phrased with an unmistakable focus on the benefited class," and provisions concerning agencies' "distribution of public funds" lacking such language do not confer entitlements. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 287, 290 (2002); *see also Talevski by next friend Talevski v. Health & Hosp. Corp. of Marion Cty.*, 6 F.4th 713, 718 (7th Cir. 2021). Forest View does not dispute that there is no such rights-creating language entitling borrowers to receive the maximum loan amount in subparagraph (E), which provides a directive about SBA' distribution of public funds under the PPP. Mem. at 11-12; Opp. at 2-8.

Forest View asserts that SBA's reading of subparagraph (E) would absurdly *require* SBA to approve "less than" the maximum loan amount. *Id*. at 6. But that misapprehends SBA's position: the plain text of subparagraph (E) authorizes SBA to guarantee loans *up to* the "maximum loan amount;" it does not require SBA to authorize less. Mem. at 9-10.

Forest View next contends that subparagraph (E) cannot, despite its text, set a "maximum" loan amount because a "maximum" refers to just one "highest value or extreme limit" while subparagraph (E) refers to two different amounts: "the payroll-based amount and $10,000,000.00." Opp. at 6. But that argument disregards key statutory text. Each borrower is subject to only one

3

maximum loan amount: "the lesser of" the payroll-based amount *or* $10 million.[2] § 636(a)(36)(E) (emphasis added). Forest View asks the court to omit the word "maximum" from the statute, but Forest View cannot "delete inconvenient language" to force a statute to yield to its "preferred meaning." *Borden v. United States*, 593 U.S. 420, 436 (2021) (plurality op.).

*Second*, Forest View misconstrues § 636(a)(36)(D)—which states that "any" size-compliant business concern "shall be eligible to receive a PPP loan"—as precluding SBA from adopting the Corporate Group Rule by setting the exclusive eligibility terms to participate in the PPP. Opp. at 4-5. That argument confuses the distinct concepts of *eligibility* to participate in the PPP altogether and the *limit* on the maximum loan amount a borrower can receive. Mem. at 10. The Rule repeatedly employs the terms "limit" and "limitation" in describing the $20 million PPP loan amount that certain groups of eligible businesses (corporate groups) may receive. 85 Fed. Reg. 26,324, 26,325. Indeed, the Rule clarifies the distinction between a loan limitation and eligibility to participate in the PPP at all at the outset: "SBA's affiliation rules, which relate to an applicant's *eligibility* for PPP loans, and any waiver of those rules under the CARES Act, continue to apply *independent* of" the "*limitation*" as to corporate groups. 85 Fed. Reg. at 26,325 (emphasis added).

Forest View protests that SBA's final PPP loan review decision found that Forest View was "ineligible" to receive a loan, Opp. at 5, but that decision did *not* find that Forest View was entirely ineligible to participate in the PPP, which is a matter at issue in § 636(a)(36)(D). Instead, SBA made only the limited finding that Forest View itself could not receive a loan since its corporate group exceeded the $20 million loan limit. Forest View does not dispute that it could

---

[2] Forest View's awkward analogy to the adage "the lesser of two evils" adds nothing to its argument. Even accepting that the phrase "the lesser of" indicates a situation where "one must choose between two . . . options," Opp. at 6 n.6, the crucial question is *what* those options are. Here, the options are two potential "*maximum* loan amount[s]," "the lesser of" which applies to each borrower. *Id.* § 636(a)(36)(E) (emphasis added).

have received PPP loan forgiveness had its corporate group *not* exceeded that limit, if all other requirements were satisfied. Moreover, PPP loans are made by private lenders, not SBA, and nothing in the CARES Act, including subparagraph (D), requires lenders to make loans they do not wish to make, much less loans of a specific amount. § 636(a)(36)(F)(ii), (iii), (P). While subparagraph (D) authorizes lenders to make—and subsection (B) provides that SBA "may" guarantee—PPP loans to certain business concerns if all other requirements are met, nothing in the CARES Act mandates that the "maximum loan amount" in subparagraph (E) be authorized or guaranteed for all borrowers.

In any event, even if the $20 million limit were read to preclude a borrower's eligibility to participate in the PPP altogether, Forest View's position that subparagraph (D) sets the exclusive PPP loan eligibility terms—thus precluding SBA from setting any other such terms—is irreconcilable with the CARES Act as a whole. As held in *Pharaohs GC, Inc. v. SBA*, 990 F.3d 217, 227-28 (2d Cir. 2021), and *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1256-58 (11th Cir. 2020), subparagraph (D), interpreted in its full statutory context, "must be understood as simply raising the employee threshold defining [PPP] eligibility" to "500," and "does not require" SBA to "make eligible *all* businesses below that threshold." *Pharaohs GC*, 990 F.3d at 227-28; *Gateway*, 983 F.3d at 1258. Forest View ignores the reasoning of those decisions, which properly rejected its position that subparagraph (D) makes a business concern's size the one and only requirement for PPP loan eligibility. Opp. at 8. Accordingly, Forest View fails to show that subparagraphs (D) and (E) precluded SBA from adopting the Corporate Group Rule.

Forest View's contention that SBA adopted the Corporate Group Rule without any reasoned explanation merely rehashes its meritless statutory-authority argument while pointing to no other alleged deficiencies in the agency's explanations. Dkt. 28-2 at 13; *see also* Mem. at 4-5, 12. Thus, this argument fails for reasons already explained.

5

Forest View's further argument that SBA adopted the Corporate Group Rule without following rulemaking requirements is absent from its complaint and opening brief and raised for the first time in its opposition and reply. *See generally* Compl.; Dkt. 28-2 at 13-14; Opp. at 12. Insofar as the argument is preserved, it is meritless. The CARES Act gave SBA express authority, in 15 U.S.C. § 9012, to adopt rules implementing the PPP without following APA notice-and-comment requirements, and the Rule was not procedurally invalid for being adopted more than 15 days after March 27, 2020. Instructions that an agency "'shall' act within a specified time, without more," are not "jurisdictional limit[s] precluding action later." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003); *Holland v. Pardee Coal Co*., 269 F.3d 424, 432 (4th Cir. 2001). Where a statute "does not specify a consequence for non-compliance with statutory timing provisions"— as is the case here—"the federal courts will not in the ordinary course impose their own coercive sanction." *Barnhart*, 537 U.S. at 159; *Hosh. v. Lucero*, 680 F.3d 375, 381 (4th Cir. 2012); *In re Williams*, 330 F.3d 277, 280 (4th Cir. 2003). Thus, issuing a rule after a deadline set by Congress "does not require vacating the rule." *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin*., 10 F.4th 869, 874 (D.C. Cir. 2021). Under *Barnhart*, a rulemaking deadline simply indicates "that the agency should move with dispatch," and the "ordinary remedy for tardiness" is an action to "compel agency action" that is "unreasonably delayed." *Id*. (citing 5 U.S.C. § 706(1)); *see also Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin*., 40 F.4th 646, 665-61 (D.C. Cir. 2022).

**B. Congress Ratified SBA's Reading of the CARES Act in the Corporate Group Rule.**

In any event, Congress ratified SBA's construction of the CARES Act in the Corporate Group Rule upon enacting the EAA, which added (among other amendments) new maximum loan amount calculations for farmers and ranchers and for second-draw PPP loans, both modeled on § 636(a)(36)(E), but left the terms of § 636(a)(36)(E) and the Rule "untouched." Mem. at 12-13.

Forest View responds that the EAA did not ratify SBA's construction because the statute did not reenact the entire CARES Act, but this reads the case law on ratification too narrowly. Opp. at 9-10.  Congress ratifies an agency's interpretation upon amending a law "without altering the text of" the relevant statutory provision.  *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009); *see also N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982) (courts require only that Congress has not altered the agency's "interpretation although it has amended the statute in other respects."); *Bruckner Truck Sales v. Guzman*, 2023 WL 8606761, at *5 (N.D. Tex. Dec. 2023) (Congress ratified SBA's position that it may re-examine borrower eligibility at the loan-forgiveness stage upon amending related terms of statute while leaving provisions at issue "completely untouched"), *appeal docketed*, No. 24-10377 (5th Cir. 2024).

Forest View's argument concerning the requirement for ratification of a *judicial consensus* is beside the point.  *See* Opp. at 10.  SBA officially published its interpretation of the CARES Act in the Corporate Group Rule, so the ratification inference is properly predicated on the EAA provisions addressing loan limits similar to those SBA interpreted in the Rule without modifying, let alone rejecting, the Rule.  *See*, *e.g.*, *Dep't of Hous. & Urb. Dev. v. Rucker*, 535 U.S. 125, 133 n.4 (2002) ("Congress, 'presumed to be aware'" of agency's "interpretation rejecting a knowledge requirement, made no other change to the statute") (quoting *Lorillard v. Pons*, 434 U.S. 575, 580 (1978)); *Duarte v. Mayorkas*, 27 F.4th 1044, 1059 (5th Cir. 2022).  If SBA "was wrong in that interpretation, we have no evidence that Congress has taken any action expressing disagreement." *Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers*, 75 F.4th 743, 752 (7th Cir. 2023).

## II.  Forest View Fails to Show that the OHA Decision Violated the APA.

Forest View also fails to rehabilitate its alternative arguments that OHA's final decision violated the APA by (A) applying the Corporate Group Rule retroactively; (B) finding Forest View

to be part of a corporate group; (C) failing to estop SBA from applying the Rule in denying loan forgiveness; and (D) denying Forest View's motion to compel challenging collection proceedings.

**A. OHA Did Not Misapply the Corporate Group Rule Retroactively (Count I).**

SBA did not deny Forest View loan forgiveness based on a retroactive application of the Corporate Group Rule. Mem. at 13-16. Rather, SBA *prospectively* applied the Rule to PPP loans that had "not yet been fully disbursed as of April 30, 2020," 85 Fed. Reg. 26,324, which included Forest View's loan that was disbursed on May 18, 2020, SOF ¶ 8. Forest View had not even executed the loan note, which set forth key loan terms, until that date. *Id.*

Forest View responds that SBA unlawfully denied loan forgiveness by retroactively imposing "new duties with respect to an already completed transaction." Opp. at 13. In particular, Forest View contends that after it submitted a completed PPP loan application, SBA adopted the Corporate Group Rule and then denied loan forgiveness based on Forest View's failure to comply with the Rule's requirement that a borrower withdraw or request cancellation of its application once its corporate group exceeded the $20 million limit. *Id.* That argument lacks merit.

Initially, Forest View's mere *application* filing did not create any vested right requiring SBA to review its PPP loan solely under the law in effect on the application date. Mem. at 13-14. Rather, the "mere filing of an application" is "not the kind of completed transaction in which a party could fairly expect stability of the relevant laws as of the transaction date." *Pine Tree Med. Assocs. v. Sec'y of Health & Human Servs.*, 127 F.3d 118, 121 (1st Cir. 1997). Forest View does not respond to this argument, Opp. at 13-15, and a "plaintiff who fails to respond to an argument raised on summary judgment waives her counterarguments and abandons her claim." *Bredemeier v. McDonough*, No. 21 C 6216, 2024 WL 1050236, at *13 (N.D. Ill. Mar. 11, 2024).

Moreover, SBA did not predicate its denial of loan forgiveness on Forest View's failure to withdraw or request cancellation of its application, as Forest View asserts. Opp. 13-14. Rather,

in the final loan review decision, SBA denied loan forgiveness because Forest View was "part of a corporate group that *received* more than \$20,000,000 of PPP loans in the aggregate." USA_0001 (emphasis added); SOF ¶ 23. That decision establishes that SBA adhered to the Rule's text stating that "businesses that are part of a single corporate event shall *in no event receive* more than \$20,000,000 of PPP loans in the aggregate," which prohibits borrowers from *receiving* a loan in excess of the \$20 million limit—regardless of whether the borrower withdraws or requests cancellation of an application. 85 Fed. Reg. 26,324 (emphasis added). Forest View does not dispute that the earliest it can be said to have completed the transactions to *receive* a loan was May 18, 2020, when it executed the note (and thus accepted key loan terms) and the lender disbursed the loan. That was two weeks *after* SBA adopted the Rule on May 4, 2020. Mem. at 14-15; Opp. at 13-14. Thus, SBA never applied any Rule requirement in the Rule that can be validly characterized as a "duty" tied to *any* completed transaction, let alone to the application filing.

Next, Forest View's response repeats the mischaracterizations of SBA's regulations in its summary judgment memorandum without addressing the defendants' counterarguments on these points, which results in waiver and abandonment. *Compare* Opp. at 13-14, *with* Dkt. 28-2 at 15-16; Mem. at 15-16; *Bredemeier*, 2024 WL 1050236, at *13. In any case, even if entertained, Forest View's arguments would fail because they rely on regulations concerning inapposite matters. Mem. at 15-16. The first regulation, 13 C.F.R. § 121.302(a), states that the "size of an applicant for SBA financial assistance is determined as of the date the application for financial assistance is accepted for processing by the SBA." But that regulation pertains to SBA size determinations, while the Corporate Group Rule concerns the separate matter of a \$20 million limit for loans that had "not yet been fully disbursed as of April 30, 2020." 85 Fed. Reg. 30,010; Mem. at 20-21. Meanwhile, the cited part of the second regulation, 85 Fed. Reg. 38304, concerns a borrower's

*eligibility* to participate in the PPP altogether, but the Rule imposes a *limit* on the loan amount that eligible borrowers in a single corporate group may receive. Mem. at 21; *supra* at 4-5.

Even if there were tension between the regulations and Rule, the proper course would be to follow the Rule's specific text concerning corporate groups, not more general provisions found elsewhere. *Deese v. Esper*, 483 F. Supp. 3d 290, 312 (D. Md. 2020); *see also Aqua Prod.*, *Inc. v. Matal*, 872 F.3d 1290, 1316 (Fed. Cir. 2017). And if there were genuine ambiguity (there is not), SBA's reading of its own regulations would be entitled to *Auer* deference because it falls "within the bounds of reasonable interpretation." *Kisor v. Wilkie*, 588 U.S. 558, 576 (2019); *see Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (reviewing court may not "decide which among several competing interpretations best serves the regulatory purpose").[3]

## B. SBA's Finding of a Corporate Group Was Not Arbitrary and Capricious (Count III).

The OHA decision complied with the APA in finding that Forest View, Parkshore, Oak Lawn, and at least 200 other businesses were each majority-owned by the Blisko-Gubin Enterprises partnership for purposes of the Corporate Group Rule and obtained PPP loans totaling over $41 million—in excess of the Rule's $20 million limit. That finding is entitled to "great deference," and Forest View fails to show that the finding was arbitrary and capricious or unsupported by substantial evidence. *Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (under the substantial evidence standard, "the

---

[3] Following *Loper Bright*, 144 S.Ct. 2244 (2024), courts have continued to grant agencies *Auer* deference, which "retains an important role in construing agency regulations," as the Supreme Court recently recognized in *Kisor*, 588 U.S. at 576. *E.g.*, *United States v. Ponle*, 110 F.4th 958, 961-62 (7th Cir. 2024) (applying *Auer* deference after *Loper Bright*); *United States v. Boler*, 115 F.4th 316, 322 n.4 (4th Cir. 2024) (same); *United States ex rel. Schroeder v. Hutchinson Reg'l Med. Ctr.*, 2024 WL 4298655, at *18 n.12 (D.Ka. Sept. 26, 2024) ("The court understands *Auer* deference—when agencies interpret their own regulations—to survive *Loper Bright*").

threshold for evidentiary sufficiency is not high" and instead "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

Forest View first contends that SBA erred in finding that a "common parent" under the Corporate Group Rule can include *de facto* partnerships, such as the one between Blisko and Gubin Enterprises, since the ordinary meaning of that term supposedly refers only to corporations. Opp. at 15-16. But that argument disregards that the Rule unambiguously applies to all "businesses," not just "corporations." 85 Fed. Reg. at 26,325. Forest View ignores the word "businesses" in the Rule and thus concedes that non-corporate businesses like partnerships fall within its regulatory sweep. SBA's position finds additional support in the *Merriam-Webster* dictionary, which defines a "parent" as a *business entity* superior to another, subsidiary business entity. Mem. at 20.

Forest View accuses SBA of construing "common parent" as a unique "term of art" in not limiting it to only corporations, Opp. at 15, but it is Forest View that imposes that limitation based on specialized, inapposite definitions, including those in the Federal Acquisition Regulation ("FAR") (under Title 48 of the United States Code) and a 1964 decision by the U.S. Tax Court interpreting now-superseded language from the Internal Revenue Code of 1954 (Title 26). Dkt. 28-2 at 18-19. Forest View also relies on the entry defining a "parent corporation" in the definition of a "corporation" in *Black's Law Dictionary*, but it is unsurprising that "parent *corporation*" refers only to corporations since that limitation is in the term itself. Opp. at 16 (emphasis added).

In contrast, the plain text of the Corporate Group Rule uses the general terms "parent" and "businesses," which are to be understood in a general sense. *See Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 557 n.4 (9th Cir. 2016) ("General words are to be understood in a general sense."); *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 131 (2002). Moreover, a central purpose of the Rule—broadening the availability of PPP loans to small businesses most in need while respecting program resource constraints—is served by not limiting "common parent" to

11

corporations and privileging specific business forms. Rather, applying the Rule to all businesses that may participate in the PPP ensures that fewer entities receive disproportionate PPP benefits. *See Arnett v. C.I.R.*, 473 F.3d 790, 795 (7th Cir. 2007) (defining term in regulation consistent with legislative purposes). Even if there were genuine ambiguity here, SBA's reading would be entitled to *Auer* deference for falling "within the bounds of reasonable interpretation." *Kisor*, 588 U.S. at 576; *supra* at 10 n.3. Forest View does not dispute that *Auer* deference applies here and thus waives any counterarguments. Opp. at 15-17; *Bredemeier*, 2024 WL 1050236, at *13.

Forest View's passing allegation that an APA violation occurred because the Corporate Group Rule does not further define the already-defined term "corporate group," such as by defining "common parent" and "majority owner" is also incorrect. *See* Opp. at 15. That argument should be rejected because it is absent from the complaint, *see generally* Compl.; fails under issue exhaustion principles because it is absent from the OHA appeal petition, SOF ¶ 24 (citing appeal petition at USA_0090-USA_0106), *Team Waste Gulf Coast, LLC v. United States*, 135 Fed. Cl. 683, 687-89 (Fed. Cl. 2018); and is forfeited as underdeveloped, *United States v. Hook*, 471 F.3d 766, 773 (7th Cir. 2006). But in any event, a regulation need be supported only by a "reasonable explanation" sufficient to satisfy the arbitrary-and-capricious standard, which just requires that the regulation "is reasonable and reasonably explained," *see Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 519 (D.C. Cir. 2009), and Forest View offers no precedent requiring agencies to define terms within terms, *ad infinitum*. To the contrary, the "APA does not require that all the specific applications of a rule evolve by further, more precise rules rather than by adjudication." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 96 (1995). Instead, an agency may "flesh out its rules through adjudications and advisory opinions." *Shays v. Fed. Election Comm'n*, 528 F.3d 914, 930 (D.C. Cir. 2008); *accord Vanda Pharms., Inc. v. Food & Drug Admin.*, 436 F. Supp. 3d

256, 270 (D.D.C. 2020). That happened here: OHA's decision provided additional reasoned explanations showing how the Corporate Group Rule applies to Forest View. SOF ¶ 30.

Forest View's position that SBA unjustifiably "imposed" a partnership relationship on Blisko and Gubin Enterprises disregards established partnership law principles. Opp. at 16-17. Based on the administrative record, SBA found that Blisko and Gubin Enterprises *themselves* formed a *de facto* partnership, for purposes of the Corporate Group Rule, by carrying on as co-owners of a business for profit. Mem. at 16-20. Under partnership law principles in both Illinois and Indiana—where 34 of the 61 Blisko-Gubin Enterprises business entities that received a PPP loan are located, Dkt. 42, ¶ 16—the question of "the existence of a partnership is a question of intent" to carry on in business together "based on all of the facts and circumstances." *Seidmon v. Harris*, 526 N.E.2d 543, 545 (Ill. App. Ct. 1988); *see also Wolfe v. Agro*, 163 N.E.3d 913, 922 (Ind. Ct. App. 2021) (the "conduct of the parties reveals their true intentions and the construction they placed upon their own agreement."). Importantly, a partnership may be formed "whether or not the persons intend to form a partnership." 805 ILCS 206/202(a); *accord Cent. States*, *Se. & Sw. Areas Pension Fund v. Johnson*, 991 F.2d 387, 392-94 (7th Cir. 1993) (applying *Connors v. Ryan's Coal Co.*, 923 F.2d 1461, 1467 (11th Cir. 1991), which found that whether a *de facto* partnership exists under federal common law hinges "upon consideration of all the facts").

SBA properly concluded, for purposes of denying the loan forgiveness application, that Blisko and Gubin Enterprises' arrangement constitutes a corporate group. *See Isley v. Isley*, No. 23 C 1720, 2023 WL 5431498, at *3 (N.D. Ill. Aug. 23, 2023). Forest View does not and cannot dispute the law or facts underlying the agency's finding of a *de facto* partnership. *See* Opp. at 15-17. Rather, Blisko and Gubin Enterprises' Moishe Gubin consistently dealt with one another as partners in their enterprise to co-own or manage at least 203 business entities—including 61 entities that received PPP loans, such as Forest View, Oak Lawn, and Parkshore. Dkt. 42, ¶¶ 14-

13

18. They also consistently held themselves out to the public as co-venturers in business. *Id.* ¶¶ 14-18. And, by selecting the LLC form for nearly all businesses in which they own a combined majority interest, Blisko and Gubin Enterprises each made capital contributions in anticipation of participating in the LLCs' profits and management. *Id.* ¶ 17. Thus, OHA's conclusion that Forest View was majority-owned, directly or indirectly, by the *de facto* partnership of both parties, which owned Forest View, is supported by such "relevant evidence as a reasonable mind might accept as adequate to support" that conclusion. *Biestek*, 587 U.S. at 103.

Additionally, Forest View is incorrect that SBA's corporate group finding undermined its right to choose its own corporate structure. *See id.* Neither SBA nor OHA made any finding at all about *Forest View*'s form. Rather, both found that Forest View and other business entities have a majority owner under the Corporate Group Rule—the Blisko-Gubin Enterprises partnership. There is no warrant for Forest View's speculation that, if this court were to uphold that finding under the APA, the result would undermine general use of the LLC form. Opp. at 16. Indeed, SBA's finding does not even affect *Forest View's* LLC form, let alone the form of any other business. Thus, the OHA decision complied with the APA in making its corporate group finding.

## C. Estoppel Did Not Prohibit SBA from Applying the Corporate Group Rule.

The OHA decision did not violate the APA in declining to estop SBA from denying loan forgiveness under the Corporate Group Rule. Mem. at 20-21. Initially, Forest View offers no response to multiple dispositive defenses—including that Forest View did not allege any estoppel claim in the complaint or exhaust the issue before OHA and cannot satisfy several estoppel elements—which results in waiver and abandonment. *Bredemeier*, 2024 WL 1050236, at *13. Forest View is wrong that these defenses concern its equitable but not its quasi-estoppel argument. Opp. at 19. Both arguments must be alleged in a complaint and exhausted. Moreover, the Supreme Court has "reversed every finding of estoppel" against the government it ever reviewed, *Off. of*

14

*Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422, 426-27 (1990), and "'claims for estoppel [against the government] cannot be entertained where public money is at stake,'" as is the case here, *United States v. Fowler*, 913 F.2d 1382 (9th Cir. 1990) (quoting *Richmond*, 496 U.S. 414)).

Forest View also fails to satisfy elements that both estoppel frameworks share. The government cannot be estopped under either framework where the plaintiff received a benefit it "should never have received in the first place." *Kennedy v. United States*, 965 F.2d 413, 418 (7th Cir. 1992); *Cook v. Ball*, 144 F.2d 423, 438 (7th Cir. 1944). Forest View argues that the defendants' "affirmative misconduct" defense concedes that SBA granted partial loan forgiveness based on inadvertent oversight, but the defendants never said that. Opp. at 17-18. Instead, they explained that Forest View cannot satisfy the "affirmative misconduct" estoppel element since the Corporate Group Rule required *Forest View*—not *SBA*—to report receiving a PPP loan in excess of the $20 million limit to its lender, and even if SBA erred, that would not amount to "affirmative misconduct," which requires more than mere inadvertent oversight. Mem. at 18. Forest View's choice to distort rather than respond to that argument warrants summary judgment.

### D. OHA Complied with the APA in Denying Forest View's Motion to Compel (Count IV).

The OHA decision did not violate the APA in denying Forest View's motion to compel SBA to reimburse amounts allegedly offset against its PPP loan debt under 13 C.F.R. § 134.1202(d). Mem. at 22-24; Compl. ¶¶ 64-65, 70, 75, 126. As explained, Forest View seeks only "money damages" for this claim, which are unavailable under the APA, 5 U.S.C. § 702, and the private lender never deferred loan payments under 15 U.S.C. § 636(a)(36)(M)(ii)(II), so SBA had no deferral to extend under 13 C.F.R. § 134.1202(d). Mem. at 22-24. Again, Forest View waives its positions and abandons its claim by offering no response to either of these dispositive defenses. *Bredemeier*, 2024 WL 1050236, at *13; Opp. at 20-21.

Forest View contests only the defendants' argument that OHA's denial of the motion to compel cannot have violated the APA since that motion violated OHA regulations. Opp. at 20-21. On this point, the defendants explained that Forest View needed but failed to file an OHA appeal petition challenging a debt collection, 13 C.F.R. § 134.203, within 15 days of receiving SBA's debt collection notice, § 140.3(e)(1). Mem. at 23-24. Forest View instead attempted to raise an untimely appeal by filing a motion to compel in an appeal process that reviews only final PPP loan review decisions. *See* § 134.1201(a) ("The rules of practice of this subpart apply to appeals to OHA from certain final SBA loan review decisions under the [PPP]"). Mem. at 23-24. Forest View concedes that summary judgment against it would ordinarily be required because it never complied with the pertinent OHA regulations. Opp. at 20-21. But Forest View argues that dismissal is improper here because SBA never issued to Forest View a notice that it proposed to collect debt under 13 C.F.R. § 140.3(a), which initiates the proper OHA appeal process. *Id.*

Forest View's excuse is belied by the fact that it is being raised only now—after the defendants explained to the court the proper OHA appeal process, but not before, even as the U.S. Department of Treasury began offsetting amounts against its debt. Mem. at 23. Moreover, OHA's denial of the motion to compel cannot have been arbitrary and capricious or unsupported by substantial evidence when, as the parties agree, Forest View violated OHA regulations in filing that motion and never argued to OHA that the violations must be excused since SBA did not send a § 140.3(a) notice. OHA could not have favored an argument and evidence that Forest View never presented. Forest View's choice to not present this issue to OHA also warrants rejection of its argument under issue-exhaustion principles. *See Team Waste*, 135 Fed. Cl. at 687-89; *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts.").

16

In any event, SBA issued the § 140.3(a) notice to Forest View, as shown by the declarations and documents attached here as Exhibits A and B, which include the notice itself.[4] That SBA issued the notice is also established by the "presumption of regularity," which provides that "public officers have properly discharged their official duties" unless the party seeking to rebut that presumption provides "clear evidence to the contrary." *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001) (applying presumption in rejecting argument that veteran did not timely appeal an administrative decision since he did not receive a notice of appeal rights mailing). It is further shown by the presumption of delivery. *Pfizer*, *Inc. v. United States*, 149 Fed. Cl. 711, 718 (2020).

Forest View's purported evidence to the contrary is just that the notice is absent from the administrative record *in this case*, Opp. at 20, but that resulted from Forest View's own errors, Mem. at 22-23. Forest View appealed only SBA's final PPP loan review decision—not any debt collection decision—in an appeal process that reviews only final PPP loan review decisions. *Id.* As a result, SBA and Forest View compiled the OHA administrative record using only "documents that SBA considered in making its final loan review decision or that were before SBA at the time of the final loan review decision"—not "all documents pertaining to the appellant," such as the § 140.3(a) notice. § 134.1207(b). By contrast, had Forest View appealed a debt collection, the § 140.3(a) notice would have been attached to the OHA appeal petition, § 134.204(a)(2); SBA would have prepared the administrative record using "the entire record on which" the debt collection "was based," including the notice itself, § 134.205(a); and such documents would have been in the administrative record in a district court lawsuit challenging a final OHA decision on a debt collection, *see Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448

---

[4]  The court may properly consider documents attached to a summary judgment reply that are responsive to arguments offered in a summary judgment opposition brief. *Gilliland v. Air Line Pilots Ass'n Int'l.*, 741 F. Supp. 2d 1334, 1346 n.13 (N.D. Ga. 2009).

F. Supp. 2d 1, 4 (D.D.C. 2006) (administrative record includes solely material "directly or indirectly considered" by the "decisionmaker(s)"). The notice is also absent from the administrative record because Forest View never claimed to SBA or OHA that SBA failed to issue the notice, so SBA had no reason to provide the notice in responding to the motion to compel.

### III.     Forest View Is Not Entitled to the Relief It Seeks.

Forest View's arguments are meritless, but even if Forest View were entitled to relief, the proper course would be to follow the "ordinary rule" for APA actions, *Negusie v. Holder*, 555 U.S. 511, 517 (2009), and "remand the matter" to SBA "for further consideration of" Forest View's loan-forgiveness application, *Calcutt v. FDIC*, 598 U.S. 623, 629 (2023) (per curiam). Forest View's effort to obtain a broader remedy is barred under 15 U.S.C. § 634(b)(1), which provides that no "injunction" or "similar process" "shall be issued against the [SBA] or [its] property."

Forest View protests that SBA waived its sovereign immunity against the relief sought in this action in adopting 13 C.F.R. §§ 134.1201(d), 134.1211(g). Opp. at 19-20. But that disregards sovereign-immunity principles, including that courts must not "extend [a] waiver beyond that which Congress intended," *Webb v. United States*, 66 F.3d 691, 693 (4th Cir. 1995), or purport to locate elsewhere "a waiver that is not clearly evident from the language of the statute," *see Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 49 (2024). Only "Congress can waive an executive agency's sovereign immunity." *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007); *see also United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 513 (1940); *United States v. Bond*, 762 F.3d 255, 263-64 (2d Cir. 2014). Moreover, the regulations Forest View cites only acknowledge that decisions by SBA's OHA are "final" decisions reviewable under the APA; they do not purport to waive the United States' sovereign immunity and could not waive SBA's sovereign immunity provided for by Congress via a statute.

Forest View is also incorrect to contend that § 634(b)(1) applies only to suits against

SBA's Administrator, but not SBA itself. Opp. at 20-22. Courts "have no jurisdiction to award injunctive relief against the SBA" under § 634(b)(1), which Congress enacted "to avoid potential interference and obstruction of the SBA's operations." *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990); *see Tommolillo v. Columbia Bank*, No. 23 C 3140, 2024 WL 1328186, at *8 (D.N.J. Mar. 28, 2024) (rejecting argument that § 634(b)(1) does not apply to SBA).

Forest View also errs in arguing that § 634(b)(1) permits limited injunctive relief. Cases supporting that notion run against the clear weight of authority on the reach of § 634(b)(1), and their reasoning does not comport with well-settled principles of statutory interpretation. *Id.*[5] The plain text of § 634(b)(1) unambiguously provides that "*no* attachment, injunction, garnishment or other similar process, mesne or final, shall be issued" while carving out no exceptions. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 462 (2002) ("When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete" and "parties should not seek to amend the statute by appeal to the Judicial Branch"); *Alabama v. North Carolina*, 560 U.S. 330, 352 (2010) ("We do not—we cannot—add provisions to a federal statute"); *Cent. States Se. and Sw. Areas Pension Fund v. Bellmont Trucking Co., Inc.*, 788 F.2d 428, 433 (7th Cir. 1986) ("we are bound by the particular rules enacted by Congress and are not free to carve out our own exceptions merely because we believe they would not undermine Congress' goals"). These principles carry extra force here because the waiver of sovereign immunity in § 634(b)(1) must also be "strictly construed, in terms of its scope, in favor of the

---

[5] *See also*, *e.g.*, *J.C. Driskill*, 901 F.2d at 386 (injunctive relief against SBA is foreclosed); *Valley Constr. Co. v. Marsh*, 714 F.2d 26, 29 (5th Cir. 1983) (accord); *Mar v. Kleppe*, 520 F.2d 867, 869 (10th Cir. 1975) (accord); *Romeo v. United States*, 462 F.2d 1036, 1038 (5th Cir. 1972) (accord), *cert. denied* 410 U.S. 928 (1973); *Expedient Servs., Inc. v. Weaver*, 614 F.2d 56 (5th Cir. 1980) (accord); *Jets Servs., Inc. v. Hoffman*, 420 F. Supp. 1300, 1308-09 (M.D. Fla. 1976) (accord); *Little v. United States*, 489 F. Supp. 1012, 1016 (C.D. Ill. 1980) (injunctive relief against SBA precluded under § 634), *aff'd* 645 F.2d 77 (7th Cir. 1981).

sovereign." *Dep't of the Army v. Blue Fox*, 525 U.S. 255, 261 (1999).

Moreover, even if the court adopted the minority approach that § 634(b)(1) *can* permit injunctive relief when SBA exceeds its authority in adopting a regulation and the injunction would not interfere with SBA's internal workings, especially as they concern agency funds, the relief Forest View requests would still be improper. *Ulstein Maritime, Ltd. v. United States*, 833 F.2d 1052, 1057 (1st Cir. 1987). Forest View asks the court to enter injunctions, including a permanent injunction, that would interfere with how SBA administers and disburses funds under the PPP and conducts debt collection activity. Compl. at 21 (prayer for relief).

## Conclusion

For the foregoing reasons, the defendants are entitled to summary judgment, and Forest View's motion for summary judgment should be denied.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Jordan A. Rosen
    JORDAN A. ROSEN
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5331
    jordan.rosen@usdoj.gov